The Honorable Thomas T. Glover
Chapter 11
Hearing Location: 700 Stewart St., Rm. 7206
Hearing Date: January 27, 2010 (on shortened time)
Hearing Time: 2:30 p.m.
Response Date: January 27, 2010 (time of hearing)

# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

In re

TACO DEL MAR FRANCHISING CORP.
2414 SW Andover Street, Ste. D-101
Seattle, WA 98106

Debtor.

Case No. 10-10528

EMERGENCY MOTION FOR AUTHORITY
TO USE CASH COLLATERAL

Taco Del Mar Franchising Corp., the debtor and debtor-in-possession herein (the "Debtor" or "TDM"), hereby moves the Court pursuant to 11 U.S.C. § 363(b) and Local Rules 4001-2 and 9013-1(d)(2)(E) for entry of an order authorizing TDM to use cash collateral of Banner Bank[1] and a prior security interest over Canadian royalties and franchise fees in favor of Regge Egger[2] (hereafter collectively the "Secured Creditors"), which fees are presently owing to TDM. This motion is supported by the Declaration of Larry Destro.

In support of this motion, TDM represents as follows:

---

[1] Security interest on over "inventory, accounts, equipment, franchise fees, furniture and fixtures" and the proceeds thereof, but *not over royalties under franchise agreements which are separate and distinct from franchise fees*. Filed under Delaware UCC Filing No. 2009-0513553.

[2] Security interest filed under Delaware UCC Filing No. 2007-1797744.

EMERGENCY MOTION FOR AUTHORITY TO USE CASH
COLLATERAL - 1

#737432 v1 / 43827-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

- TDM and its 100% shareholder Conrad & Barry Investments, Inc. ("C&B") each filed voluntary petitions (collectively, the "Reorganization Cases") under Chapter 11 of the United States Bankruptcy Code (the "Code") in the United States Bankruptcy Court for the Western District of Washington at Seattle on January 22, 2010 (the "Petition Date").

- Both TDM and C&B are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Code. No trustee, examiner, or statutory committee has yet been appointed in the Reorganization Cases.

- C&B was founded by two brothers, James and John Schmidt, and began operating Taco Del Mar restaurants in 1992. Taco Del Mar grew into a small restaurant chain in the Puget Sound region, and C&B decided to franchise the concept in 1996, at or about which time TDM was incorporated to act as the franchisor. Eventually, all of the Taco Del Mar restaurants owned by C&B were sold to franchisees. By 2002, the Taco Del Mar chain had grown to about 70 restaurants and was operating at nearly break even. A critical decision was made to change the business model after 2002.

- Beginning in 2003, TDM began identifying and entering into Master Development Agreements ("MD Agreements") with persons interested in assisting TDM in developing new restaurants in the United States and in Canada in order to accelerate growth beyond the Northwest market. TDM currently has agreements with 58 such persons (collectively, the "MDs"). The Master Development Agreement model allowed TDM to receive fees from the MDs, as well as fees from new franchisees. From 2002 through 2005, the period of TDM's most rapid growth, TDM's revenues grew dramatically, from $950,000 in 2002 to over $5,400,000 in 2005. At the same time, however, TDM's expenses increased from

EMERGENCY MOTION FOR AUTHORITY TO USE CASH
COLLATERAL - 2

#737432 v1 / 43827-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

$991,000 in 2002 to $5,481,000 in 2005. TDM remained profitable through 2005, but as the number of new restaurant franchises and MDs began to decline, TDM subsequently began to lose money. TDM had negative profits in each year from 2006–2009, with 2009 accumulated losses exceeding $2,800,000.

- The number of Taco Del Mar restaurants increased from 74 in 2003 to a high of 270 at the end of fiscal year 2008. Eventually, however, weaknesses in TDM's development model (selecting poor franchisees and poor sites) and brand in non-core markets began to show. These weaknesses resulted in the closure of over 200 Taco Del Mar restaurants from 2005–2009. During this period, several competitive concepts were quickly expanding in the U.S. (Chipotle, Qdoba, Baja Fresh, and several others). These factors, coupled with TDM's weakening financial condition and the economic downturn in the U.S., slowed new restaurant growth and new market development for TDM. From 2005–2009, however, the restaurants in TDM's core markets established themselves as a relatively stable base from which to re-launch the TDM brand.

- TDM's struggles over the past 3–4 years have resulted in rising debt from $248,000 in 2002 to now over $3,000,000. Such debt has resulted from recurring losses, poor expense management, litigation expenses related to TDM guaranties of failed franchisee leases, litigation expenses pertaining to the propriety of franchise sales, and numerous judgments against TDM resulting from such litigation.

- Over the last few years, franchisee landlords have requested guaranties of franchisee leases from TDM. TDM has guaranteed franchisee leases in key target markets on a case-by-case basis. TDM has also executed some leases as tenant and thereafter assigned its rights under

EMERGENCY MOTION FOR AUTHORITY TO USE CASH
COLLATERAL - 3

#737432 v1 / 43827-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

the leases to franchisees, leaving TDM as a responsible party under the lease for at least some period of time. As some franchisees have defaulted on their lease obligations, some landlords have looked to TDM for performance of leases where TDM has remained liable as an assignor or guarantor. TDM has negotiated settlements and had judgments entered against it arising from such claims in recent years. TDM remains at risk for additional such claims on leases that remain in effect. TDM has recently faced additional claims from disgruntled franchisees and MDs for reimbursement of franchise and MD fees.

- TDM's current debts related to franchisee leases, disgruntled franchisees, and MD fees amount to approximately $564,500. Within the last month, one judgment creditor executed on TDM bank accounts to recover $125,000 and another has commenced supplemental proceedings in an effort to collect an additional $120,000 from TDM.

- During the past two years, TDM's board of directors has pursued both the sale of assets (Canada and Western Washington) and the entire company (receiving two offers in excess of $7,000,000). For a variety of reasons, none of these transactions were completed.

- At present, without a significant cash infusion (additional debt or sale of assets of the company), filing for bankruptcy is the only sure way to protect and perhaps even increase the value of TDM. Without filing for bankruptcy, it is unlikely that TDM could have survived the next two months without having to terminate all employees and close its business entirely.

- TDM, with input from the MDs and franchisees has begun implementing certain action items designed to curb TDM's losses. The "Taco Del Mar" brand has tremendous traction in its core markets. The opportunity to grow the value of this brand without the constraints

EMERGENCY MOTION FOR AUTHORITY TO USE CASH
COLLATERAL - 4

#737432 v1 / 43827-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

imposed by the current debt burden and threats of litigation is great. Given a reasonable opportunity as part of its reorganization, TDM can become a more competitive brand and a more financially secure investment for existing and future franchisees and repay significantly more of its debts debt than it would be able to pay if TDM was liquidated.

- TDM has debt outstanding to Banner Bank in the approximate amount of $450,000. TDM has debt outstanding to Egger in the approximate amount of $100,000 secured, with an additional of $50,000 unsecured.

- TDM day to day operations are funded primarily with royalties which are directly tied to franchisee revenues from its franchisees, including royalties from Canadian franchisees (which are security for the Egger loan). TDM's budget does not rely on any franchise fees being generated in the next 12 months, relating to new franchisees, the transfer of existing franchisees or franchise agreement renewal fees.

- Banner Bank does *not* expressly hold a security interest in TDM royalties.

- However, Banner Bank is the depository for an Advertising Co-Op Account, a Marketing Fund Account and TDM's Operating Checking Account. On or about December 23, 2009, TDM judgment creditors PAUL HENDIFAR and SHAHNAZ HENDIFAR, served Banner Bank with a writ of garnishment for an amount totaling $125,416.93, which funds currently are believed to remain with Banner Bank. It is TDM's intention to immediately seek to quash the writ of garnishment or avoid it hereunder if necessary. Assuming TDM is successful in this, it remains at least likely that Banner Bank will claim the right to offset this amount against its loan amount. Assuming that this treatment is available to Banner Bank, then this amount could be deemed additional security.

EMERGENCY MOTION FOR AUTHORITY TO USE CASH
COLLATERAL - 5

#737432 v1 / 43827-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

- While the precise security interest that Banner Bank is presently entitled to is not known, for purposes of this cash collateral motion, TDM is prepared to propose adequate protection payments to Banner Bank up to $5,000 per month, as reflected in the budget attached to the declaration of Larry Destro ("Budget") as **Exhibit B**.

- In order to maintain its ongoing business model, TDM requests the use of the cash collateral of the Secured Creditors, but believes that they will be adequately protected as required under applicable law. As set forth above, TDM recently negotiated a purchase and sale agreement for substantially all of its assets at a sales price of about $7,000,000. While the sale did not close, the royalties, initial franchise fees, transfer fees, and franchise agreement renewal fees received by TDM from the current franchisees for 2009 were about $2,600,000.

- Given the 2009 revenues and previous recent purchase offers, it is unlikely that the going concern value of TDM is less than the amounts owed to the Secured Creditors. On the other hand, if the Company ceases to be a going-concern, its value in liquidation is likely to be a small fraction of the purchase price recently negotiated and could well be inadequate to cover the Secured Creditors' claims. It is in the best interests of TDM's unsecured creditors, its employees and customers that the Court grant it use of cash collateral on an interim basis in accordance with the Budget.

- If TDM is forced to cease operations, it will be devastating to its franchisees, employees and its unsecured creditors.

TDM requires the use of the Collateral and the cash component and cash equivalent proceeds of the Collateral (the "Cash Collateral") for the maintenance and preservation of TDM's property.

EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL - 6

#737432 v1 / 43827-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

Pursuant to Federal Rule of Bankruptcy Procedure 4001(c)(2), TDM states that an emergency, preliminary hearing to consider its use of Cash Collateral on an interim basis pending a final hearing on this motion is necessary for the reason that the Cash Collateral will be the primary source of TDM's operating revenues.

TDM is faced with a number of operating expenses, which it must pay in the ordinary course of its business, including payroll. Without authorization to use Cash Collateral, TDM will not be able to continue to meet is obligations to franchisees, employees and vendors, and will be unable to continue to perform on the contracts which it intends to assume, this jeopardizing its chances of success in this Chapter 11 proceeding.

TDM proposes that Secured Creditors be granted security interests and liens (collectively the "Replacement Liens") in and to the following (collectively the "Postpetition Collateral"): (a) all proceeds from the disposition of all or any portion of the Prepetition Collateral, (b) all of TDM's property in its estate of the same kind, type and nature as the Prepetition Collateral that is acquired after the Petition Date, and (c) all proceeds of the foregoing. If and to the extent the adequate protection of the interests of Secured Creditors in the Prepetition Collateral granted to TDM proves insufficient, Secured Creditors will be entitled to a claim under 11 U.S.C. § 507(b) in the amount of any such insufficiency.

The security interests and liens granted herein are hereinafter referred to as the "Postpetition Security Interests." The Postpetition Security Interests shall be senior in rank, priority and right of payment to all other liens on TDM's property in its estate of the same kind, type and nature as the Prepetition Collateral that is acquired after the Petition Date, and all proceeds of the foregoing.

EMERGENCY MOTION FOR AUTHORITY TO USE CASH
COLLATERAL - 7

#737432 v1 / 43827-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

TDM is presently unable to obtain unsecured credit allowable under § 503(b)(1) of the Bankruptcy Code as an administrative expense to cover its operating expenses.

A preliminary hearing on this motion is required in order to avoid immediate and irreparable harm to the estate. TDM has immediate cash needs with regard to payroll, employee benefits, lease payments, and other daily operational expenses, which must be paid pending a final hearing.

TDM prays that the Court enter an order authorizing it to use cash collateral in the form submitted herewith.

DATED this 25th day of January 2010.

KARR TUTTLE CAMPBELL

/s/ George S. Treperinas
George S. Treperinas, WSBA #15434
Attorneys for Debtor-in-Possession,
Taco Del Mar Franchising Corp.

EMERGENCY MOTION FOR AUTHORITY TO USE CASH
COLLATERAL - 8

#737432 v1 / 43827-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100