The Honorable Thomas T. Glover
Chapter 11
Hearing Location: 700 Stewart St., Rm. 7206
Hearing Date: January 27, 2010 (on shortened time)
Hearing Time: 2:30 p.m.
Response Date: January 27, 2010 (time of hearing)

# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

In re

TACO DEL MAR FRANCHISING CORP.
2414 SW Andover Street, Ste. D-101
Seattle, WA 98106

　　　　Debtor.

Case No. 10-10528

DECLARATION OF LARRY DESTRO IN SUPPORT OF:

1. APPLICATION FOR ORDER TO PAY PRE-PETITION WAGES, BENEFITS AND WITHHOLDINGS

2. APPLICATION FOR ORDER AUTHORIZING DEBTOR TO MAINTAIN PRE-PETITION BANK ACCOUNTS AND CASH MANAGEMENT SYSTEM

3. APPLICATION FOR ORDER AUTHORIZING DEBTOR TO USE CASH COLLATERAL

I, Larry Destro, make the following declaration under penalty of perjury under the laws of the State of Washington and the United States of America:

1.　　I am the Chief Executive Officer of Taco Del Mar Franchising Corp., ("TDM" or "Company"), which filed a voluntary petition under Chapter 11 (the "Bankruptcy Case") of the United States Bankruptcy Code (the "Code") in the United States Bankruptcy Court for the Western District of Washington at Seattle ("Court") on January 22, 2010 at approximately 9:37 a.m. (the "Petition Date").

DECLARATION OF LARRY DESTRO IN SUPP. OF APPLS. TO (i) PAY
PRE-PETITION WAGES, (ii) MAINTAIN BANK ACCTS, and (iii) USE
CASH COLLATERAL - 1
#737426 v1 / 43827-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

Case 10-10528-TTG    Doc 18    Filed 01/25/10    Entered 01/25/10 17:51:04    Page 1 of 9

2. Taco Del Mar Franchising Corp. is a Delaware corporation, qualified and registered to do business in the State of Washington.

3. Conrad & Barry Investments, Inc. ("C&B"), a Washington Corporation, is the 100% owner of TDM, a Delaware Corporation headquartered in Seattle, Washington. TDM is also the 100% owner of Taco Del Mar Canada Franchising Corp. ("TDM Canada"), a Canadian corporation. Together, these companies are referred to herein as the "TDM Companies."

4. C&B began Taco Del Mar restaurant operations in 1992 and was founded by two brothers, James and John Schmidt. Taco Del Mar grew into a small restaurant chain in Puget Sound and a decision was made to franchise the concept in 1996 at or about which time TDM was incorporated to act as the franchisor. Eventually, all of the restaurants formerly owned by C&B were sold to franchisees. By 2002 the chain had grown to about 70 restaurants and was operating at nearly break even. A critical decision was made to change the business model after 2002.

5. In order to accelerate growth beyond the Northwest market beginning in 2003, the Company began identifying and entering into Master Development Agreements ("MD Agreements") with third parties interested in assisting the Company in developing new restaurants in the United States and in Canada. The Company currently has agreements with 58 such third parties ("MDs"). This model allowed the Company to receive fees from the MDs, as well as fees from new franchisees. During the growth period of the Company, revenues grew dramatically (from $950,000 in 2002 to over $5,400,000 in 2005). At the same time, expenses grew from $991,000 in 2002 to $5,481,000 in 2005. The Company profits continued through 2005, but subsequently as the number of new franchises and MDs began to decline, the Company began losing money and continued to do so in every year from 2006-2009 (with 2009 accumulated losses exceeding $2,800,000).

DECLARATION OF LARRY DESTRO IN SUPP. OF APPLS. TO (i) PAY
PRE-PETITION WAGES, (ii) MAINTAIN BANK ACCTS, and (iii) USE
CASH COLLATERAL - 2
#737426 v1 / 43827-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

Case 10-10528-TTG    Doc 18    Filed 01/25/10    Entered 01/25/10 17:51:04    Page 2 of 9

6. Restaurant counts went from 74 in 2003 to a high of 270 at the end of fiscal year 2008. The weakness, however, of the Company's development model (selecting poor franchisees and poor sites) and weakness of the TDM brand in non-core markets began to show. These weaknesses resulted in the closure of over 200 restaurants from 2005-2009. During this period, several competitive concepts were quickly expanding in the U.S. (Chipotle, Q'doba, Baja Fresh and several others). These factors coupled with the Company's weakening financial condition and the economic downturn in the U.S. slowed new store growth and new market development for TDM.

7. During the period from 2005-2009 however, the growth of new stores in TDM's core markets has become a relatively stable base from which to re-launch the TDM brand.

8. TDM's struggles over the past 3-4 years have resulted in rising debt from $248,000 in 2002, to now over $3,000,000. The debt has resulted from recurring losses, poor expense management, litigation expenses related to TDM guaranties of failed franchisee leases, litigation expenses pertaining to the propriety of franchise sales, and numerous judgments against TDM resulting from such litigation.

9. I was hired on as President and CEO in May 2009 and since then an entirely new management team has been hired.

10. The franchise agreements require franchisees to contribute 1% of their gross sales (in addition to royalties) to a marketing fund for the purpose of reimbursing TDM for its costs in creating marketing materials and developing marketing ideas, which included hiring consultants for that purpose, ultimately to the benefit of the franchisees. In some geographic areas, franchisees also pool funds as "Ad Cooperatives" to pay for advertising in their geographic areas.

11. TDM has bank accounts in which it holds advertising and marketing funds, and in the past some of these funds were borrowed to pay TDM general expenses rather than designated

DECLARATION OF LARRY DESTRO IN SUPP. OF APPLS. TO (i) PAY
PRE-PETITION WAGES, (ii) MAINTAIN BANK ACCTS, and (iii) USE
CASH COLLATERAL - 3
#737426 v1 / 43827-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

Case 10-10528-TTG    Doc 18    Filed 01/25/10    Entered 01/25/10 17:51:04    Page 3 of 9

marketing and advertising expenses. Currently, TDM cumulatively owes these accounts approximately $646,000.

12. Over the last few years, franchisee landlords have requested guaranties of franchisee leases by TDM. On a case-by-case basis, TDM has guarantied franchisee leases in key target markets. In other cases TDM has executed leases as the tenant and thereafter assigned the leases to franchisees leaving TDM as a responsible party under the lease for at least some period of time. As some franchisees have defaulted on their lease obligations, landlords have looked to TDM for performance of leases where TDM has remained liable as an assignor or guarantor. TDM has negotiated settlements and had judgments entered against it arising from such claims in recent years. TDM remains at risk for additional such claims on leases.

13. TDM has also faced claims in recent years from disgruntled franchisees and MDs for reimbursement of franchise and MD fees.

14. Current TDM debts related to franchisee leases, disgruntled franchisees and MDs presently amount to approximately $564,500. Within the last month, one landlord judgment creditor executed on TDM bank accounts in the amount of $125,000 and another has commenced supplemental proceedings in an effort to collect an additional $120,000.

15. During the past two years, TDM's board of directors has pursued the sale of both assets (Canada and Western Washington) and the entire company (with two offers in excess of $7,000,000). For a variety of reasons, none of these transactions were completed.

16. At present without a significant cash infusion (additional debt or sale of some/all assets of the company) filing for bankruptcy is the only sure way to protect and perhaps even increase the going concern value of TDM. Without filing for bankruptcy, it is unlikely that TDM could have

DECLARATION OF LARRY DESTRO IN SUPP. OF APPLS. TO (i) PAY
PRE-PETITION WAGES, (ii) MAINTAIN BANK ACCTS, and (iii) USE
CASH COLLATERAL - 4
#737426 v1 / 43827-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

Case 10-10528-TTG    Doc 18    Filed 01/25/10    Entered 01/25/10 17:51:04    Page 4 of 9

survived the next two months without having to terminate all employees and close the business entirely without taking this action.

17. The Company, with input from the MDs and franchisees has begun implementing certain action items designed to curb the Company's losses. The Company is also pursuing and/or evaluating the following revisions to its current business model:

- Refocus the business in its traditional key markets at sufficient scale to increase profits for the Company and its franchisees (these markets include Western Washington, Oregon, Eastern Washington/Idaho/Montana, Hawaii, and Canada).
- Restructure the existing debt repayment to its creditors in a manner that will allow the Company to service the restructured debt and prospective debt as obligations come due.
- Evaluate the sale/licensing of the Canadian business.
- Evaluate the sale/licensing of all or substantially all of the Company's assets as a going concern.

18. I believe that the "Taco Del Mar" brand has tremendous traction in its core markets. The opportunity to grow the value of this brand without the constraints imposed by the current debt burden and threats of litigation is great. Given a reasonable opportunity as part of its reorganization, TDM will become a much more competitive brand and a more financially secure investment for our existing and future franchisees and create the opportunity to repay a good deal more of the current debt than would result from the liquidation of TDM.

19. TDM has two loans with Banner Bank. One has a maturity date of 1/26/2010, an annual interest rate of 6.25% and a balance due of $224,557.85. Interest accrues daily at a rate of $38.98573. The other has a maturity date of 1/26/2010, an annual interest rate of 7.75% and an outstanding balance of $224,074.50. Interest accrues daily at a rate of $48.23827.

20. A prompt reorganization is required in order to maintain the value of the company, for the benefit of its creditors, employees, franchisees and customers.

DECLARATION OF LARRY DESTRO IN SUPP. OF APPLS. TO (i) PAY PRE-PETITION WAGES, (ii) MAINTAIN BANK ACCTS, and (iii) USE CASH COLLATERAL - 5
#737426 v1 / 43827-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

Case 10-10528-TTG   Doc 18   Filed 01/25/10   Entered 01/25/10 17:51:04   Page 5 of 9

21. <u>Wage Application</u>. In an application filed concurrently with this Declaration, TDM seeks authority to pay the pre-petition payroll, benefits, and taxes, as well as pre-petition contract amounts to its IT independent contractor, due as described in **Exhibit A** (summary of "Unpaid Payroll Expenses") in an amount not to exceed $ 34,678.63[1].

21.1 It is essential that TDM be allowed to meet its pre-petition payroll obligations, and its failure to do so would jeopardize its ability to provide prospective customer services. Accordingly, it is in the interest of TDM and its creditors for TDM to retain its employees post-petition.

21.2. The Unpaid Payroll Expenses are set forth in the attached **Exhibit A**, which include wages, and various employee withholdings including IRA and/or 401(k) contributions, federal taxes, insurance and etc.

22. <u>Cash Management Application</u>. TDM maintains bank accounts (collectively the "Bank Accounts") with Banner Bank, Wells Fargo Bank, Key Bank and Royale Bank of Canada (collectively the "Banks") which are listed and described below.

| Bank: | Description of Account: | Account No.: |
|---|---|---|
| Banner Bank* | Advertising Co-Op Account | xxxxxx5206 |
| Banner Bank* | TDM Marketing Fund Account | xxxxxx5108 |
| Banner Bank | Operating Checking Account | xxxxxx4809 |
| Wells Fargo | Multi-Currency Account – CAD/USD | xxxxxx3CAD |
| Wells Fargo | US Currency Account – USD/CAD | xxxxxx6267 |
| Wells Fargo* | TDM BC Advertising Coop Account | xxxxxx5CAD |
| Key Bank* | TDM Marketing Fund Account | xxxxxx6932 |
| Key Bank* | Portland Advertising Account | xxxxxx2647 |
| Key Bank* | Boise Advertising Co-Op Account | xxxxxx0507 |
| Key Bank* | Spokane Advertising Co-Op Account | xxxxxx5921 |
| Royale Bank of Canada | Franchise Fee Deposit | xxxxxx2359 |

---

[1] Not including accrued vacation pay shown on <u>Exhibit A</u>.

DECLARATION OF LARRY DESTRO IN SUPP. OF APPLS. TO (i) PAY
PRE-PETITION WAGES, (ii) MAINTAIN BANK ACCTS, and (iii) USE
CASH COLLATERAL - 6
#737426 v1 / 43827-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

Case 10-10528-TTG   Doc 18   Filed 01/25/10   Entered 01/25/10 17:51:04   Page 6 of 9

22.1 TDM's operations require, among other things, controlling and accounting for its revenues. The existing cash management system assures prompt receipt and allocation of funds and the generation of timely and accurate financial information necessary to manage TDM's operations. Failure to preserve the cash management system, particularly at a time when TDM is subject to the operational dislocation attendant to its Chapter 11 filing, would disrupt TDM's ordinary and usual financial affairs, and would impair its opportunity for reorganization.

22.2. The Banks are believed to be authorized bankruptcy depositories and that they are, pursuant to the requirements of §345(b) of the Bankruptcy Code, insured by a department, agency, or instrumentality of the United States, or backed by the full faith and credit of the United States (with the possible exception of the Royale Bank of Canada).

22.3. TDM proposes to continue to use the Bank Accounts as Debtor-in-Possession Accounts. In order to maintain a distinction between checks that were issued pre-petition, and those issued post-petition, TDM will skip the at least 100 sequential check numbers, and start the new sequence on with the next check number that it a multiple of 100.

22.4. TDM has concurrently filed an application herein requesting entry of an order (the "Wage Order") authorizing TDM to pay all prepetition wages, salaries, commissions, increases and related benefits, which were due, owing or accrued as of the Petition Date. Checks for payroll and related benefits will be written on the existing Checking Account.

23. <u>Cash Collateral Motion</u>. I have reviewed a UCC search obtained by our counsel for TDM dated January 19, 2010, which shows a number of equipment lease vendors with security interests in personal property. It also shows a security interest in favor of Banner Bank over "inventory,

DECLARATION OF LARRY DESTRO IN SUPP. OF APPLS. TO (i) PAY
PRE-PETITION WAGES, (ii) MAINTAIN BANK ACCTS, and (iii) USE
CASH COLLATERAL - 7
#737426 v1 / 43827-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

Case 10-10528-TTG    Doc 18    Filed 01/25/10    Entered 01/25/10 17:51:04    Page 7 of 9

accounts, equipment, franchise fees, furniture and fixtures" and the proceeds thereof[2] and a prior security interest over Canadian royalties and franchise fees in favor of Regge Egger[3] (hereafter collectively the "Secured Creditors"), which I know to be outstanding debts.

    23.1. TDM has debt outstanding to Banner Bank in the approximate amount of $450,000. TDM has debt outstanding to Egger in the approximate amount of $100,000 secured, with an additional of $50,000 unsecured.

    23.2. As can be seen above, Banner Bank is the depository for an Advertising Co-Op Account, a Marketing Fund Account and TDM's Operating Checking Account. On or about December 23, 2009, TDM judgment creditors PAUL HENDIFAR and SHAHNAZ HENDIFAR, served Banner Bank with a writ of garnishment for an amount totaling $125,416.93, which funds currently are believed to remain with Banner Bank. It is our intention to immediately seek to quash the writ of garnishment or avoid it hereunder if necessary. Assuming we are successful in this, it remains at least likely that Banner Bank will claim the right to offset this amount against its loan amount. Assuming that this treatment is available to Banner Bank, then this amount could be deemed additional security.

    24. While the precise security interest that Banner Bank is presently entitled to is not known, for purposes of our cash collateral motion TDM is prepared to propose adequate protection payments to Banner Bank up to $5,000 per month, as reflected in the budget attached hereto as **Exhibit B**.

    24.1. TDM day to day operations are funded primarily with royalties which are directly tied to franchisee revenues from its franchisees, including royalties from Canadian franchisees

---

[2] Security interest *does not cover royalties under franchise agreements which are separate and distinct from franchise fees*. Filed under Delaware UCC Filing No. 2009-0513553.

[3] Security interest filed under Delaware UCC Filing No. 2007-1797744.

DECLARATION OF LARRY DESTRO IN SUPP. OF APPLS. TO (i) PAY PRE-PETITION WAGES, (ii) MAINTAIN BANK ACCTS, and (iii) USE CASH COLLATERAL - 8
#737426 v1 / 43827-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

Case 10-10528-TTG   Doc 18   Filed 01/25/10   Entered 01/25/10 17:51:04   Page 8 of 9

TDM's budget does not rely on any franchise fees being generated in the next 12 months, relating to new franchisees, the transfer of existing franchisees or franchise agreement renewal fees.

24.2. In order to maintain its ongoing business model, TDM requests the use of the cash collateral of the Secured Creditors, but I believe that they will be adequately protected as required under applicable law. As set forth above, TDM recently negotiated a purchase and sale agreement for substantially all of its assets at a sales price of about $7,000,000. While the sale did not close, the royalties, initial franchise fees, transfer fees, and franchise agreement renewal fees received by TDM from the current franchisees for 2009 were about $2,600,000.

24.3. While I am no appraiser, it seems unlikely that the going concern value of the Company is presently less than the amounts owed to our Secured Creditors. On the other hand, if the Company ceases to be a going-concern, its value in liquidation is likely to be a small fraction of the purchase price recently negotiated and could well be inadequate to cover the Secured Creditors' claims. It is in the best interests of TDM's unsecured creditors, its employees and customers that the Court grant it use of cash collateral on an interim basis in accordance with the budget (the "Budget") attached hereto as **Exhibit B**.

25. No Unsecured Creditors Committee has yet been appointed in this case. Because of the urgency of the circumstances surrounding TDM's applications for orders authorizing it to (i) pay pre-petition payroll, benefits, and taxes, (ii) maintain certain of its prepetition bank accounts and cash management system; and the potential for irreparable harm to TDM should the relief requested be delayed, and (iii) use cash collateral; TDM respectfully submits that this motion should be granted without the requirement of further notice and hearing.

EXECUTED this 25 day of January 2010 at Seattle, WA.

Larry Destro, Chief Executive Officer

DECLARATION OF LARRY DESTRO IN SUPP. OF APPLS. TO (i) PAY
PRE-PETITION WAGES, (ii) MAINTAIN BANK ACCTS, and (iii) USE
CASH COLLATERAL - 9
#737426 v1 / 43827-001

Law Offices
KARR TUTTLE CAMPBELL
A Professional Service Corporation
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

Case 10-10528-TTG    Doc 18    Filed 01/25/10    Entered 01/25/10 17:51:04    Page 9 of 9