The Honorable Thomas T. Glover
Chapter 11
Hearing Location: 700 Stewart St., Rm. 7106
Hearing Date:   March 5, 2010
Hearing Time:   9:30 a.m.
Response Date:  February 26, 2010

# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| In re<br><br>TACO DEL MAR FRANCHISING CORP.<br>2414 SW Andover Street, Ste. D-101<br>Seattle, WA 98106<br><br>Debtor.<br><br>————————————————<br><br>CONRAD & BARRY INVESTMENTS, INC.<br><br>Debtor. | Lead Case No. 10-10528-TTG<br>(Administratively Consolidated with 10-10529-TTG)<br><br>DECLARATION OF LARRY DESTRO IN SUPPORT OF MOTION TO REJECT CANADIAN MASTER DEVELOPMENT AGREEMENTS |

I, Larry Destro, declare as follows:

1.      I am the President and CEO of Taco Del Mar Franchising Corp. ("TDM"), the debtor-in-possession in the above-captioned lead bankruptcy matter.  I am over the age of eighteen (18), I am competent to testify herein, and I make this declaration from my personal knowledge.

2.      TDM and its 100% shareholder Conrad & Barry Investments, Inc. ("C&B") each filed voluntary petitions (collectively, the "Reorganization Cases") under Chapter 11 of the United States Bankruptcy Code (the "Code") in the United States Bankruptcy Court for the Western District of Washington at Seattle on January 22, 2010 (the "Petition Date").

Law Offices
KARR TUTTLE CAMPBELL
A Professional Service Corporation
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

3. Both TDM and C&B are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Code. A creditor committee has been appointed in the Reorganization Cases, but identification of its counsel has not yet occurred.

4. C&B was founded by two brothers, James and John Schmidt, and began operating Taco Del Mar restaurants in 1992. Taco Del Mar grew into a small restaurant chain in the Puget Sound region, and C&B decided to franchise the concept in 1996, at or about which time TDM was incorporated to act as the franchisor. Eventually, all of the Taco Del Mar restaurants owned by C&B were sold to franchisees. By 2002, the Taco Del Mar chain had grown to about 70 restaurants and was operating at nearly break even. A critical decision was made to change the business model after 2002 to one referred to as the "Master Developer Model".

5. Beginning in 2003, TDM began identifying and entering into Master Development Agreements ("MD Agreements") with persons interested in assisting TDM in developing new restaurants in the United States and in Canada in order to accelerate growth beyond the Northwest market. TDM currently has agreements with 58 such persons/entities (collectively, the "MDs"). The Master Developer Model allowed TDM to receive fees from the MDs, as well as fees from new franchisees in exchange, in part, for territory reservations. In addition, royalties were collected by TDM from franchisees and a portion was paid over to the MDs in exchange for their assisting Franchisor/TDM in the performance of certain of its obligations to franchisees under the franchise agreements. From 2002 through 2005, the period of TDM's most rapid growth, TDM's revenues grew dramatically, from $950,000 in 2002 to over $5,400,000 in 2005. At the same time, however, TDM's expenses increased from $991,000 in 2002 to $5,481,000 in 2005. TDM remained profitable through 2005, but as the number of new restaurant franchises and new MDs began to decline, and the

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

resultant income from that portion of the revenue stream declined, TDM subsequently began to lose money. TDM had negative profits in each year from 2006–2009, with 2009 accumulated losses exceeding $2,800,000.

6.     The number of Taco Del Mar restaurants increased from 74 in 2003 to a high of 270 at the end of fiscal year 2008. Eventually, however, weaknesses in TDM's development model (selecting poor franchisees and poor sites) and brand in non-core markets began to show. These weaknesses resulted in the closure of over 200 Taco Del Mar restaurants from 2005– 2009. During this period, several competitive concepts were quickly expanding in the U.S. (Chipotle, Qdoba, Baja Fresh, and several others). These factors, coupled with TDM's weakening financial condition and the economic downturn in the U.S., slowed new restaurant growth and new market development for TDM. From 2005–2009, however, the restaurants in TDM's core markets established themselves as a relatively stable base from which to re-launch the TDM brand.

7.     TDM's struggles over the past 3–4 years have resulted in rising debt from $248,000 in 2002 to now over $3,000,000. Such debt has resulted from recurring losses, poor expense management, litigation expenses related to TDM guaranties of failed franchisee leases, litigation expenses pertaining to the propriety of franchise sales, and numerous judgments against TDM resulting from such litigation.

8.     During the past couple of years, TDM has seen continued erosion in the services provided by the Canadian MDs in support of Canadian TDM franchisees. A list of the Canadian MDs and their shareholders is attached to the underlying Motion as Exhibit A. The Canadian MDs have implemented side businesses in subleasing stores to franchisees (a violation of the MD Agreement), which has worked to the detriment of TDM's Canada franchisees. The Canada MDs have evidenced

Law Offices
KARR TUTTLE CAMPBELL
A Professional Service Corporation
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

financial troubles including the non-payment of their employees wages and expense reimbursements. In any event, the Canadian MDs have exhibited a lack of manpower sufficient to perform their duties under their MD Agreements and in support of TDM's Canadian franchisees.

9. The Canadian MD has interfered with TDM's business by contacting potential purchasers of TDM to make unfounded threats.

10. Recently, TDM requested that the Canadian MDs cooperate with TDM in establishing a Canadian National Advertising Coop for the Canadian franchisees to improve and expand marketing all across Canada. It was discovered in late November that rather than following TDM's instructions, the Canadian MDs have siphoned off 15% of the funds which would have been used in establishing the Coop by the franchisees under the guise of being their "marketing consultant" but with no marketing ever being done over a 7 month period. TDM has demanded that those funds be returned so that the Coop can be established for the benefit of the franchisees. Instead the Canadian MDs have disregarded this request. TDM had a huge opportunity to implement marketing in British Columbia during the Winter Olympics, but there was no access by the franchisees or TDM to funds diverted by the Canadian MDs in order to pay for the marketing, to the significant detriment of the franchisees.

11. Communications have recently been sent by the Canadian MDs to the Canadian franchisees on February 2, 2010 advising them NOT to pay their royalties to TDM in accordance with their franchise agreements, but rather to send those payments directly to the Canadian MD's designee. Should the franchisees comply with this directive, they would all be immediately in default of their franchise agreements, to their detriment.

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

12.     The Canadian MDs also sent a communication to the Canadian franchisees on Sunday, February 7, 2010 advising them that the Canadian MD had "just entered into a Joint-Venture Agreement with Mere Investments, Inc." The Canadian franchisees were advised that this new Joint Venture would result in Mere Investments, Inc. immediately beginning to "assist us in all phases of store development and operations." TDM has not consented to any assignment or creation of any joint venture by the Canadian MDs.

13.     As a result of the Canadian MDs actions and inactions, the Canadian franchisees are confused and frustrated, and TDM has had to invest substantial time and efforts providing the support which the Canadian MDs have failed to provide and to educate the Canadian franchisees on their need to comply with their obligations under their franchise agreements.

14.     It is TDM's belief that the rejection of these executory Canadian MD contracts is in the best interest of the brand, franchisees and creditors..

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

DATED in Seattle, Washington, this _11_ th day of February 2010.

_____
LARRY DESTRO

DECLARATION OF LARRY DESTRO IN SUPPORT OF MOTION TO
REJECT CANADIAN MASTER DEVELOPMENT AGREEMENTS - 5
#740564 v1 / 43827-002

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100