# EXHIBIT A

## PROCEDURES FOR SALE OF ASSETS OF
## TACO DEL MAR FRANCHISING CORP.

Taco Del Mar Franchising Corp., a Delaware corporation (the "**Seller**"), has filed a voluntary petition for relief (the "**Petition**") on January 22, 2010 (the "**Petition Date**") under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Western District of Washington, Seattle Division (the "**Bankruptcy Court**") under Bankrutcy Case No. 10-10528KAO (the "**Case**").

Seller has entered into an asset purchase agreement (the "**Asset Purchase Agreement**") with Taco Del Mar Acquisition Inc., a Delaware corporation (the "**Buyer**"), conditioned on Bankruptcy Court approval after an opportunity for Qualified Bidders (as defined below) to submit competing bids. Capitalized terms used herein without definition shall have the meanings given to them in the Asset Purchase Agreement.

The procedures hereinafter set forth (the "**Sale Procedures**") shall govern the bidding and sale process. These procedures are intended to ensure a fair process with procedures approved by the Bankruptcy Court in advance of the Sale Hearing. As provided below and in the Asset Purchase Agreement, the Sale Procedures shall be incorporated into the Sales Procedures Order, which shall become a Final Order prior to the Sale Hearing.

1     Designation of Stalking Horse Bidder.

    a.     Seller has designated the bid of Buyer (the "**Stalking Horse Bidder**") as the "stalking horse" bid (the "**Stalking Horse Bid**"). As the Stalking Horse Bidder, Buyer shall, upon entry of the Sale Procedures Order, be entitled to the Break-Up Fee (as defined below) and other standard stalking horse protections as discussed below.

    b.     The obligation of Buyer to perform under the Asset Purchase Agreement is conditioned on, among other things, the entry of the Sale Procedures Order by the Bankruptcy Court's approving the Sale Procedures and the Break-Up Fee.

2     Auction Process.

    a.     Auction Date. The auction shall take place at the offices of Karr Tuttle Campbell, 1201 Third Avenue, Suite 2900, Seattle, Washington 98101, on September 30, 2010, at 1:00 p.m., and noticed to all prospective bidders. To be eligible to participate in the auction, all Qualified Bidders must appear in person at this address.

    b.     Qualifications to Bid. Only qualified bidders (as described below, the "**Qualified Bidders**") shall be allowed to participate in the auction. Buyer shall be a Qualified Bidder for all purposes hereunder. To become a "**Qualified Bidder**," each prospective bidder shall, on or before 5:00 p.m. PDT on the Business Day that is five (5) Business Days prior to the day scheduled for the hearing on the Sale Motion deliver (i) a good faith deposit in the amount of $250,000 in cash into the Escrow

Account and (ii) a binding letter agreement to George S. Treperinas, Karr Tuttle Campbell, 1201 Third Ave., #2900, Seattle, Washington 98101 (Email: gtreperinas@karrtuttle.com and mmunhall@karrtuttle.com; Fax: (206) 682-7100), counsel for the Debtors, which contains the following:

(1) **a binding offer to acquire the Acquired Assets for an amount that is at least $250,000 more than the aggregate value of the Opening Bid** (as defined below) ("Over Bid");

(2) evidence to the reasonably satisfaction of the Debtors of such Qualified Bidder's financial ability to (a) fully and timely perform if it is declared to be the Successful Bidder, and (b) provide adequate assurance of future performance of all contracts to be assigned and any post-closing investments into the Business;

(3) disclosure of any connections or agreements with Sellers and/or any officer, director or equity security holder of Sellers; and

(4) an agreement to accept and abide by the terms, conditions and procedures set forth herein.

If such bidder contemplates making a bid on terms different than those agreed to by Buyer in the Asset Purchase Agreement, such bidder shall submit with its letter agreement (a) a detailed description of the differences, and (b) a proposed form of asset purchase agreement marked to show the differences between its proposed asset purchase agreement and the Asset Purchase Agreement; provided that a Qualified Bidder shall not be permitted to vary the terms of the Asset Purchase Agreement in any way that could nullify, modify, impair or otherwise affect the requirements set forth in (1) through (4) above.

c. Counsel for the Debtors shall promptly provide copies of any bids that he receives to the Stalking Horse Bidder and the Official Committee of Unsecured Creditors. Any party in interest (including the Stalking Horse Bidder) shall have standing to challenge any prospective bidder's compliance with these qualification requirements. Any dispute regarding a prospective bidder's compliance with these qualification requirements shall be resolved by the Bankruptcy Court.

d. The Stalking Horse Bid shall be considered the opening bid ("Opening Bid") at the auction. For all purposes of these bidding procedures and the auction contemplated herein, including, without, limitation, the determination of the Successful Bidder, the Opening Bid shall be valued at an amount equal to the sum of one million nine-hundred fifty thousand dollars ($1,950,000).

e. The highest Over Bid submitted by a Qualified Bidder shall be the initial over-bid at the auction ("Initial Over-Bid"). **Subsequent over-bids ("Subsequent Over-Bids") shall be in increments of not less than $250,000 higher than the immediately preceding bid.** The Initial Over-Bid and Subsequent Over-Bids shall be on substantially the same or better terms and conditions, taken as a whole, as those set forth in the Stalking Horse Bid. In determining the amount of any Subsequent Over-Bid submitted by the Stalking Horse Bidder, Debtors shall take into account, and the Stalking Horse Bidder shall be entitled to a credit equal to, the amount of the Break-Up Fee.

f. All bids shall be made in the presence of other bidders. Bidders shall have the right to request reasonable breaks during the pendency of the auction which the Debtors shall comply with.

g. Upon the conclusion of the bidding, Debtors shall announce their determination as to which bidder has submitted the highest and best bid ("Successful Bid"), and such bidder shall be declared the successful bidder ("Successful Bidder"). The Successful Bid, as determined by Debtors in accordance with these Bidding Procedures, shall be submitted to the Bankruptcy Court for approval at the Sale Hearing. Within two (2) business days of the declaration of the Successful Bidder, the deposits of all unsuccessful bidders shall be refunded with any accrued interest.

h. The transaction evidenced by the Successful Bid shall close not later than 30 days following the entry of the Sale Order ("Outside Closing Date") at which time the Successful Bidder shall pay the Successful Bid amount less the amount of the deposit to the Debtors on the Closing Date into the Escrow Account; provided, however, if the Stalking Horse Bidder is declared the Successful Bidder such date may be extended pursuant to the terms of the APA executed by the Stalking Horse Bidder.

i. The Successful Bidder shall, at its expense, obtain all necessary governmental licenses, permits and approvals necessary to the consummation of its proposed transaction (provided, however, that this provision does not change any provision of the APA or any bid regarding allocation of responsibility to pay taxes of Sellers).

j. In the event Buyer is not the Successful Bidder and Debtors consummate an Alternative Transaction, Buyer shall be entitled to receive from Debtors' bankruptcy estate upon the consummation of such Alternative Transaction a cash break-up fee payment in the amount of $250,000 for the reimbursement of Buyer's reasonable and actual expenses incurred in connection with the proposed transactions contemplated by the APA (the "Break-Up Fee"). The Break-Up Fee shall be paid at the closing of the Alternative Transaction and shall be paid concurrently or ahead of any other distributions or payments to any Seller contemplated in connection with such Alternative Transaction by the Successful Bidder. The Break-Up Fee shall constitute an administrative expense of Debtors under Sections 503(b) and 507(a)(1) of the Bankruptcy Code. If Buyer is the Successful Bidder and Buyer breaches its obligations under the APA without having its performance excused under the terms of the APA, it shall not be entitled to receive the Break-Up Fee if a sale of some or all of the Acquired Assets is closed with another party.

k. In the event a bidder is declared to be the Successful Bidder and such bidder fails to timely perform any of its obligations as set forth above or pursuant to the Bankruptcy Court approved definitive agreements, such declared Successful Bidder shall forfeit all deposits made to the extent provided in such definitive agreements or for failure to enter into such definitive agreement if a bidder other than the Buyer without regard to Sellers' ultimate damages occasioned by such failure; such deposits shall not constitute liquidated damages; and, notwithstanding the foregoing, Debtors and the bankruptcy estates shall retain all rights, remedies, claims, counterclaims, and defenses, including the right to seek equitable or injunctive relief. In such an event the Debtors shall be free to treat the next highest and best bid received as the Successful Bid without further Court approval.

l. Debtors shall give not less than twenty-four (24) days written notice to all parties in interest in the case, including all Persons which have asserted liens on or security interests in any of the Acquired Assets, all non-debtor parties to the Assumed Executory Contracts and all known prospective bidders of the date, time and location of the Sale Hearing, unless the Bankruptcy Court enters an order allowing the Sale Hearing to proceed on less notice.

m. In the event Debtors are unable to obtain Court approval of the Sale Motion, the sole remedy of any bidder shall be of the return of its deposit except, with respect to Buyer, as otherwise provided in the APA with respect to the Break-Up Fee.

n. All bids shall (i) be all cash as to amounts payable for the Acquired Assets exclusive of any amounts designated for post-closing investment by any Successful Bidder, or (ii) cash in an amount necessary to pay the undisputed claims of creditors in full, together with a non-cash component in excess of such amount.