The Honorable Karen A. Overstreet
Chapter 11
Hearing Location: 700 Stewart St., Rm. 7206
Hearing Date: October 1, 2010
Hearing Time:    9:30 a.m.
Response Date: September 24 , 2010

# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

In re

TACO DEL MAR FRANCHISING CORP.
Tax ID / EIN: 91-1723173

        Debtor.

_____

CONRAD & BARRY INVESTMENTS, INC.
Tax ID / EIN: 91-1667322

        Debtor.

Lead Case No. 10-10528-KAO
(Administratively Consolidated with
10-10529-KAO)

ORDER APPROVING:

1.  SALE, PURSUANT TO AN AUCTION, OF
    SUBSTANTIALLY ALL OF DEBTORS'
    ASSETS AND BUSINESS FREE AND CLEAR
    OF LIENS; AND ADDITIONAL RELIEF [Dkt.
    #262]; AND

2.  ASSUMPTION AND ASSIGNMENT OF
    CONTRACTS; REJECTION OF CERTAIN
    CONTRACTS; PAYMENT FROM SALE
    PROCEEDS OF CERTAIN CURE COSTS [Dkt.
    #322]

    The motions of Taco Del Mar Franchising Corp. ("**TDM**") and Conrad & Barry Investments,

Inc. ("**C&B**"), the Debtors and Debtors In Possession ("**Debtors**"), for approval of (1) the Sale,

Pursuant to an Auction, of Substantially All of TDM's Assets and Business Free and Clear of Liens;

and Additional Relief ("Sale Motion") [Dkt. #262]; and (2) the Assumption and Assignment of

Contracts; Rejection of Certain Contracts; Payment from Sale Proceeds of Certain Cure Costs

ORDER APPROVING: 1. SALE, PURSUANT TO AN AUCTION, OF
SUBSTANTIALLY ALL OF DEBTORS' ASSETS AND BUSINESS FREE
AND CLEAR OF LIENS; AND ADDITIONAL RELIEF; and 2.
ASSUMPTION AND ASSIGNMENT OF CONTRACTS; REJECTION OF
CONTRACTS; PAYMENT OF CERTAIN CURE COSTS - 1
#754130 v3 / 43827-002

*Law Offices*
K A R R  T U T T L E  C A M P B E L L
*A Professional Service Corporation*
**1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028**
**Telephone (206) 223-1313, Facsimile (206) 682-7100**

1  ("Assumption/Rejection Motion") [Dkt. #322]; having both come on for hearing on October 1, 2010 at

2  9:30 am (collectively the "*Sale Hearing*") before the Honorable Karen A. Overstreet, United States

3  Bankruptcy Judge for the Western District of Washington, Seattle Division,  in Courtroom 7206,

4  located at 700 Stewart Street, Seattle Washington.  At the Sale Hearing, in response to objections of

5  NW Mexi Development, LLC, TDM Hawaii, LLC, TDM Mountain States Development Company,

6  and TDM Central and Southeast WA, LLC (collectively the "*Core MDs*")  to the

7  Assumption/Rejection Motion and to TDM's decision to reject all Master Development Agreements

8  ("*MDAs*") as a condition to accepting Franchise Brands, LLC as the Successful Bidder at the Auction,

9  the Court requested that TDM and the Official Committee of Unsecured Creditors (the "*Committee*")

10 submit evidence to support a finding of fact by the Court that TDM has properly exercised its business

11 judgment in seeking the rejection of the MDAs.  TDM and the Committee submitted such evidence

12 [Dkt. Nos. 367, 368, 371] together with a memorandum [Dkt. No. 369], which the Court has

13 considered together with the responsive submissions of the Core MDs [Dkt. No. 374 (including

14 attached declarations)].  On October 7, 2010, the Court entered a "Letter Ruling on Debtor's Motion

15 to Reject Core Master Development Agreements," the findings of which are expressly incorporated

16 into this Order by reference (the "*Letter Ruling*").

17         **NOW, THEREFORE**, the Court having entered its "Order Approving Bidding Procedures"

18 (the "*Procedures Order*") and having considered the Sale Motion, the pleadings and papers filed in

19 support thereof, the TDM's Report on Auction Results reporting that the highest and best bid made at

20 the Auction (as defined in the Procedures Order) was made by Franchise Brands, LLC (the "*Buyer*")

21 and stating that the Debtors request that the Court approve the sale to the Buyer of the assets specified

ORDER APPROVING: 1. SALE, PURSUANT TO AN AUCTION, OF
SUBSTANTIALLY ALL OF DEBTORS' ASSETS AND BUSINESS FREE
AND CLEAR OF LIENS; AND ADDITIONAL RELIEF; and 2.
ASSUMPTION AND ASSIGNMENT OF CONTRACTS; REJECTION OF
CONTRACTS; PAYMENT OF CERTAIN CURE COSTS - 2
#754130 v3 / 43827-002

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

in that certain Asset Purchase Agreement, dated as of October 4, 2010 together with all amendments thereto, a true and correct copy of which is attached as <u>Exhibit A</u> hereto (the "**APA**"[1]). Pursuant to the APA the Debtors have agreed to, among other things, (i) assume, assign and sell to the Buyer, pursuant to section 365 of Title 11 of the United States Code (11 U.S.C. §§ 101 <u>et</u> <u>seq.</u>, the "**Bankruptcy Code**"), the Assumed Executory Contracts, subject to the terms of the APA, and (ii) sell to the Buyer, pursuant to section 363 of the Bankruptcy Code, all of the Acquired Assets, as such transactions (collectively, the "**Sale**") are more fully set forth in the APA; the evidence proffered or adduced at, memorandum, objections, replies and statements filed in connection with, and arguments of counsel made at, the Sale Hearing; and upon the entire record of the Sale Hearing and this case; and good cause appearing thereof;

**IT IS HEREBY FOUND AND CONCLUDED**, pursuant to Bankruptcy Rules 7052 and 9014, that:

A. Voluntary petitions under chapter 11 of the Bankruptcy Code were filed by the Debtors on January 22, 2010.

B. The Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N). Venue of these chapter 11 cases and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C. The Debtors have followed the procedures set forth in the Procedures Order for giving notice of the Sale Motion and the Sale Hearing and the assumption and assignment of the Assumed Executory Contracts.

---

[1] All otherwise undefined capitalized terms used herein having the meaning provided in the Sale Motion.

*Law Offices*
K A R R  T U T T L E  C A M P B E L L
*A Professional Service Corporation*
**1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028**
**Telephone (206) 223-1313, Facsimile (206) 682-7100**

D.  The bidding procedures established by the Procedures Order (the "***Bidding Procedures***") have been fully complied with in all material respects.

E.  Proper, timely, adequate and sufficient notice of the Sale Motion, the Sale Hearing, the Sale and the assumption and assignment of the Assumed Executory Contracts has been provided in accordance with sections 102(1), 105(a), 363 and 365 of the Bankruptcy Code, Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and Local Bankruptcy Rule 9013-1 and in compliance with the Bidding Procedures, such notice was good and sufficient, and appropriate under the particular circumstances, and no other or further notice of the Sale Motion, the Sale Hearing, the Sale and the assumption and assignment of the Assumed Executory Contracts, the rejection of any contracts, licenses and agreements pursuant to Section 5.3(e) of the APA (the "***Rejected Contracts***") or the entry of this Sale Order is required.

F.  A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities.

G.  Creditors, parties-in-interest and other entities have been afforded a reasonable opportunity to bid for the Acquired Assets under the Bidding Procedures.  The Debtors marketed the Acquired Assets and conducted the sale process in compliance with the Procedures Order, Bidding Procedures, the other Orders of this Court and the requirements of applicable law.  The Auction was conducted in a reasonable and appropriate manner and in compliance with the Procedures Order and the Bidding Procedures.

H.  The Buyer is a Qualified Bidder, and the bid submitted by the Buyer at the Auction as reflected in the APA is the highest and best offer for the Acquired Assets.  The consideration to be paid by the Buyer under the APA constitutes reasonably equivalent value for the Acquired Assets and the other consideration being offered by the Debtors under the APA.

I.  The APA reflects the exercise of TDM's sound business judgment.

ORDER APPROVING: 1. SALE, PURSUANT TO AN AUCTION, OF
SUBSTANTIALLY ALL OF DEBTORS' ASSETS AND BUSINESS FREE
AND CLEAR OF LIENS; AND ADDITIONAL RELIEF; and 2.
ASSUMPTION AND ASSIGNMENT OF CONTRACTS; REJECTION OF
CONTRACTS; PAYMENT OF CERTAIN CURE COSTS - 4
#754130 v3 / 43827-002

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

J.  The Debtors have full corporate power and authority to execute the APA and all other documents contemplated thereby, and the sale of the Acquired Assets has been duly and validly authorized by all necessary corporate action of the Debtors.  The Debtors have all the corporate power and authority necessary to consummate the transactions contemplated by the APA, including, without limitation, the Sale.

K.  Approval at this time of the APA and consummation of the Sale, including, without limitation, the assumption and assignment of the Assumed Executory Contracts, is in the best interests of the Debtors and their creditors and estates.

L.  The Debtors have demonstrated good, sufficient and sound business purpose and justification for the Sale.  The Debtors have also demonstrated compelling circumstances for the Sale and the assumption and assignment of the Assumed Executory Contracts, without the filing and confirmation of a plan of reorganization or liquidation in these cases, including, without limitation, the value of the Acquired Assets is likely to depreciate rapidly in the absence of the Sale.

M. The APA was negotiated, proposed and entered into by the Debtors and the Buyer without collusion, in good faith, and from arm's-length bargaining positions.  None of the Debtors or the Buyer has engaged in any conduct that would cause or permit the APA or the Sale to be avoided under section 363(n) of the Bankruptcy Code.  The Buyer is not an "insider" of either of the Debtors or any of their affiliates as that term is defined in section 101(31) of the Bankruptcy Code.

N.  The Buyer is a good faith Buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.  The Buyer will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions contemplated by the APA.  The APA was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States or any state, territory, possession or district thereof.

ORDER APPROVING: 1. SALE, PURSUANT TO AN AUCTION, OF
SUBSTANTIALLY ALL OF DEBTORS' ASSETS AND BUSINESS FREE
AND CLEAR OF LIENS; AND ADDITIONAL RELIEF; and 2.
ASSUMPTION AND ASSIGNMENT OF CONTRACTS; REJECTION OF
CONTRACTS; PAYMENT OF CERTAIN CURE COSTS - 5
#754130 v3 / 43827-002

Law Offices
KARR TUTTLE CAMPBELL
A Professional Service Corporation
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

O.  The terms and conditions of the APA and the purchase price thereunder (i) are fair and reasonable, (ii) represent the highest and best offer for the Acquired Assets, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical alternative and (iv) constitute fair consideration.

P.  The Debtors may sell the Acquired Assets free and clear of all liens, claims, interests and other Encumbrances of any kind or nature whatsoever because, in each case, one or more of the requirements set forth in section 363(f) of the Bankruptcy Code has been satisfied.  Specifically, subsection 363(f)(5) ("such entity could be compelled in a legal or equitable proceeding to accept a money satisfaction of such interest") is satisfied because Washington law authorizes a general receiver to sell property free and clear of liens "whether or not the sale will generate proceeds sufficient to fully satisfy all claims secured by the property."  RCW 7.60.260.  The interests of non-debtor parties with Encumbrances of any kind or nature whatsoever in the Acquired Assets are adequately protected, because such Encumbrances shall attach to the proceeds of the sale of the Acquired Assets to the same extent (and in the same priority and subject to the same limitations) as such Encumbrances attached to the Acquired Assets immediately before the sale.  Those non-debtor parties with Encumbrances of any kind or nature whatsoever in the Acquired Assets who did not object, or who withdrew their objections, to the Sale and the assumption and assignment of the Assumed Executory Contracts are deemed to have consented pursuant to sections 363(f)(2) and 365 of the Bankruptcy Code.  Those non-debtor parties with Encumbrances of any kind or nature whatsoever in the Acquired Assets who did object fall within one or more of the other subsections of sections 363(f) and 365.

Q.  The sale of the Acquired Assets to the Buyer is a prerequisite to the Debtors' ability to confirm and consummate a plan of liquidation.

R.  The transfer of the Acquired Assets to the Buyer will vest the Buyer with good and marketable title to the Acquired Assets, free and clear of any liens, claims and other encumbrances.

Law Offices
KARR TUTTLE CAMPBELL
A Professional Service Corporation
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

S.  Consummation of the Sale, including, without limitation, the transfer of the Acquired Assets to the Buyer will not subject the Buyer to any debts, liabilities, obligations, commitments, responsibilities or claims of any kind or nature whatsoever, whether known or unknown, contingent or otherwise, existing as of the date hereof or hereafter arising, of or against the Debtors, any affiliate of the Debtors, or any other person by reason of such transfers and assignments, including, without limitation, based on any theory of antitrust or successor or transferee liability, except that the Buyer shall only be liable for payment of the liabilities assumed in Section 1.4 of the APA.

T. The Buyer will not consummate the Sale, the assumption and assignment of the Assumed Executory Contracts and other transactions contemplated thereby if the Sale of the Acquired Assets to the Buyer is not free and clear of all Encumbrances or if the Buyer would, or in the future could, be liable for any Encumbrances of any kind or nature whatsoever.

U. Under section 365 of the Bankruptcy Code, the only amounts (including, without limitation, cure costs) that must be paid in order for the Debtors to assume and assign the Assumed Executory Contracts to the Buyer are set forth on Exhibit B hereto.

V. Each of the Debtors and/or Buyer, as applicable in accordance with the APA, has (i) cured, or provided adequate assurance of curing, any default existing prior to the date hereof under each of the Assumed Executory Contracts, within the meaning of Section 365(b)(1)(A) of the Bankruptcy Code, (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed Executory Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and (iii) provided adequate assurance of Buyer's future performance under the Assumed Executory Contracts, within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

ORDER APPROVING: 1. SALE, PURSUANT TO AN AUCTION, OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS AND BUSINESS FREE AND CLEAR OF LIENS; AND ADDITIONAL RELIEF; and 2. ASSUMPTION AND ASSIGNMENT OF CONTRACTS; REJECTION OF CONTRACTS; PAYMENT OF CERTAIN CURE COSTS - 7

#754130 v3 / 43827-002

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

W. Buyer's undertaking to fulfill all future performance obligations under the Assumed Executory Contracts, upon the assumption and assignment to Buyer thereof, is hereby found to be adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code.

X. No defaults exist in the TDM's performance under any of the Assumed Executory Contracts as of the date of this Sale Order other than the failure to pay amounts equal to the Cure Amounts set forth in <u>Exhibit B</u> hereto or defaults that are not required to be cured as contemplated in section 365(b)(1)(A) of the Bankruptcy Code.

Y. The Debtors have demonstrated a good, sufficient and sound business purpose and justification for the rejection of the Rejected Contracts. Except as expressly indicated in the Letter Ruling, rejection of the Rejected Contracts will not give any person or entity any rights, remedies or claims against Buyer, including, without limitation, any rights under section 365(n) of the Bankruptcy Code, or otherwise result in the creation or preservation of any such right, remedy or claim against Buyer.

Z. There is no legal or equitable reason to delay the Sale. Cause exists not to apply the automatic ten (10) day stay imposed by Bankruptcy Rules 6004(g) and 6006(d).

AA. To the extent any of the foregoing findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the foregoing conclusions of law constitute findings of fact, they are adopted as such.

**IT HEREBY IS ORDERED, ADJUDGED AND DECREED** as follows:

1. The Sale Motion and Assumption/Rejection Motion are both granted in all respects. All objections to the Sale Motion or the Assumption/Rejection Motion, including any declarations opposing such motions, relating to those matters necessary for approval of the such motions, and entry of this Sale Order, if any, that have not been withdrawn, waived or settled are hereby overruled on the merits. All persons and entities given notice of the Sale Motion and Assumption/Rejection Motion that

ORDER APPROVING: 1. SALE, PURSUANT TO AN AUCTION, OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS AND BUSINESS FREE AND CLEAR OF LIENS; AND ADDITIONAL RELIEF; and 2. ASSUMPTION AND ASSIGNMENT OF CONTRACTS; REJECTION OF CONTRACTS; PAYMENT OF CERTAIN CURE COSTS - 8

#754130 v3 / 43827-002

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

failed to timely object thereto are deemed to consent to the relief sought therein including without limitation all non-debtor parties to the Assumed Executory Contracts.

2.      The APA and the transactions contemplated thereby, including, without limitation, the Sale, are hereby approved in all respects.  Debtors have good and valid title to the Acquired Assets and the transfer of the Acquired Assets by Debtors to the Buyer shall be a legal, valid and effective transfer of the Acquired Assets, free and clear of any liens, claims and other encumbrances.  The Closing of the Sale and the other transactions contemplated thereby are hereby approved and authorized under section 363(b) of the Bankruptcy Code.

3.      Pursuant to section 365 of the Bankruptcy Code, effective as of the Closing, the Debtors shall (i) assume and assign to Buyer the Assumed Executory Contracts identified on Exhibit B hereto free and clear of all liens and claims, and (ii) execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer such Assumed Executory Contracts to the Buyer as contemplated by the APA.  Buyer may, in its sole discretion at any time prior to the Closing, remove any Contract from Exhibit B, in which case such Contract shall not be an Assumed Contract, but rather shall be an Excluded Asset.  Upon assumption and assignment to Buyer of the Assumed Executory Contracts, the Debtors are relieved from any and all liability for any breach of any Assumed Contract occurring after such assignment as provided for under Section 365(k) of the Bankruptcy Code.

4.      The Rejected Contracts shall be, and hereby are, rejected as of the Closing Date set forth in the APA.  No person or entity shall have any claims, remedies or rights against the Buyer, whether under section 365(n) of the Bankruptcy Code or otherwise, as a result of, in connection with

ORDER APPROVING: 1. SALE, PURSUANT TO AN AUCTION, OF
SUBSTANTIALLY ALL OF DEBTORS' ASSETS AND BUSINESS FREE
AND CLEAR OF LIENS; AND ADDITIONAL RELIEF; and 2.
ASSUMPTION AND ASSIGNMENT OF CONTRACTS; REJECTION OF
CONTRACTS; PAYMENT OF CERTAIN CURE COSTS - 9

#754130 v3 / 43827-002

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
**1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028**
**Telephone (206) 223-1313, Facsimile (206) 682-7100**

or arising from the rejection of the Rejected Contracts, except as expressly indicated in the Letter Ruling.

5.     **The last date for parties to Rejected Contracts to file rejection claims with this Court shall be November 10, 2010 (*"Rejection Claim Bar Date"*), which is the last date on which parties whose contracts are rejected may submit their rejection claims (*"Rejection Claims"*) to the Bankruptcy Court. Debtor shall give notice to parties with Rejection Claims of the Rejection Claim Bar Date**.

6.     Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtors are authorized to and shall sell, and Buyer shall buy, the Acquired Assets on the terms and conditions set forth in the APA free and clear of all Encumbrances of any kind or nature, whether incurred voluntarily or arising by operation of law, in the United States or elsewhere, and all debts arising in any way in connection with any acts of the Debtors, claims (as that term is defined in the Bankruptcy Code), obligations, liabilities, demands, guaranties, options, rights, contractual commitments, restrictions, interests and matters of any kind and nature, arising prior to the Closing Date or relating to acts occurring prior to the Closing Date, whether imposed by agreement, understanding, law, equity or otherwise and whether known or unknown, disclosed or undisclosed, absolute, contingent, inchoate, fixed or otherwise (the foregoing are collectively referred to as "*Claims*" herein), other than Encumbrances and Claims that are expressly assumed by Buyer in the APA.  Any Encumbrances that encumber or are found to encumber or purport to encumber the Acquired Assets shall be transferred to and attach to the net proceeds of the Sale under the APA (after the payments specified herein) to the same extent and in the same priority that they encumbered the Acquired Assets.

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

7.     In furtherance of the foregoing and except for Claims that Buyer is expressly assuming in Section 2.2 of the APA, Buyer is not assuming nor shall it in any way whatsoever be liable or responsible, as a successor or otherwise, for any Encumbrances or Claims of the Debtors or Encumbrances or Claims in any way whatsoever relating to or arising from the Acquired Assets or the Debtors' operations or use of the Acquired Assets, including, without limitation, the Assumed Executory Contracts, on or prior to the Closing Date or any Encumbrances or Claims that in any way whatsoever relate to periods on or prior to the Closing Date or are to be observed, paid, discharged or performed on or prior to the Closing Date (in each case, including any Encumbrances or Claims that result from, relate to or arise out of tort or other product liability claims, in the United States or elsewhere), or any Encumbrances or Claims calculable by reference to the Debtors or their assets or operations, or relating to continuing conditions existing on or prior to the Closing Date, which Encumbrances and Claims are hereby extinguished insofar as they may give rise to successor liability, without regard to whether the claimant asserting any such Encumbrances or Claims has delivered to Buyer a release thereof.  Without limiting the generality of the foregoing, Buyer shall not be liable or responsible, as a successor or otherwise, for Encumbrances and Claims, whether calculable by reference to the Debtors or their operations, or under or in connection with (i) any employment or labor agreements, consulting agreements, severance arrangements, change-in-control agreements or other similar agreements to which one of the Debtors is a party, (ii) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of one of the Debtors, (iii) the cessation of either of the Debtors', or their subsidiaries, operations, dismissal of employees, or termination of employment or labor agreements or

ORDER APPROVING: 1. SALE, PURSUANT TO AN AUCTION, OF
SUBSTANTIALLY ALL OF DEBTORS' ASSETS AND BUSINESS FREE
AND CLEAR OF LIENS; AND ADDITIONAL RELIEF; and 2.
ASSUMPTION AND ASSIGNMENT OF CONTRACTS; REJECTION OF
CONTRACTS; PAYMENT OF CERTAIN CURE COSTS - 11
#754130 v3 / 43827-002

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, obligations that might otherwise arise from or pursuant to the Employee Retirement Income Security Act of 1974, as amended, the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), the Worker Adjustment and Retraining Notification Act, or any such similar regulation in the United States or elsewhere, (iv) workmen's compensation, occupational disease or unemployment or temporary disability insurance claims, (v) environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contamination substances or wastes), which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §9601 *et seq.*, (vi) any bulk sales or similar law, (vii) any liabilities, debts, commitments or obligations of, or required to be paid by, the Debtors for any taxes of any kind for any period, (viii) any liabilities, debts, commitments or obligations for any taxes relating to the operations or Acquired Assets for or applicable to any pre-Closing tax period, including any property taxes, (ix) any liabilities, debts, commitments or obligations for any transfer or similar taxes, (x) any cure amounts payable pursuant to section 365(b)(1)(A), (B) or (C) of the Bankruptcy Code in order to effectuate, pursuant to the Bankruptcy Code, the assumption by the Debtors and assignment to Buyer of the Assumed Executory Contracts, except to the extent that Buyer has assumed such liabilities under the APA, (xi) any liabilities, debts, commitments or obligations of any kind under any contract or lease that

ORDER APPROVING: 1. SALE, PURSUANT TO AN AUCTION, OF
SUBSTANTIALLY ALL OF DEBTORS' ASSETS AND BUSINESS FREE
AND CLEAR OF LIENS; AND ADDITIONAL RELIEF; and 2.
ASSUMPTION AND ASSIGNMENT OF CONTRACTS; REJECTION OF
CONTRACTS; PAYMENT OF CERTAIN CURE COSTS - 12

#754130 v3 / 43827-002

is not an Assumed Contract, (xii) any litigation, and (xiii) any products liability or similar claims, whether pursuant to any federal laws or otherwise.

8.      The recitation, in the immediately preceding paragraph of this Sale Order, of specific agreements, plans or statutes is not intended, and shall not be construed, to limit the generality of the categories of Encumbrances and Claims referred to therein.

9.      All parties holding Encumbrances or Claims of any kind or nature whatsoever against or in the Debtors, or the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the operation of the Debtors' businesses prior to the Closing Date, or the transfer of the Acquired Assets to the Buyer, hereby are forever barred, estopped, and permanently enjoined from asserting such persons' or entities' Encumbrances or Claims against the Buyer, its successors or assigns, property, or assets, whether or not a party asserting any such Lien or Claim has delivered to Buyer a release thereof.

10.      In the absence of a stay pending appeal, if the Buyer and the Debtors elect to close under the APA at any time after entry of this Order, then, with respect to the Sale, the Buyer, as a Buyer in good faith, shall be entitled to the protections of section 363(m) of the Bankruptcy Code if this Sale Order or any authorization contained herein is reversed or modified on appeal.

11.      In the event that any person or entity (as those terms are defined in the Bankruptcy Code) which has filed statements or other documents or agreements evidencing Encumbrances on the Acquired Assets has not delivered in escrow to the Debtors' counsel prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of

ORDER APPROVING: 1. SALE, PURSUANT TO AN AUCTION, OF
SUBSTANTIALLY ALL OF DEBTORS' ASSETS AND BUSINESS FREE
AND CLEAR OF LIENS; AND ADDITIONAL RELIEF; and 2.
ASSUMPTION AND ASSIGNMENT OF CONTRACTS; REJECTION OF
CONTRACTS; PAYMENT OF CERTAIN CURE COSTS - 13
#754130 v3 / 43827-002

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

satisfactions, releases of Encumbrances which such person or entity has with respect to the Acquired Assets, each of the Debtors or the Buyer, on behalf of the Debtors, is, after Closing and payment of the Purchase Price as provided for in the APA, authorized and directed to execute and file or record such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Acquired Assets.

12.    All entities that are presently, or on the Closing Date may be, in possession of some or all of the Acquired Assets are hereby directed to surrender possession of said assets to the Buyer on the Closing Date.

13.    Each of the Debtors are authorized to execute, acknowledge and deliver such deeds, assignments, conveyances, and other assurances, documents, and instruments of transfer and take such other action that may be reasonably necessary to perform the terms and provisions of the APA, and shall take any other action for purposes of assigning, transferring, granting, conveying, and confirming to the Buyer, or reducing to possession, any or all of the Acquired Assets and to execute such nonmaterial amendments to the APA and related agreements as may be required to effectuate the letter and intent of the APA and the consummation of the Sale to the extent contemplated by the APA.

14.    To the extent stamp, documentary, sales and/or other Transfer Taxes are payable, such taxes shall be paid by the by the party that is customarily responsible for payment of such taxes in transactions of this nature.

15.    At or after the Closing, the Debtors are authorized to pay any expenses or costs that are required to be paid in order to consummate the Sale or perform their obligations under the APA.

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

16.     The Assumed Executory Contracts listed on <u>Exhibit B</u> shall, upon assignment to the Buyer, be deemed to be valid and binding and in full force and effect and enforceable in accordance with their respective terms, except as otherwise specifically determined by the Court, notwithstanding any provision in any such Assumed Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer.

17.     Each non-debtor party to an Assumed Contract is hereby forever barred, estopped and permanently enjoined from asserting against the Debtors or the Buyer, or the property of any of them, any default existing as of the date of the Sale Hearing, or any counterclaim, defense, setoff or any other claim asserted or assertable against the Debtors.

18.     Other than the Assumed Executory Contracts, Buyer assumes none of the Debtors' other leases and contracts and shall have no liability whatsoever thereunder.

19.     Subject to the provisions of the APA, this Court retains jurisdiction to (i) enforce and implement the terms and provisions of the APA, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith, (ii) compel delivery of the Acquired Assets to the Buyer, (iii) compel delivery of the purchase price and all adjustments to the purchase price under the APA, (iv) resolve any disputes, controversies or claims arising out of or relating to the APA, (v) interpret, implement and enforce the provisions of this Sale Order and (vi) protect the Buyer against any claims, causes of action or other liabilities of whatever nature that it did not expressly assume under the APA.

ORDER APPROVING: 1. SALE, PURSUANT TO AN AUCTION, OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS AND BUSINESS FREE AND CLEAR OF LIENS; AND ADDITIONAL RELIEF; and 2. ASSUMPTION AND ASSIGNMENT OF CONTRACTS; REJECTION OF CONTRACTS; PAYMENT OF CERTAIN CURE COSTS - 15

#754130 v3 / 43827-002

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

20.     The provisions of this Sale Order authorizing the Debtors to enter into the APA and authorizing the transactions contemplated thereby shall be self-executing, and neither the Debtors nor the Buyer shall be required to execute or file any releases, termination statements, assignments, consents or other instruments in order to effectuate consummation to implement the foregoing provisions hereof except as expressly provided in the APA.  Notwithstanding the foregoing, the Debtors, Buyer and all other parties are authorized and directed to take any and all actions necessary and appropriate to effectuate, consummate and implement fully the APA consistent with their obligations under the APA.

21.     This Order is binding upon and inures to the benefit of any successors or assigns of the Debtors or the Buyer, including any trustee appointed in any subsequent case of the Debtors under Chapter 7 or 11 of the Bankruptcy Code.

22.     This Sale Order is and shall be (i) effective as a determination that, on the Closing Date and after consummation of the Closing and payment of the Purchase Price as provided for herein, all Encumbrances and Claims existing as to the Acquired Assets prior to the Closing have been unconditionally released, discharged and terminated as charges against the Acquired Assets and/or the Buyer (but not as against any other person or entity or the proceeds of the Sale, to which the Encumbrances attach as previously provided, or as against the Debtors' estates, to which Claims remain assertable), and that the conveyance of the Acquired Assets described herein have been effected, and (ii) binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative

ORDER APPROVING: 1. SALE, PURSUANT TO AN AUCTION, OF
SUBSTANTIALLY ALL OF DEBTORS' ASSETS AND BUSINESS FREE
AND CLEAR OF LIENS; AND ADDITIONAL RELIEF; and 2.
ASSUMPTION AND ASSIGNMENT OF CONTRACTS; REJECTION OF
CONTRACTS; PAYMENT OF CERTAIN CURE COSTS - 16
#754130 v3 / 43827-002

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

agencies, governmental departments, secretaries of state, federal, state, and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Acquired Assets.

23. No claim of any kind asserted by the Debtors at any time against any party to any one of the Assumed Executory Contracts shall entitle such party to assert, as against the Buyer, any claim, counterclaim, defense or offset, or affect or impair in any respect the obligations of such party to the Buyer under any one of the Assumed Executory Contracts.

24. The Court hereby orders that the ten-day stays provided for in Bankruptcy Rules 6004(g) and 6006(d) shall not be in effect with respect to the Sale and the other transactions contemplated in the APA (including, without limitation, the assumption and assignment to the Buyer of the Assumed Executory Contracts), and thus this Sale Order shall be effective and enforceable immediately upon entry. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay or risk its appeal being foreclosed as moot in the event that the Buyer and the Debtors elect to close prior to this Order becoming a final, non-appealable order.

25. The provisions of this Sale Order and the APA are non-severable and mutually dependent.

26. Nothing contained in any plan of reorganization or liquidation confirmed in these Cases or any Order of this Court confirming such plan or any other order entered in these Cases shall conflict with or derogate from the provisions of the APA or the terms of this Sale Order.

ORDER APPROVING: 1. SALE, PURSUANT TO AN AUCTION, OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS AND BUSINESS FREE AND CLEAR OF LIENS; AND ADDITIONAL RELIEF; and 2. ASSUMPTION AND ASSIGNMENT OF CONTRACTS; REJECTION OF CONTRACTS; PAYMENT OF CERTAIN CURE COSTS - 17

#754130 v3 / 43827-002

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

1    27.    The APA and any related agreements, documents or other instruments may be modified,

2  amended or supplemented by the parties thereto in accordance with the terms thereof without further

3  order of the Court, provided that any such modification, amendment or supplement is not material and

4  has been provided to the Creditors' Committee in a timely manner for review and comment.

5         Dated this _____ day of _____, 2010.

6

7

8                                    *Karen A. Overstreet*

9                                    United States Bankruptcy Judge
                                     **(Dated as of Entered on Docket date above)**

10  Presented by:

11

12  KARR TUTTLE CAMPBELL

13         /s/ George S. Treperinas
    By:    _____
14         George S. Treperinas, WSBA #15434
           Attorneys for Debtors-in-Possession
15         Taco Del Mar Franchising Corp. and
           Conrad & Barry Investments, Inc.
16

17

18

19

20

21

22

23

24

25

26

27

28  ORDER APPROVING: 1. SALE, PURSUANT TO AN AUCTION, OF
    SUBSTANTIALLY ALL OF DEBTORS' ASSETS AND BUSINESS FREE
    AND CLEAR OF LIENS; AND ADDITIONAL RELIEF; and 2.
    ASSUMPTION AND ASSIGNMENT OF CONTRACTS; REJECTION OF
    CONTRACTS; PAYMENT OF CERTAIN CURE COSTS - 18
    #754130 v3 / 43827-002

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

# ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "Agreement") is entered into as of this ___4th___ day of ___October___, 2010 by and between Franchise Brands, LLC a Delaware limited liability company (the "Purchaser"), on the one hand, and Taco Del Mar Franchising Corp., a Delaware corporation, as debtor in possession ("Seller" or "Company"), on the other hand.

## RECITALS:

WHEREAS, the Seller filed a voluntary petition (the "Petition") for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § § 101, et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Washington (the "Bankruptcy Court"), Case Number 10-10528 ("Bankruptcy Case") on January 22, 2010 ("Petition Date") and is continuing to manage its property as debtor and debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code;

WHEREAS, the Company directly owns all of the issued and outstanding shares in the capital of Taco Del Mar Canadian Franchising Corp., ULC (the "Subsidiary");

WHEREAS, Purchaser (or its Assignee) desires to purchase certain assets from the Company, and the Seller desires to sell, convey, assign, and transfer to Purchaser such assets pursuant to the terms and conditions of this Agreement; and

WHEREAS, the purchase and sale of the assets pursuant to the terms of this Agreement, requires an order of the Bankruptcy Court approving such sale under Section 363 of the Bankruptcy Code and the assumption and assignment of the Assumed Executory Contracts (as hereinafter defined) under Section 365 of the Bankruptcy Code.

## ARTICLE 1
## DEFINITIONS

**Section 1.1      Defined Terms.**  As used herein, the terms below shall have the following meanings:

"1% Fund" shall have the meaning set forth in Section 2.2(b) herein.

"Accounts Receivable" shall mean all accounts, as that term is defined under the Uniform Commercial Code (as enacted in the State of Washington), of Seller, whether current or non-current, including without limitation, trade accounts receivables (including, without limitation, accounts receivable for any product shipped prior to the Closing Date but not invoiced) outstanding as of the Closing Date and any other rights to receive payment for sales as of the Closing Date in respect of goods shipped, products sold or services rendered prior to the Closing Date.

"Acquired Assets" shall have the meaning set forth in Section 2.1 herein.

"<u>Acquisition Proposal</u>" means a proposal (other than by Purchaser or its Affiliates) relating to any merger, consolidation, business combination, sale or other disposition of any of the Acquired Assets pursuant to one or more transactions, the sale of any of the outstanding shares of capital stock or equity interests of the Company (including, without limitation, by way of a tender offer, foreclosure or plan of reorganization or liquidation) or a similar transaction or business combination involving one or more Third Parties and the Company.

 "<u>Affiliate</u>" shall have the same meaning as in the Bankruptcy Code.

"<u>Agreement</u>" shall have the meaning as described in the Preamble herein.

"<u>Assignment Motion</u>" shall have the meaning set forth in Section 6.4(b) herein.

"<u>Assumed Executory Contracts</u>" shall mean the Existing Contracts designated for Assumption by Purchaser pursuant to Section 2.2(a).

"<u>Assumed Liabilities</u>" shall have the meaning set forth in Section 2.2(a) herein.

"<u>Auction</u>" shall mean the auction conducted by Seller pursuant to the Bidding Procedures Order.

"<u>Bankruptcy Code</u>" shall have the meaning as described in the Recitals herein.

 "<u>Bankruptcy Court</u>" shall have the meaning as described in the Recitals herein.

"<u>Bidding Procedures Order</u>" means an order of the Bankruptcy Court (i) setting a deadline for the filing of objections to the entry of the Sale Order, providing that any Auction shall be held no more than three (3) days prior to the Sale Hearing, and scheduling the Sale Hearing, (ii) approving the competitive bidding procedures pursuant to which other bids may be solicited, made and accepted in the form attached hereto as <u>Exhibit A</u>, and (iii) approving the Break-Up Fee.

"<u>Books and Records</u>" shall mean all books and records pertaining to the Acquired Assets of any and every kind, including, without limitation, lists, program inventory lists, engineering, information, sales and promotional literature, manuals and data, sales and purchase correspondence, title reports and policies, files and records relating to management and administration of the Leases, store layout and fixturing plans, lists of present, former and prospective suppliers or customers, correspondence, compact disks, compact disk lists, ledgers, files, reports, plans, drawings and operating records of every kind, held or maintained by Seller, disk or tape files, printouts, runs or other computer-prepared information pertaining to the Acquired Assets, but excluding corporate books and records of the type described in the definition of Excluded Assets.

 "<u>Business Day</u>" shall mean any day excluding Saturday, Sunday and any day which is a legal holiday under the laws of the State of Washington or is a day on which banking institutions located in the state are authorized or required by law or other governmental action to close.

"<u>Purchaser</u>" shall have the meaning as described in the Preamble herein.

"Claim" shall have the meaning set forth in Section 101(5) of the Bankruptcy Code.

"Closing Date" shall mean October 15, 2010, or such other date to which Seller and Purchaser agree to, in writing.

"Closing" shall have the meaning set forth in Section 3.1 herein.

"Code" shall mean the Internal Revenue Code of 1986, as amended.

"Customers" shall mean all of the customers or prospective customers of Seller.

"Deposit" shall have the meaning set forth in Section 2.6(b).

"Deposit Agent" shall mean the law firm of Karr Tuttle Campbell.

"ERISA" shall mean the Employee Retirement Income Security Act.

"ERISA Affiliate" shall mean any entity required to be aggregated in a controlled group or affiliated service group with Seller for purposes of ERISA or the Code (including under Section 414(b), (c), (m) or (o) of the Code or Section 4001 of ERISA), at any relevant time.

"Excluded Assets" shall have the meaning set forth in Section 2.3 herein.

"Existing Contracts" shall mean all oral or written contracts, agreements, including, but not limited to the Taco Del Mar Franchise Agreements, real or personal property leases, subleases, licenses, software support agreements, Permits, distribution arrangements, sales and purchase agreements, and purchase and sale orders to which Seller is a party.

"Final Order" means an Order as to which the time to file an appeal, a motion for rehearing or reconsideration (excluding any motion under F.R.C.P. 60(b)) or a petition for writ of certiorari has expired and no such appeal, motion or petition is pending.

"Governmental Authority" means any United States federal, state or local, or any foreign, government, governmental regulatory or administrative authority, agency or commission or any court, tribunal or judicial or arbitral body.

"Indebtedness" with respect to any Person means any obligation of such Person for borrowed money, and in any event shall include (i) any obligation incurred for all or any part of the purchase price of property or other assets or for the cost of property or other assets constructed or of improvements thereto, other than accounts payable included in current liabilities and incurred in respect of property purchased in the Ordinary Course of Business, (ii) the face amount of all letters of credit issued for the account of such Person, (iii) obligations (whether or not such Person has assumed or become liable for the payment of such obligation) secured by Liens, (iv) capitalized lease obligations, (v) all guarantees and similar obligations of such Person, (vi) all accrued interest, fees and charges in respect of any indebtedness and (vii) all prepayment premiums and penalties, and any other fees, expenses, indemnities and other amounts payable as a result of the prepayment or discharge of any indebtedness.

"IRS" shall mean the Internal Revenue Service.

"Knowledge" shall mean the actual knowledge, rather than constructive or imputed knowledge, without duty to make inquiry, of the current officers of Seller.

"Liabilities" shall mean all liabilities and obligations (whether known or unknown, whether asserted or unasserted, whether absolute or contingent, whether accrued or unaccrued, whether liquidated or unliquidated, and whether due or to become due), including all liabilities for Taxes with respect to periods prior to the Closing Date (including periods prior to the Petition Date).

"Lien" or "Liens" means any lien (statutory or otherwise), hypothecation, encumbrance, Claim, security interest, interest, mortgage, deed of trust, pledge, restriction, charge, instrument, license, preference, priority, security agreement, easement, covenant, encroachment, option, right of recovery, Tax (including foreign, federal, state and local Tax), order of any Governmental Authority, of any kind or nature (including (i) any conditional sale or other title retention agreement and any lease having substantially the same effect as any of the foregoing, (ii) any assignment or deposit arrangement in the nature of a security device, (iii) any claim based on any theory that Purchaser is a successor, transferee or continuation of Seller and (iv) any leasehold interest, license or other right, in favor of a Third Party or Seller, to use any portion of the Acquired Assets, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, known or unknown.

"Material Adverse Effect" or "Material Adverse Change" shall mean any change, development or effect that has been, or would reasonably be expected to be materially adverse to the Acquired Assets, or to the ability of Seller to consummate the transactions contemplated hereby, or any affect or condition which would, with the passage of time, constitute a "material adverse effect" or "material adverse change."

"Order" means any decree, order, injunction, rule, judgment, or consent of or by any Governmental Authority.

"Ordinary Course of Business" shall mean the ordinary course of business of Seller consistent with past custom and practice (including with respect to quantity and frequency), taking into account the effect of the filing of the Petition and consequent limitations on Seller's operations.

"Other Interested Parties" means any Third Party with whom Seller has, prior to the date of this Agreement, engaged in substantive discussions concerning a potential Acquisition Proposal.

"Permit" shall mean all licenses, permits, franchises, approvals, authorizations, consents or orders of, or filings with, or notifications to, any Governmental Authority, whether foreign, provincial, municipal, federal, state or local, necessary for the past or present conduct or operation of Seller's business.

"Person" shall mean any individual, corporation, partnership, limited liability company, trust, association, joint venture or other entity of any kind whatsoever.

"Petition" has the meaning set forth in the preamble.

"Petition Date" shall mean the date upon which the Company filed the Petition.

"Pre-Petition Obligations" means Seller's Liabilities occurring prior to the Petition Date.

"Purchase Price" shall have the meaning as described in Section 2.6(a) herein.

"Purchase Price Allocation Schedule" shall have the meaning set forth in Section 2.7.

"Qualifying Bid" shall have the meaning given to it in the Bidding Procedures Order.

"Representative" shall mean any attorney, accountant, agent, independent contractor or other representative.

"Required Diligence Notice" shall have the meaning as described in Section 8.3 herein.

"Sale Hearing" means the hearing of the Bankruptcy Court to approve this Agreement and the transactions contemplated herein.

"Sale Order" means the order of the Bankruptcy Court obtained after proper notice to creditors and parties in interest consistent with the Bankruptcy Code, in form and substance satisfactory to Purchaser, in its sole discretion, to be entered by the Bankruptcy Court pursuant to Sections 363and 365 of the Bankruptcy Code: (i) approving this Agreement and the transactions contemplated hereby; (ii) approving the sale of the Acquired Assets to Purchaser free and clear of all Liens pursuant to Section 363(f) of the Bankruptcy Code; (iii) approving the assumption and assignment to Purchaser of the Assumed Executory Contracts pursuant to Section 365(f)(2) of the Bankruptcy Code; (iv) transferring and assigning the Assumed Executory Contracts such that the Assumed Executory Contracts will be in full force and effect from and after the Closing; (v) finding that Purchaser is a good-faith purchaser entitled to the protections of Section 363(m) of the Bankruptcy Code; (vi) confirming that Purchaser is acquiring the Acquired Assets free and clear of the Unassumed Liabilities; (vii) providing that the provisions of Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure are waived and there will be no stay of execution of the Sale Order under Rule 62(a) of the Federal Rules of Civil Procedure; (viii) retaining jurisdiction of the Bankruptcy Court to interpret and enforce the terms and provisions of this Agreement; and (ix) authorizing the results of the Auction, if one occurs.

"Schedules" means the Schedules attached to this Agreement.

"Seller's Business" shall mean Seller's business as conducted by Seller prior to the Closing.

"Subsidiary" shall mean Taco Del Mar Canadian Franchising Corp., ULC.

"Taco Del Mar Employees" shall mean all individuals employed by Seller.

"Taco Del Mar Franchise Agreements" shall mean any and all franchise agreements with respect to any location, including, but not limited to those in the United States, Canada, Puerto Rico and Guam/Saipan relating to the operation of Taco Del Mar branded restaurants.

"Taco Del Mar Intellectual Property" means any and all U.S. and foreign: (i) inventions (whether patentable or unpatentable and whether or not reduced to practice, all improvements thereto, and patents, patent applications, patent disclosures together with all renewals, reissuances, divisions, continuations, continuation-in-part, substitutes, extensions, and reexaminations of the foregoing, (ii) trademarks, service marks, trade dress, trade names, logos and corporate names and registrations, renewals, and applications for registration thereof together with all of the goodwill associated therewith, (iii) copyrights (registered or unregistered) and copyrightable works and registrations and applications for registration thereof, (iv) mask works and registrations and applications for registration thereof, (v) design rights (registered or unregistered) and applications for registration thereof, (vi) computer software (in both source code and object code form and all commented versions thereof), whether purchased, licensed or internally developed, data, data bases and documentation thereof, (vii) all mask works and all applications, registrations and renewals in connection therewith, (viii) trade secrets, proprietary formulations and other confidential information (including, without limitation, ideas, formulas, compositions, know-how, show-how, manufacturing and production processes and techniques, research and development information and results, engineering, quality control, testing, operations, logistical, maintenance and other technical information, drawings, diagrams, catalogs, specifications, designs, plans, proposals, technical data, copyrightable works, pricing and cost information, financial and marketing plans, business plans and proposals, customer and supplier lists and information), (ix) internet domain names and web sites, (x) registrations and applications for any of the foregoing, and (xi) copies and tangible embodiments thereof (in whatever form or medium) relating to the Taco Del Mar brand.

"Taxes" shall mean all taxes, duties, charges, fees, registration fees, revenue permit fees, levies, penalties or other assessments imposed by any governmental entity or political subdivision thereof, including income, profit, provisional, salary, estate, excise, property, sales, use, occupation, transfer, franchise, payroll, windfall or other profits, alternative minimum, gross receipts, intangibles, capital stock, estimated, employment, unemployment compensation or net worth, environmental, ad valorem, stamp, value added or gains taxes, capital duty, registration and documentation fees, custom duties, tariffs and similar charges, withholding, payroll, social security contributions or charges, disability, or other taxes (including any fee, assessment or other charge in the nature of or in lieu of any tax), including any interest, penalties or additions attributable thereto, and any liability to make payment by way of reimbursement, recharge, indemnity, damages or management charge related to taxes and regardless of whether such amounts are chargeable directly or primarily against Seller.

"Third Party" means any Person other than Seller, Purchaser and any of their respective Affiliates.

# ARTICLE II
# PURCHASE AND SALE

**Section 2.1     Transfer of Assets.**  Upon the terms and subject to the conditions and provisions contained herein, at the Closing, Seller shall sell, convey, transfer, assign and deliver (or cause to be sold, conveyed, transferred, assigned and delivered) to Purchaser, free and clear of all Liens, and Purchaser shall acquire and accept from Seller, all right, title and interest in and to all of the assets, properties, business and rights of any and every kind owned by Seller, whether tangible or intangible, real or personal, including, without limitation, the following assets (but exclusive, in all cases, of the Excluded Assets) (all of the assets to be sold, assigned, transferred and delivered to Purchaser hereunder, the "Acquired Assets"):

(a)     all of Seller's interest in the Taco Del Mar brand;

(b)     all of Seller's operating systems and franchise systems relating to the Taco Del Mar brand, including any and all computers and software, and personal property related thereto, including all computer racks, cables and racks;

(c)     all of Seller's Taco Del Mar Intellectual Property;

(d)     all of Seller's rights existing under the Assumed Executory Contracts, which are those Existing Contracts identified by Purchaser for assumption pursuant to Section 2.2(a), below;

**Section 2.2     Assignment and Assumption of Liabilities.**  Notwithstanding anything to the contrary in this Agreement, Purchaser shall only assume the following liabilities of Seller (the "Assumed Liabilities"):

(a)     Subject to Seller's obligation to cure any and all related pre-closing obligations, the obligations under the Assumed Executory Contracts first arising after the Closing.  Purchaser shall assume the Existing Contracts as listed in Exhibit A of Sellers' MOTION FOR AN ORDER APPROVING THE ASSUMPTION AND ASSIGNMENT AAND REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND ESTABLISHING CURE AMOUNTS date September 15th, 2010 (the "Assumed Executory Contracts").

(b)     Seller's pre-Closing obligations to deposit monies collected from Taco Del Mar franchisees into a marketing fund for those franchises of the Company and the Subsidiary (the "1% Fund"), in an amount not to exceed $525,000.

Section 2.2(a) above shall not limit any claims or defenses Purchaser may have against any party other than Seller.  The transactions contemplated by this Agreement shall in no way expand the rights or remedies of any Third Party against Purchaser or Seller as compared to the rights and remedies which such Third Party would have had against Seller absent the Chapter 11 Case had Purchaser not assumed such Assumed Liabilities.

**Section 2.3     Excluded Assets.**  Notwithstanding anything to the contrary in this Agreement, the following assets of Seller shall be retained by Seller and are not being sold or

assigned to Purchaser hereunder (all of the following are referred to herein collectively as the "<u>Excluded Assets</u>"):

(a)     any and all rights, claims, causes of action, including avoidance claims, arising under the Bankruptcy Code (a "<u>Bankruptcy Action</u>" and, collectively, the "<u>Bankruptcy Actions</u>");

(b)     the corporate charter, seals, minute books, stock transfer books and other documents relating solely to the organization, maintenance and existence of Seller as a corporation;

(c)     all Existing Contracts which are not Assumed Executory Contracts (the "<u>Excluded Contracts</u>");

(d)     all cash and cash equivalents not included in Section 2.1(d), above.

(e)     any rights of Seller under this Agreement;

(f)     all claims, rights of action, suits or proceedings, whether in law or in equity, whether known or unknown, that Seller or Seller's bankruptcy estate may hold against any person or entity, foreign or domestic, under any law whatsoever, except claims that may exist against Purchaser or any of its principals or to the extent related to or arising under any Assumed Executory Contract and except as otherwise provided in Section 2.1(e);

(g)     those Fixed Assets rejected by Purchaser pursuant to written notice by Purchaser to Seller given not later than twenty-one days from execution of this Agreement (Purchaser agrees to allow any third party owning or having rights to such Fixed Assets reasonable access to remove such property from the Acquired Locations);

(h)     all rights to payment of any kind due Seller, including Seller's rights and claims, whether known or unknown under existing insurance of any kind;

(i)     all Accounts Receivable; and

(j)     all of Seller's rights, claims, credits, immunities, or rights of set-off against third parties (including former and present employees of Seller) relating to the Acquired Assets, including, without limitation, unliquidated rights under warranties, but only to the extent such rights may be used as defenses to payments but not as affirmative claims for recovery.

**Section 2.4     No Other Liabilities Assumed.**  Seller acknowledges and agrees that pursuant to the terms and provisions of this Agreement, Purchaser will not assume any obligation of Seller, other than the Assumed Liabilities.  In furtherance and not in limitation of the foregoing, neither Purchaser nor any of its Affiliates shall assume, and shall not be deemed to have assumed, any debt, Claim, obligation or other Liability of Seller whatsoever, including, but not limited to the following (collectively, the "<u>Unassumed Liabilities</u>"):

(a)     all Claims or Liabilities of Seller that relate to any of the Excluded Assets or the Existing Contracts that are not Assumed Contracts;

(b)      any cure obligations (other than the 1% Fund, to the extent it is construed as cure obligations), costs and fees (pursuant to Section 365 of the Bankruptcy Code) with respect to any Assumed Executory Contract;

(c)      other than the Assumed Liabilities, all Indebtedness of Seller;

(d)      all Liabilities of Seller resulting from, caused by or arising out of, or which relate to, directly or indirectly, the conduct of Seller anywhere or Seller's ownership or lease of any properties or assets or any properties or assets previously used by Seller at any time, or other actions, omissions or events occurring prior to the Closing and which (i) constitute, may constitute or are alleged to constitute a tort, breach of contract or violation of any law, rule, regulation, treaty or other similar authority or (ii) relate to any and all Claims, disputes, demands, actions, liabilities, damages, suits in equity or at law, administrative, regulatory or quasi-judicial proceedings, accounts, costs, expenses, setoffs, contributions, attorneys' fees and/or causes of action of whatever kind or character against Seller, whether past, present, future, known or unknown, liquidated or unliquidated, accrued or unaccrued, pending or threatened;

(e)      any Liability arising out of any action or proceeding commenced against Seller after the Closing and arising out of, or relating to, any occurrence or event happening prior to the Closing;

(f)      all Claims or Liabilities (whether known or unknown) with respect to the current or former employees of Seller, including, without limitation, payroll, vacation, sick leave, worker's compensation, unemployment benefits, pension benefits, employee stock option or profit sharing plans, health care plans or benefits, or any other employee plans or benefits or other compensation of any kind to any employee, and obligations of any kind including, without limitation, any Liability pursuant to the WARN Act for any action or inaction except to the extent action by Purchaser is specifically required by the WARN Act;

(g)      any Liability arising under any employee benefit plan of Seller or any other employee benefit plan, program or arrangement at any time maintained, sponsored or contributed to by Seller or any ERISA Affiliate, or with respect to which  Seller or any ERISA Affiliate has any liability;

(h)      any Liability under any employment, collective bargaining, severance, retention or termination agreement with any employee, independent contractor or contractor (or their representatives) of Seller, except to the extent such Liabilities arise after Closing and arise under an Assumed Executory Contract;

(i)      any Liability of Seller to any shareholder or Affiliate of Seller;

(j)      any Liability to indemnify, reimburse or advance amounts to any officer, director, employee or agent of Seller;

(k)      any Liability to distribute to Seller's shareholders or otherwise apply all or any part of the consideration received hereunder;

(l)     any Liability arising out of or resulting from non-compliance with any law, ordinance, regulation or treaty by Seller;

(m)     any Liability of Seller under this Agreement or any other document executed in connection herewith;

(n)     any Liability of Seller based upon such person's acts or omissions occurring after the Closing;

(o)     any Liability of Seller or Subsidiary for Taxes, including, without limitation, any Liability of Seller or Subsidiary in respect of any amount of federal, state or other Taxes (including, without limitation, interest, penalties and additions to such Taxes and any liabilities relating to Taxes arising (i) as a result of Seller or Subsidiary at any time being a member of an affiliated group (as defined in Section 1504(a) of the Code) and (ii) under any Tax allocation, sharing, indemnity, or similar agreement with any Person) which are imposed on or measured by the income of Seller or Subsidiary for any period; and

(p)     any Liability arising out of or resulting from actions taken by Seller prior to Closing related to the shutdown of any of its operations or facilities or the termination of any of its employees or independent contractors including any severance obligations

The parties acknowledge and agree that disclosure of any Liability on any Schedule to this Agreement shall not create an Assumed Liability or other Liability of Purchaser, except where such disclosed obligation has been expressly assumed by Purchaser as an Assumed Liability in accordance with the provisions of Section 2.2 hereof.

**Section 2.5    Cure Obligations.**  To the extent that any Assumed Executory Contract is subject to a cure (pursuant to Section 365 of the Bankruptcy Code), Seller shall be responsible for the payment of such cure amount.   Seller shall pay such cure amount prior to the disbursement of any funds received by Seller pursuant to this Agreement to any third party, including but not limited to any party that may claim a security interest in such funds.

**Section 2.6    Purchase Price**

**(a)     Purchase Price**.  Subject to any credits and/or reductions provided for in this Agreement, the "Purchase Price" for the Acquired Assets is $2,725,000 in cash ("Purchase Price Component A") and $525,000 to be applied to cure the Seller's obligations to the 1% Fund, which amount shall be funded by Purchaser at closing into a segregated trust account and shall be expended on advertising within ninety (90) days following the Closing ("Purchase Price Component B").  To the extent that the Bankruptcy Court determines and orders the amounts due with respect to the 1% Fund to be higher than $525,000, then Purchase Price Component A will be reduced by the amount in excess of $525,000 necessary to cure the Seller's obligations to the 1% Fund and this amount shall be added to Purchase Price Component B.

**(b)     Deposit**.  Purchaser  has delivered to the Deposit Agent the sum of $250,000.00 (together with interest earned thereon, the "Deposit"), which the Deposit Agent shall disburse (i) to Seller at Closing in partial payment of the Purchase Price or (ii) upon

termination of this Agreement, to Seller or Purchaser, as the case may be, as specified in Section 10.2(e) below.

Section 2.7     Allocation Schedule.    If requested by Seller, or if required by the Bankruptcy Court, the Purchase Price and the Assumed Liabilities shall be allocated.    The allocated price shall be allocated among the Acquired Assets in accordance with an allocation schedule (the "Purchase Price Allocation Schedule") proposed by Purchaser and reasonably acceptable to Seller, which shall be prepared in a manner required by Section 1060 of the Code and other applicable laws and delivered by Purchaser to Seller no later than thirty (30) days after the date of this Agreement.    In connection with the Purchase Price Allocation Schedule, Seller and Purchaser shall discuss in good faith the allocation of the Purchase Price in an attempt to reach agreement with respect thereto.    Seller and Purchaser shall prepare mutually acceptable and substantially identical initial and supplement IRS Forms 8594 "Asset Acquisition Statements under 1060" consistent with the Purchase Price Allocation Schedule (giving effect to mutually agreed upon adjustments through the allocations set forth in the Purchase Price Allocation Schedule as a result of any required adjustments to the Purchase Price.

Section 2.8     Employee Matters.

(a)     Seller shall remain liable to the Taco Del Mar Employees for all payments of wages or other compensation (including vacation pay and bonuses) and other employee benefits and obligations arising at any time out of Seller's employment relationship with the Taco Del Mar Employees.

(b)     It is expressly agreed and understood that neither Purchaser nor Seller has any right, power or authority to control, direct or regulate the labor relations and human resources policies and procedures of the other, that neither is deemed to constitute the agent or representative of the other and that neither is liable in any manner whatsoever for the acts or omissions of the other, its agents, representatives or employees.    All of Seller's present or former employees which Purchaser elect to hire, if any, will be deemed to constitute "new hires" of Purchaser.

Section 2.9     Permits.    With respect to any Permits and/or consents which are required for Purchaser's acquisition and usage of the Acquired Assets, Seller hereby agrees to use its best efforts to assist Purchaser in obtaining all such Permits and consents.

## ARTICLE III
## CLOSING

Section 3.1     Closing.    Upon the terms and conditions set forth herein and in the Sale Order, the closing of the transactions contemplated by this Agreement (the "Closing") shall be held at the offices of Karr Tuttle Campbell at 10:00 a.m. **October 15, 2010**, provided that the conditions set forth in Articles VII and VIII are satisfied.    Notwithstanding the foregoing, the Closing may be held at such other time and place as is mutually agreeable to the parties.    The date of Closing is sometimes referred to herein as the "Closing Date".

**Section 3.2    Actions at Closing**.  At the Closing, Seller and Purchaser shall deliver and do (or cause to be delivered and done) the following:

(a)    **Instruments and Possession**.  Seller shall deliver to Purchaser:

(i)    one or more bills of sale, in a form reasonably acceptable to Purchaser and Seller, conveying in the aggregate all of the owned personal property of Seller included in the Acquired Assets, duly executed by Seller;

(ii)    a copy of the Sale Order;

(iii)    all Books and Records and all other tangible Acquired Assets owned by or in the possession of Seller or Subsidiary (excluding any such items that are Excluded Assets);

(iv)    an assignment and assumption agreement in the form attached hereto as <u>Exhibit B</u>, which provides for the assignment and assumption of the Assumed Executory Contracts and the Assumed Liabilities, duly executed by Seller;

(v)    an assignment agreement in the form attached hereto as <u>Exhibit C</u>, <u>which assigns</u> the Taco Del Mar Intellectual Property, including trademarks, service marks and trade names, duly executed by Seller;

(vi)    such other documents as Purchaser may reasonably request.

(b)    **Payment.**  Purchaser shall cause the Deposit Agent to release the Deposit and shall deliver to Seller the balance of the Purchase Price by wire transfer at Closing of immediately available funds to the account that Seller designates in writing not less than one (1) Business Day prior to the Closing.

(c)    **Form of Instruments.**  To the extent that a form of any document to be delivered hereunder is not attached as an exhibit hereto, such documents shall be in form and substance, and shall be executed and delivered in a manner, reasonably satisfactory to Purchaser and Seller.

**Section 3.3    Transaction Expenses.**  Each party shall bear its own costs and expenses, including attorney, accountant and other independent contractor fees, in connection with the execution and negotiation of this Agreement and the consummation of the transactions contemplated hereby.

**Section 3.4    Prorations.**

(a)    Personal Property Taxes.  Personal property taxes associated with the Acquired Assets (the "<u>Personal Property Taxes</u>") that are imposed on a periodic basis and are payable for a tax period that includes (but does not end on) the Closing Date shall be prorated as of the Closing Date, and Seller shall bear the proportion of, and shall have the sole responsibility for, such taxes equal to a fraction, the numerator of which is equal to the number of days which shall have elapsed from the beginning of the applicable tax period to the Closing Date and the

denominator of which is the number of days in the entire applicable tax period, and Purchaser shall be responsible for the remainder.

(b)     Real Property and Similar Taxes.     The real property taxes and assessments including, without limitation, commercial rent taxes, ad valorem, sewer rents, business improvement district, license, intangibles and other similar taxes (including any similar personal property taxes) (the "Real Property Taxes") required to be paid Seller pursuant to the Leases shall be prorated as of the Closing Date between Purchaser and Seller as follows:  Seller shall bear the proportion of, and shall have the sole responsibility for, such taxes equal to a fraction, the numerator of which is equal to the number of days which shall have elapsed from the beginning of the applicable tax period to the Closing Date and the denominator of which is the number of days in the entire applicable tax period and Purchaser shall be responsible for the remainder.

(c)     Tax Responsibility.     Unless otherwise provided to the contrary herein, Purchaser shall be solely responsible for Taxes relating to the Acquired Assets applicable to or arising from the period from and after the Closing Date, and the Seller shall be solely responsible for Taxes relating to Acquired Assets applicable to or arising prior to the Closing.

(d)     Prorations Generally.

(i)     Any and all other payments, receipts, rentals, costs, charges, fees or expenses connected with or used in the operation of the Acquired Assets, including costs under the Assumed Executory Contracts or revenues from the Acquired Assets, shall be prorated between Purchaser and Seller on the Closing Date or as soon thereafter as is reasonably practicable and Seller shall bear their proportion thereof through the day prior to the Closing Date.

(ii)     If any of the items described above cannot be finally apportioned at the Closing because of the unavailability of the amounts which are to be apportioned or otherwise, or are incorrectly apportioned at Closing or subsequent thereto, such items shall be apportioned or reapportioned, as the case may be, as soon as practicable after the Closing or the date such error is discovered or the event giving rise to an apportionment or reapportionment occurs, as applicable.  For purposes of calculating prorations, Seller shall be deemed to have title to the Acquired Locations up to but not including the Closing.  All such prorations shall be made on the basis of the actual number of days of the year and month which shall have elapsed as of the Closing.

### Section 3.6     Indemnification

(a)     Seller's Indemnification.     Seller hereby covenants and agrees, from and after the Closing, to indemnify and to hold harmless Purchaser and its officers and directors, employees and agents (collectively, the "Purchaser Indemnified Party") from and against all claims, losses, liabilities, damages, fines, penalties, taxes, costs and expenses, reasonable fees and disbursements of counsel, including counsel fees incurred to enforce its rights hereunder, (net in all cases of any benefits paid to an Indemnified Party by an insurance carrier in respect of any loss, liability, obligation, damage, deficiency or expense) (collectively, the "Losses"),

sustained or incurred by the Purchaser Indemnified Party as follows: (i) all Losses sustained or incurred by any Purchaser Indemnified Party in respect of Unassumed Liabilities; (ii) all Losses sustained or incurred by any Purchaser Indemnified Party resulting from any breach of any representation or warranty on the part of Seller under this Agreement; (iii) all Losses sustained or incurred by any Purchaser Indemnified Party resulting from any breach of Seller's covenants or agreements contained herein; and (iv) all Liabilities and Losses arising from third party claims in any way connected to the ownership, use or operation of the Acquired Assets for the entire period of Seller's ownership prior to the date on which such Acquired Assets were transferred to Purchaser.

   (b) **Purchaser's Indemnification.** Purchaser hereby covenants and agrees, from and after the Closing, to indemnify and to hold harmless Seller and its officers, directors, employees and agents (collectively, the "<u>Seller Indemnified Party</u>") from and against all Losses sustained or incurred by the Seller Indemnified Party as follows: (i) all Losses sustained or incurred by any Seller Indemnified Party in respect of any Assumed Liabilities; (ii) all Losses sustained or incurred by any Seller Indemnified Party resulting from any breach by Purchaser of any of its representations or warranties; (iii) all Losses sustained or incurred by any Seller Indemnified Party resulting from any breach of any of Purchaser's covenants or agreements contained herein; and (iv) all Liabilities and Losses in any way connected to the ownership, use or operation of the Acquired Assets for the entire period succeeding the date on which such Acquired Assets, or any of them, were transferred to Purchaser.

   (c) **Claims.** Any claim by Purchaser or Seller for indemnification based on this Section 3.5 must be made, if at all, within one (1) year following the Closing.

  **Section 3.7** **Damage.** The risk of destruction, loss or damage by fire or other casualty to any of the Acquired Assets between the date hereof and Closing (a "<u>Damage</u>") shall be treated as follows: In the event that there is uninsured Damage to any of the Acquired Assets, the estimated cost of repair for which exceeds $50,000, Purchaser may, at its election, either (i) terminate this Agreement as to such Acquired Asset, in which event the Purchase Price shall be reduced by the amount of the loss, or (ii) elect to include such Acquired Asset in the Acquired Assets, in which event Seller shall pay to Purchaser at the Closing the estimated cost for the repair of the Damage based on a construction bid reasonably acceptable to Purchaser.

**ARTICLE IV.**
**REPRESENTATIONS AND WARRANTIES OF SELLER**

  As an inducement to Purchaser to enter into this Agreement, Seller represents and warrants to Purchaser that:

  **Section 4.1** **Organization and Authorization.** Seller is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware. Subject to the entry of the Sale Order, (i) this Agreement has been duly executed and delivered by Seller and is a valid and binding obligation of Seller, enforceable against it in accordance with its terms (except to the extent that enforcement may be affected by applicable bankruptcy, reorganization, insolvency and similar laws affecting creditors' rights and remedies and by general principles of equity (regardless of whether enforcement is sought at law or in equity)), and (ii) each agreement

or instrument which has been or shall be entered into or executed and delivered by Seller in connection with the transactions contemplated hereby has been (or will be) duly authorized, executed and delivered by Seller, and is (or will be when authorized, executed and delivered) a valid and binding obligation of Seller, enforceable against it in accordance with its terms (except to the extent that enforcement may be affected by laws relating to bankruptcy, reorganization, insolvency and similar laws affecting creditors' rights and remedies and by general principles of equity (regardless of whether enforcement is sought at law or in equity)).

Section 4.2    No Violation.    Except to the extent not enforceable due to operation of applicable bankruptcy law or the Sale Order, the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby by Seller do not and shall not (i) conflict with or result in any breach of any of the terms, conditions or provisions of, (ii) constitute a default under, (iii) result in a violation of, (iv) give any Third Party the right to modify, terminate or accelerate any obligation under, (v) result in the creation of any Lien upon any of the Acquired Assets or (vi) require any authorization, consent, approval, exemption or other action by or notice or declaration to, or filing with, any court or administrative or other Governmental Authority, under the provisions of the articles of incorporation, by-laws or other constitutive documents of Seller.

Section 4.3    Subsidiaries.    Aside from the Company's ownership of the Subsidiary, Seller does not own any subsidiaries or hold, directly or indirectly, any stock, partnership interest joint venture interest, or other security or interest in any Person.

Section 4.4    Governmental Consents and Approvals.    Except for the Sale Order, to Seller's knowledge, there are no consents, waivers, agreements, approvals, permits or authorizations of, or declarations, filings, notices or registrations to or with, any Governmental Authority required to be made or obtained by Seller in connection with the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby, except where the failure to so obtain would not be reasonably expected to have a Material Adverse Effect.  In addition, Seller represents that to the extent necessary, it has given all required notices under the WARN Act.

Section 4.5    Title to Assets

(a)    Except as set forth on **Schedule 4.5 (Exceptions to Asset Title Warranty)** attached hereto, Seller has good and marketable title to, lawful ownership of, or a valid leasehold interest in, the Acquired Assets, including, but not in any way limited to, the Taco Del Mar Franchise Agreements.

(b)    Subject to Bankruptcy Court approval, Seller has the power and the right to sell, assign and transfer and Seller will sell and deliver to Purchaser, and upon consummation of the transactions contemplated by this Agreement Purchaser will acquire, good and marketable title to the Acquired Assets free and clear of all Liens.

Section 4.6    Legal Compliance.    As to the Acquired Assets, to Seller's Knowledge, Seller has complied in all material respects, and is in material compliance, with all applicable laws, ordinances, rules, requirements and regulations of foreign, federal, state and local

governments and agencies thereof relating to the ownership of the Acquired Assets. Seller has complied with all laws, ordinances, rules, requirements and regulations relating to data protection and/or privacy, and no notices have been received by, and no claims have been filed against, Seller alleging a violation of any such laws, ordinances, rules, requirements or regulations.

**Section 4.7    Contracts.    Schedule 4.7a** lists each Existing Contract and Seller has delivered to Purchaser a correct and complete copy of each such Existing Contract. Except as set forth in **Schedule 4.7b** with respect to each such Existing Contract: (A) the agreement is legal, valid, binding, enforceable, and in full force and effect; (B) subject to entry of the Sale Order, the agreement will continue to be legal, valid, binding, enforceable, and in full force and effect on identical terms following the consummation of the transactions contemplated hereby; (C) except to the extent cured by Seller in conjunction with assignment to Purchaser, no party is in breach or default, and no event has occurred which with notice or lapse of time would constitute a breach or default or permit termination, modification, or acceleration, under the agreement, or if such breach has occurred, it will not have been cured by Closing under Section 365 of the Bankruptcy Code; and (D) no party has repudiated any provision of the agreement or given notice that the agreement has terminated or will be terminating.

**Section 4.8    Litigation.**    Except as set forth in **Schedule 4.8 (Litigation),** there is no action, suit, claim, arbitration, grievance, complaint, charge or proceeding pending against, or threatened against Seller or Subsidiary before any court or arbitrator or any government agency (a) with respect to the Acquired Assets or (b) which seeks to prevent, enjoin, alter or materially delay the execution and delivery this Agreement and any related documents thereto, to carry out Seller's obligations hereunder and thereunder, and to consummate the transaction contemplated hereby and thereby. Attached hereto as **Schedule 4.8** is a true and complete list of all pending actions and judgments against Seller and/or Subsidiary.

**Section 4.9    Investment Bank/Brokers.**    Seller has not incurred any liability to any broker, finder or agent with respect to the payment of any commission regarding the consummation of the transactions contemplated hereby.

**Section 4.11    Real Property.**    Seller does not own any real property.

**Section 4.12    Intellectual Property.**    All Intellectual Property used by Seller in its businesses is owned by Seller.

**Section 4.13    As Is.**    Except as expressly set forth herein, the Acquired Assets are sold "As Is, Where Is", and except for the representations and warranties set forth in this Article IV, no other representation or warranty is made or implied hereby, including a warranty of fitness for a particular purpose, a warranty of merchantability, or otherwise.

**Section 4.14    Taxes.**    Except as set forth in **Schedule 4.14,** Seller and Subsidiary have filed or caused to be filed, within the times and within the manner prescribed by law, all federal, provincial and local tax returns and tax reports which are required to be filed by, or with respect to the Agreements. Such returns and reports reflect accurately all liability for taxes of Seller and/or Subsidiary for the periods covered thereby. All federal, provincial, state and local

income, profits, sales, use, occupancy, excise and other taxes, assessments and reassessments (including interest and penalties) payable by, or due from, Seller and/or Subsidiary have been fully paid or adequately disclosed and fully provided for on **Schedule 4.14** and/or the books and records of Seller and/or Subsidiary. To Seller's knowledge, there are no actions, suits or other proceedings or investigations or claims in progress, pending or threatened against the Agreements in respect of any taxes, governmental charges or assessments and, in particular, there are no currently outstanding reassessments or written enquiries which have been issued or raised by any governmental authority relating to any such taxes, governmental charges and assessments that are not otherwise going to be paid out of the funds comprising the Purchase Price. Seller and Subsidiary have withheld and remitted all amounts required to be withheld and remitted by them in respect of any taxes, or will remit such amounts promptly after Closing.

## ARTICLE V.
## REPRESENTATIONS AND WARRANTIES OF PURCHASER

As an inducement to Seller to enter into this Agreement, Purchaser represents and warrants to Seller that:

**Section 5.1     Organization.**  Purchaser is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware.

**Section 5.2     Authorization.**  Purchaser has all necessary power and authority to enter into this Agreement and has taken all company action necessary to execute and deliver this Agreement, to consummate the transactions contemplated hereby and to perform its obligations hereunder, and no other company proceedings on the part of Purchaser are necessary to authorize the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby.  This Agreement has been duly executed and delivered by Purchaser and is a valid and binding obligation of Purchaser, enforceable against it in accordance with its terms (except to the extent that enforcement may be affected by applicable bankruptcy, reorganization, insolvency and similar laws affecting creditors' rights and remedies and by general principles of equity (regardless of whether enforcement is sought at law or in equity)). Each agreement or instrument which has been or shall be entered into or executed and delivered by Purchaser in connection with the transactions contemplated hereby has been (or will be) duly authorized, executed and delivered by Purchaser, and is (or will be when authorized, executed and delivered) a valid and binding obligation of Purchaser, enforceable against it in accordance with its terms (except to the extent that enforcement may be affected by laws relating to bankruptcy, reorganization, insolvency and similar laws affecting creditors' rights and remedies and by general principles of equity (regardless of whether enforcement is sought at law or in equity)).

**Section 5.3     Governmental Consents and Approvals.**  To Purchaser's Knowledge, other than the Sale Order, no consent, waiver, agreement, approval, permit or authorization of, or declaration, filing, notice or registration to or with, any United States federal or state governmental or regulatory authority is required to be made or obtained by Purchaser in connection with the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby or thereby.

**Section 5.4    No Violation.**    The execution and delivery of this Agreement and the other agreements specified herein and the consummation of the transactions contemplated hereby and thereby do not and will not (i) violate any provision of the organizational documents of Purchaser or (ii) conflict with or violate any statute or law, or any judgment, decree, order, regulation or rule of any court or governmental authority, binding upon or applicable to Purchaser or by which the property or assets of Purchaser are bound or affected.

**ARTICLE VI.**
**ADDITIONAL COVENANTS**

**Section 6.1    Maintenance of Assets.**    Seller shall, to the extent permitted by the Bankruptcy Court and consistent with sound commercial business practices, but without any obligation to discharge Pre-Petition Obligations, (a) maintain the Acquired Assets (except for Taco Del Mar Franchise Agreements) in their current state of repair, excepting normal wear and tear, (b) perform its obligations as required under Taco Del Mar Franchise Agreements which are not in default, (c) operate the business relating to the Acquired Assets in the Ordinary Course of Business for a Chapter 11 debtor, (d) enforce its historical security and anti-theft policies, and (e) maintain the insurance covering the Acquired Assets in effect on the date hereof until Closing.

**Section 6.2    Access to Information and Facilities.**    Seller shall allow Purchaser and its Representatives (and any financial institutions (and their Representatives) identified in writing to the Seller as providing or proposed to provide financing in connection with this Agreement and the transactions contemplated hereby) to make such inspection of the Acquired Assets, and during Seller's normal business hours to inspect and make copies of contracts, Books and Records and all other documents and information requested by Purchaser and related to the Acquired Assets or Seller's businesses, including access to Seller's employees, upon reasonable advance notice, but in no event less than two (2) days advance notice; provided, however, that any such party shall be bound by a nondisclosure agreement in customary form.

**Section 6.3    Best Efforts; Further Assurances**

(a)    Seller will use its reasonable best efforts to obtain the entry of the Bidding Procedures Order by the Bankruptcy Court as soon as practicable upon such notice as is approved by the Bankruptcy Court.  Seller will use its reasonable best efforts to timely obtain any other consent required for the consummation of the transactions contemplated by this Agreement as soon as practicable.

(b)    Seller shall execute such documents and use its reasonable best efforts to take or cause to be taken all actions and do or cause to be done all things necessary, proper or advisable to consummate the transactions contemplated by this Agreement (including, without limitation, to put Purchaser in actual possession and operating control of the Acquired Assets, to effectuate, record or perfect the transfer of the Acquired Assets to Purchaser, to confirm the title of the Acquired Assets in Purchaser, to assist Purchaser in exercising rights relating thereto, to obtain all consents, approvals and authorizations of Third Parties, to make all filings with and give all notices to Third Parties which may be necessary or required in order to effectuate the transactions contemplated hereby); provided, however, that the foregoing shall not require Seller to make any payments to any party.  Seller shall use commercially reasonable efforts to fulfill or

obtain the fulfillment of the conditions set forth in Article VII of this Agreement. The obligations of Seller set forth in the first sentence of this Section 6.3(b) shall survive the Closing.

### Section 6.4     Bankruptcy Actions

(a)     Within three Business Days of the date the Deposit is received by the Deposit Agent, Seller shall file with the Bankruptcy Court a motion, in a form reasonably acceptable to Purchaser, seeking entry of the Bidding Procedures Order and to approve the transactions contemplated by this Agreement ("Sale Motion"), which motion shall seek the Bankruptcy Court's approval of this Agreement and Seller's performance under this Agreement.

(b)     Within three (3) days of the date Purchaser notifies Seller of which Existing Contracts it wishes to assume, Seller shall file with the Bankruptcy Court a motion, in a form reasonably acceptable to Purchaser, (which may be included in the Sale Motion) for an order authorizing the assumption and assignment pursuant to Section 365 of the Bankruptcy Code of the Assumed Executory Contracts (the "Assignment Motion"). The Existing Contracts shall be identified on an exhibit to the Assignment Motion. Such exhibit shall set forth any estimated amounts necessary to cure defaults under each of such Assumed Executory Contracts, if any, as determined by Seller based on the Books and Records. Seller shall, at the written direction of Purchaser, provide the Bankruptcy Court and parties to Existing Contracts, notice of Purchaser's intent to assume specified Existing Contracts at such time as Purchaser so informs Seller pursuant to Section 2.2(a). In cases in which Seller does not believe that a default exists, the relevant cure amount shall be set at $0.00. The Assignment Motion shall reflect that Purchaser's promise to perform from and after the Closing under the Assumed Executory Contracts and shall be the only adequate assurance of future performance necessary to satisfy the requirements of Section 365 of the Bankruptcy Code in respect of the assignment to Purchaser of such Assumed Executory Contracts, provided, however, Purchaser shall provide whatever reasonable financial or other information the Bankruptcy Court may require to make such a determination.

(c)     Upon the Bankruptcy Court's entry of an order setting the date for hearing on the Sale Motion and Assignment Motion, the Seller shall provide appropriate notice of the hearing on the Sale Motion and Assignment Motion as is required by the Bankruptcy Code and Rules to all parties entitled to notice, including, but not limited to, all parties to Assumed Executory Contracts (and to the individuals listed for notice purposes in each Assumed Executory Contract), all taxing and environmental authorities in jurisdictions applicable to Seller, and as otherwise required by such Bankruptcy Court order.

### Section 6.5     Exclusivity; No Solicitation of Transactions.   Seller represents that, other than the transactions contemplated by this Agreement, Seller is neither a party to nor bound by any agreement providing for a merger, sale, restructuring, refinancing or other disposition of all or any material part of Seller's business or the Acquired Assets. Purchaser acknowledges that Seller has a continuing duty, as Debtor-in-Possession in its pending Bankruptcy Case, to provide notice of this Agreement, pending sale, and Bidding Procedures Order to any and all parties (i) required under the Bankruptcy Court's order setting the date for hearing on the Sale Motion and Assignment Motion, (ii) that have been previously contacted by the Company as potential

Purchasers of some or all of the Acquired Assets, (iii) requesting information and copies of the Bidding Procedures Order; and Seller shall have the right to do so.

      **Section 6.7    Continued Effectiveness of Representations and Warranties**.  From the date hereof through the Closing Date, except as otherwise expressly contemplated by this Agreement, Seller shall use commercially reasonable efforts to cause the representations and warranties made in this Agreement to continue to be true and correct in all material respects on and as of the Closing Date as if made on and as of the Closing Date.  Seller shall promptly notify Purchaser and Purchaser shall promptly notify Seller of any event, condition or circumstance occurring from the date hereof through the Closing Date that would constitute a material violation or breach of any of the respective representations or warranties made by Seller contained in this Agreement if made on such date.

      **Section 6.8    Public Announcements**.  Except as otherwise required by law as advised by counsel, the parties will consult with each other and cooperate with respect to the text of any press release or any other public statement, in each case relating to or connected with or arising out of this Agreement or the transactions contemplated hereby.

      **Section 6.9    Confidentiality**.  Purchaser agrees that Purchaser shall hold in strict confidence all data and information obtained by them from Seller (unless such information is or becomes readily ascertainable from public or published information or trade sources) and shall not disclose such information to others without the prior written consent of Seller;  provided that the foregoing shall not restrict necessary disclosures (i) in compliance with requirements of any order, writ, injunction, decree, judgment, direction or demand of any federal, provincial, municipal or other governmental department, commission, board, agency or instrumentality, to whose jurisdiction Purchaser may be subject, (ii) pursuant to any applicable requirement of law or (iii) to the extent necessary in the enforcement of Purchaser's rights hereunder. Purchaser acknowledges executing an NDA, the terms of which remain in full force and effect and survives execution of this Agreement.

# ARTICLE VII.
## CONDITIONS TO SELLER'S OBLIGATIONS

      The obligation of Seller to sell the Acquired Assets and to consummate the transactions contemplated hereby are subject to the satisfaction, on or prior to the Closing Date, of each of the following conditions, any of which may be waived (in whole or in part) by Seller in accordance with Section 11.4 herein.

      **Section 7.1    Section Covenants and Representations.**  The representations and warranties of Purchaser contained in Article V hereof which are not qualified as to materiality (or Material Adverse Effect) shall be true and correct in all material respects and the representations and warranties of Purchaser contained in Article V hereof which are qualified as to materiality (or Material Adverse Effect) shall be true and correct in all respects, in each case as of the Closing Date, as though made on such date (except that representations and warranties that speak as of a specific date need be true and correct only as of such date), and the Purchaser shall have performed in all material respects all of the covenants, agreements and conditions

required by this Agreement to be performed, satisfied and complied with by it hereunder on or prior to the Closing.

**Section 7.2     Litigation.**   No action, suit or other proceedings shall be pending before any Governmental Authority seeking or threatening to restrain or prohibit the consummation of the transactions contemplated by this Agreement, or seeking to obtain damages in respect thereof, or involving a claim that consummation thereof would result in the violation of any law, decree or regulation of any Governmental Authority having appropriate jurisdiction.

**Section 7.3     Bankruptcy Condition.**   Each of the Sale Order and the Bidding Procedures Order shall have been entered on the Bankruptcy Court's docket by the Clerk of the Bankruptcy Court and shall not have been stayed or subject to any stay.

**Section 7.4     Deliveries.**   On or prior to the Closing Date, Purchaser has delivered to Seller all of the following:

>        **(a)**     a certificate from Purchaser in a form reasonably satisfactory to Seller, dated the Closing Date, stating that the conditions specified in Section 7.1 herein have been satisfied;

>        **(b)**     copies of the resolutions of Purchaser board of directors approving the transactions contemplated by this Agreement;

>        **(c)**     the Purchase Price in accordance with Section 3.2(b) hereof.

**ARTICLE VIII.**
**CONDITIONS TO PURCHASER'S OBLIGATIONS**

The obligations of Purchaser to purchase the Acquired Assets and to consummate the transactions contemplated hereby are subject to the satisfaction, on or prior to the Closing Date, of each of the following conditions, any of which may be waived (in whole or in part) by Purchaser in accordance with Section 11.4 herein:

**Section 8.1     Representations and Warranties.**   The representations and warranties of Seller contained in Article IV hereof which are not qualified as to materiality (or Material Adverse Effect) shall be true and correct in all material respects and the representations and warranties of Seller contained in Article IV hereof which are qualified as to materiality (or Material Adverse Effect) shall be true and correct in all respects, in each case as of the Closing Date, as though made on such date (except that representations and warranties that speak as of a specific date need be true and correct only as of such date), except where the failure of such representation and warranty to be so true and correct has not had and would not reasonably be expected to have a Material Adverse Effect.

**Section 8.2     Covenants and Agreements.**   The Seller shall have performed in all material respects all of the covenants, agreements and conditions required by this Agreement to be performed, satisfied and complied with by it hereunder on or prior to the Closing.

**Section 8.4    Bankruptcy Condition.**    Each of the Sale Order and the Bidding Procedures Order, both in forms reasonably acceptable to Purchaser, shall have been entered on the Bankruptcy Court's docket by the Clerk of the Bankruptcy Court and shall not have been stayed or subject to any stay.

**Section 8.5    Litigation.**    No action, suit or other proceedings shall be pending before any Governmental Authority seeking or threatening to restrain or prohibit the consummation of the transactions contemplated by this Agreement, or seeking to obtain damages in respect thereof, or involving a claim that consummation thereof would result in the material violation of any law, decree or regulation of any Governmental Authority having appropriate jurisdiction.

**Section 8.6    Material Adverse Change.**    Since the date of this Agreement, there shall not have been a Material Adverse Change with respect to the Acquired Assets.

**Section 8.7    Approvals.**    All authorizations, consents, filings and approvals necessary to permit Seller to perform the transactions contemplated hereby shall have been duly obtained, made or given, shall be in form and substance reasonably satisfactory to Purchaser, shall not be subject to the satisfaction of any condition that has not been satisfied or waived and shall be in full force and effect. All terminations or expirations of waiting periods imposed by any Governmental Authority necessary for the transactions contemplated under this Agreement, if any, shall have occurred.

**Section 8.8    Cure Costs.**    Seller shall have paid or otherwise provided for all cure obligations (pursuant to Section 365 of the Bankruptcy Code) with respect to the Assumed Executory Contracts.

**Section 8.9    Deliveries.**    On or prior to the Closing Date, Seller shall have delivered to Purchaser all of the following:

(a)    a certificate in a form reasonably satisfactory to Purchaser, dated the Closing Date, stating that the conditions specified in Section 8.1, Section 8.2 and Section 8.5 have been satisfied as of the Closing;

(b)    copies of the resolutions of Seller's boards of directors approving the transactions contemplated by this Agreement; and

(c)    the documents and instruments called for in Section 3.2(a) hereof.

**Section 8.10    Timing of Closing.**    Closing shall have occurred on or before August 15, 2010.

## ARTICLE IX.
## POST-CLOSING COVENANTS

**Section 9.1    Access to Books and Records.**    Inasmuch as certain of the Seller's books, records and documents are to be included in the Acquired Assets, and certain other of the Seller's books, records and documents may be retained by the Seller, and Purchaser or Seller may have need to have access to the books, records and documents held by the other after the

date hereof, Purchaser and Seller agree that each shall maintain (or shall provide for a designated representative to maintain) for at least two (2) years after the Closing (or for such longer period as may be required by applicable law) the respective books, records and documents sold or retained hereunder relating to the Acquired Assets covering periods on or prior to the Closing. During such two (2) year period, subject to the confidentiality rights of third parties, representatives of Purchaser shall be permitted to inspect and make copies of any of such books, records, and documents retained by Seller during normal business hours and upon reasonable notice for any reasonable business purpose, such as for landlord audits or any other audit of Purchaser reasonably requiring the availability of such files or records. During such two (2) year period, subject to the confidentiality rights of third parties, representatives of Seller shall be permitted to inspect and make copies of books, records and documents sold to Purchaser hereunder during normal business hours and upon reasonable notice for any reasonable business purpose, such as for landlord audits or any other audit of Seller reasonably requiring the availability of such files or records.

### ARTICLE X.
### TERMINATION; TERMINATION PAYMENT

**Section 10.1  Termination.**  This Agreement may be terminated prior to the Closing:

(a)  At any time by mutual written consent executed by both Purchaser and Seller;

(b)  by Purchaser in the event of the failure of any condition to closing set forth in Article VIII, or the entry by the Bankruptcy Court of an Order (i) denying the Seller's motion to approve the Bidding Procedures Order or the Sale Order, or (ii) approving any Acquisition Proposal with a Person(s) other than Purchaser;

(c)  by Seller if any event occurs which renders satisfaction of one or more of the conditions to Seller's obligations set forth in Article VII with respect to the Closing impossible;

(d)  by either Purchaser or Seller, by giving written notice of such termination to the other party, if such other party shall breach any of its material representations, covenants or agreements under this Agreement which would result in a failure of the conditions set forth in Sections 8.1 or 8.2, in the case of a termination by Purchaser, and the conditions set forth in Section 7.1, in the case of a termination by Seller, and in the case of covenants and agreements only such breach has not been cured within ten (10) days following the giving of written notice of such breach by the non-breaching party to the breaching party.

**Section 10.2  Remedies.**  In the event of termination of this Agreement pursuant to Section 10.1:

(a)  each party shall redeliver all documents, work papers and other material of any other party relating to the transactions contemplated hereby, whether obtained before or after the execution hereof, to the party furnishing the same;

**(b)** no confidential information received by any party with respect to the business of any other party or its Affiliates shall be disclosed to any Third Party, unless required by law;

**(c)** all obligations of the parties hereto under this Agreement shall terminate and there shall be no liability of any party hereto to any other party and each party hereto shall bear its own expenses incurred in connection with the negotiation, preparation, execution and performance of this Agreement; provided that the foregoing shall not relieve a party of liability for damages actually incurred by the other party as a result of any breach of this Agreement by such party;

**(d)** The parties shall cause the Deposit Agent to return the Deposit to Buyer;

**(e)** if the termination is by Seller due to Purchaser's failure to close without justification, Seller's sole remedy shall be to ask the Bankruptcy Court for an order instructing the Deposit Agent to pay Seller the Deposit as liquidated damages on account of Purchaser's breach, with all parties hereby acknowledging that the amount of the Deposit is a reasonable estimate of the damages (and not a penalty) that may be caused Seller on account of such breach (the precise measure of which would otherwise be impossible); otherwise, the Deposit Agent shall return the Deposit to the Purchaser within one (1) Business Day of the date of termination.

**Section 10.3  Effect of Termination or Breach.**  If the transactions contemplated hereby are not consummated this Agreement shall become null and void and of no further force and effect, except for the obligations of the Parties contained in this Section 10.3 and in Sections 10.2(d), 10.2(e) and 10.2(f) hereof, and except that the termination of this Agreement for any cause shall not relieve any party hereto from any liability which at the time of termination had already accrued to any other party hereto or which thereafter may accrue in respect of any act or omission of such party prior to such termination.

## ARTICLE XI.
## MISCELLANEOUS

**Section 11.1  Assignment; Successors.**  Neither this Agreement nor any of the rights or obligations hereunder may be assigned by any party without the prior written consent of the other; provided, however, (i) Purchaser may assign some or all of its rights under this Agreement to any Affiliate of Purchaser, so long as Purchaser remains liable for its obligations and (ii) Purchaser may assign its rights under this Agreement as collateral security to any lender providing Purchaser with acquisition financing. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective representatives, heirs, legatees, successors and permitted assigns, including without limitation any Chapter 11 trustee appointed in the Chapter 11 Case, and no other person shall have any right, benefit or obligation hereunder.

**Section 11.2  Notices.**  All notices, requests, demands and other communications which are required or may be given under this Agreement shall be in writing and shall be deemed to have been duly given when received if personally delivered; when transmitted if transmitted by

Fax or Email; the date after it is sent, if sent for next day delivery to a domestic address by recognized overnight delivery service (*e.g.*, Federal Express); and upon receipt, if sent by certified or registered mail, return receipt requested. Notices, demands and communications to the Seller and Purchaser shall be sent to the addresses indicated below:

If to Purchaser:  mailto:
Franchise Brands, LLC
Attn: Lisa M. Oak
300 Bic Drive
Milford, CT 06461
Fax: (203) 783-7430

If to Seller:  Taco Del Mar Franchising Corp.

mailto:
c/o
Karr Tuttle Campbell
Attn: George Treperinas
Karr Tuttle Campbell
1201 3rd Ave., #2900
Seattle, WA  98101Fax: 206-682-7100
Email: gtreperinas@karrtuttle.com

With copies to:  Karr Tuttle Campbell
Attn: George Treperinas
Karr Tuttle Campbell
1201 3rd Ave., #2900
Seattle, WA  98101Fax: 206-682-7100
Email: gtreperinas@karrtuttle.com

or to such other place and with such other copies as any party may designate by written notice to the others.

Section 11.3  Choice of Law; Submission to Jurisdiction.  This Agreement shall be construed and interpreted, and the rights of the parties determined in accordance with, the laws of the State of Washington.  Each party irrevocably consents to the service of any and all process in any action or proceeding arising out of or relating to this Agreement by the mailing of copies of such process to each party at its address specified in Section 11.2.  The parties hereto irrevocably submit to the exclusive jurisdiction of the United States Bankruptcy Court (or any court exercising appellate jurisdiction over the Bankruptcy Court) over any dispute arising out of or relating to this Agreement or any other agreement or instrument contemplated hereby or entered into in connection herewith or any of the transactions contemplated hereby or thereby and any such dispute shall be deemed to have arisen in the State of Washington.  Each party hereby irrevocably agrees that all claims in respect of such dispute or proceedings may be heard

and determined in such courts. The parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum in connection therewith.

**Section 11.4    Entire Agreement; Amendments and Waivers.**    This Agreement, together with all Exhibits and Schedules attached or to be attached hereto, constitutes the entire agreement among the parties pertaining to the subject matter hereof and supersedes all prior agreements, understandings, negotiations and discussions, whether oral or written, of the parties with regard to the subject matter hereof. All amendments of this Agreement will only be effective if executed in writing by or on behalf of all parties. No waiver of any of the provisions of this Agreement shall be effective unless made in a writing by the party making the waiver or be deemed or constitute a waiver of any other provision hereof (whether or not similar), nor shall such waiver constitute a continuing waiver unless otherwise expressly provided.

**Section 11.5    Construction.**    The headings and captions of the various Articles and Sections of this Agreement have been inserted solely for purposes of convenience, are not part of this Agreement, and shall not be deemed in any manner to modify, explain, expand or restrict any of the provisions of this Agreement. Unless stated to the contrary, all references to Articles, Sections, paragraphs or clauses herein shall be to the specified Article, Section, paragraph or clause of this Agreement, and all references to Exhibits and Schedules shall be to the specified Exhibits and Schedules attached hereto. All Exhibits and Schedules attached are made a part hereof. All terms defined herein shall have the same meaning in the Exhibits and Schedules, except as otherwise provided therein. All references in this Agreement to "this Agreement" shall be deemed to include the Exhibits and Schedules attached hereto. The terms "hereby," "hereto," "hereunder" and any similar terms as used in this Agreement, refer to this Agreement in its entirety and not only to the particular portion of this Agreement where the term is used. Whenever in this Agreement provision is made for the payment of attorneys' fees, such provision shall be deemed to mean reasonable attorneys' fees and paralegals' fees. The term "including" when used herein shall mean "including, without limitation." Wherever in this Agreement the singular number is used, the same shall include the plural, and the masculine gender shall include the feminine and neuter genders, and vice versa, as the context shall require.

**Section 11.6    Third Party Beneficiaries.**    No Person other than the parties hereto, shall have any rights or claims under this Agreement, except as expressly provided in Section 2.6(c).

**Section 11.7    No Waiver.**    The failure of any party hereto to seek redress for any breach, or to insist upon the strict performance, of any covenant or condition of this Agreement by the other shall not be, or be deemed to be, a waiver of the breach or failure to perform, nor prevent a subsequent act or omission in violation of, or not strictly complying with, the terms hereof from constituting a default hereunder.

**Section 11.8    Multiple Counterparts/Signatures.**    This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

**Section 11.9 Delivery by Facsimile/Email.** This Agreement, the agreements referred to herein, and each other agreement or instrument entered into in connection herewith or therewith or contemplated hereby or thereby, and any amendments hereto or thereto, to the extent signed and delivered by means of a facsimile machine ("Fax") or by electronic mail ("Email"), shall be treated in all manner and respects as an original agreement or instrument and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person. At the request of any party hereto or to any such agreement or instrument, each other party hereto or thereto shall re-execute original forms thereof and deliver them to all other parties. No party hereto or to any such agreement or instrument shall raise the use of a facsimile machine to deliver a signature or the fact that any signature or agreement or instrument was transmitted or communicated through the use of a facsimile machine as a defense to the enforceability of a contract and each party forever waives any such defense.

**Section 11.10 Invalidity.** In the event that any one or more of the provisions, or any portion thereof, contained in this Agreement or in any other instrument referred to herein, shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, then to the maximum extent permitted by law, such invalidity, illegality or unenforceability shall not affect any other provision, or any portion thereof, of this Agreement or any other such instrument.

**Section 11.11 Further Assurances.** Without limiting any other rights or obligations of the parties contained in this Agreement, following the Closing, each party agrees to execute, or cause to be executed, such documents, instruments or conveyances and take such actions as may be reasonably requested by the other party to effectuate the purposes of this Agreement, including, without limitation, such instruments as shall be reasonably requested by Purchaser to vest in Purchaser title in and to the Acquired Assets in accordance with the provisions of this Agreement.

**Section 11.12 Cumulative Remedies.** All rights and remedies of any party hereto are cumulative of each other and of every other right or remedy such party may otherwise have at law or in equity, and the exercise of one or more rights or remedies shall not prejudice or impair the concurrent or subsequent exercise of other rights or remedies.

**Section 11.13 Currency.** Except as otherwise expressly provided in this Agreement, all dollar amounts are stated in United States dollars.

**Section 11.14 Representation by Counsel; Mutual Negotiation.** Each party has been represented by counsel of its choice in negotiating this Agreement. This Agreement shall therefore be deemed to have been negotiated and prepared at the joint request, direction and construction of the parties, at arm's length, with the advice and participation of counsel, and will be interpreted in accordance with its terms without favor to any party.

**Section 11.15 Transfer Taxes.** Any transfer, documentary, sales, use, excise, stamp, registration or other such taxes and fees (including any penalties and interest thereon) which shall be payable with respect to this Agreement or the sale of the Acquired Assets to Purchaser shall be the responsibility of Purchaser.

**Section 11.16 Consents to Assignment.**  Anything in this Agreement to the contrary notwithstanding, this Agreement shall not constitute an agreement to assign any Assumed Executory Contract or any claim or right or any benefit arising thereunder or resulting therefrom if an attempted assignment thereof, without the consent of a third party thereto, would constitute a breach thereof or in any way adversely affect the rights of Purchaser thereunder after taking into account the operation of the Bankruptcy Code.

**Section 11.17 Post-Closing Dispute Resolution.**  Any party may submit to the Bankruptcy Court any controversy, claim or dispute of whatever nature between the parties arising out of or relating to this Agreement after the Closing that is not resolved within thirty (30) days after written notice by one party to the other of such controversy, claim or dispute. The parties agree that the Bankruptcy Court shall have exclusive jurisdiction to resolve such controversy, claim or dispute; provided, however, that upon the entry of a final decree in cases by the Bankruptcy Court, all disputes arising out of or relating to this Agreement (except as otherwise provided herein) shall be brought in a state or federal court located in either King County for state court matters and the Western District of Washington for federal court matters. The Bankruptcy Court shall award a party that prevails in full its reasonable attorneys' fees and costs and shall award a party that prevails less than in full that portion of its reasonable attorneys' fees and costs as determined by the Bankruptcy Court.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective duly authorized officers as of the day and year first above written.

| SELLER<br>TACO DEL MAR FRANCHISING CORP. | BUYER<br>FRANCHISE BRANDS LLC |
|---|---|
| By: _Rich Bries_ | By: _R M Oal_ |
| Its: _CFO_ | Its: Manager and Managing Director |

Franchise Brands/TDMFC Asset Purchase Agreement - 28

**List of Attached Schedules**

Schedule 4.5 – Exceptions to Asset Title Warranty
Schedule 4.7a – Existing Contract List
Schedule 4.7b – Exceptions to Existing Contract Warranty
Schedule 4.8 – Litigation

**List of Attached Exhibits**

Exhibit A – Proposed form of Bidding Procedures Order
Exhibit B – Form of Assignment and Assumption Agreement for Assumed Executory Contracts
       and the Assumed Liabilities
Exhibit C – Form of Assignment of Taco Del Mar Intellectual Property
Exhibit D – Form of Confidentiality and Non-disclosure Agreement
Exhibit E – Proposed form of Sale Order

Schedule 4.5
Exceptions to Asset Title Warranty

(TO BE INSERTED PRIOR TO BID PROCEDURE HEARING)

Schedule 4.7a
Existing Contract List

(TO BE INSERTED PRIOR TO BID PROCEDURE HEARING)

Schedule 4.7b
Exceptions to Existing Contract Warranty

(TO BE INSERTED PRIOR TO BID PROCEDURE HEARING)

Schedule 4.8
Litigation

(TO BE INSERTED PRIOR TO BID PROCEDURE HEARING)

Exhibit A
Proposed form of Bidding Procedures Order
(TO BE INSERTED PRIOR TO BID PROCEDURE HEARING)

Exhibit B
Form of Assignment and Assumption Agreement for Assumed Executory
Contracts and the Assumed Liabilities

## ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS **ASSIGNMENT AND ASSUMPTION AGREEMENT** (the "Assignment and Assumption Agreement") is made and entered into as of _____, 2010, by and among **Taco Del Mar Franchising Corp., a Delaware Corporation** ("Assignor"), and **Franchise Brands LLC a Delaware Limited Liability Company** ("Assignee").

## RECITALS

A.      Assignor and Assignee are parties to that certain Asset Purchase Agreement dated as of _____, 2010 (the "Purchase Agreement"), pursuant to which Assignee has purchased, on the Closing Date, substantially all of the assets of Assignor; and

B.      Pursuant to the Purchase Agreement, Assignor has agreed to assign certain rights and agreements to Assignee, and Assignee has agreed to assume only those obligations of Assignor expressly set forth in this Assignment and Assumption Agreement, and Section 2.2 of the Purchase Agreement.

THEREFORE, the parties agree as follows:

1.      <u>Capitalized Terms</u>.  Capitalized terms used but not defined in this Assignment and Assumption Agreement shall have the meanings for such terms that are set forth in the Purchase Agreement.

2.      <u>Assignment and Assumption</u>.  Effective as of 12:01 a.m. (Pacific time) on the Closing Date (the "Effective Time"), Assignor hereby assigns, sells, transfers and sets over (collectively, <u>the</u> "Assignment") to Assignee all of Assignor's right, title, benefit, privileges and interest in and to, and all of Assignor's burdens, obligations and liabilities in connection with, each of the Assumed Liabilities.  Assignee hereby accepts the Assignment and assumes and agrees to observe and perform all of the duties, obligations, terms, provisions and covenants, and to pay and discharge all of the liabilities of Assignor to be observed, performed, paid or discharged from and after the Closing, in connection with the Assumed Liabilities.  Assignee assumes no liabilities of Seller other than the Assumed Liabilities, and the parties to this Assignment and Assumption Agreement agree that all other liabilities shall remain the sole responsibility of Assignor.

3.      <u>Terms of the Purchase Agreement</u>.  The terms of the Purchase Agreement, including but not limited to Assignor's representations, warranties, covenants, agreements and indemnities relating to the Assumed Liabilities, are incorporated in this Assignment and Assumption Agreement by this reference.  Assignor and Assignee acknowledge and agree that the representations, warranties, covenants, agreements and indemnities contained in the Purchase Agreement shall not be superseded by this Assignment and Assumption Agreement but shall

remain in full force and effect to the full extent provided in the Purchase Agreement. In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms of this Assignment and Assumption Agreement, the terms of the Purchase Agreement shall govern.

4.    <u>Further Actions</u>.    Each of the parties to this Assignment and Assumption Agreement covenants and agrees, to execute and deliver, at its own expense, at the request of the other party to this Assignment and Assumption Agreement, such further instruments of transfer and assignment and to take such other action as such other party may reasonably request to more effectively consummate the assignments and assumptions contemplated by this Assignment and Assumption Agreement.

5.    <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which will be considered an original instrument and all of which together will be considered one and the same agreement, and will become effective when counterparts, that together contain the signatures of each party to this Assignment and Assumption Agreement, will have been delivered to Assignee and Assignor.   Delivery of executed signature pages by facsimile transmission and electronic mail will constitute effective and binding execution and delivery of this Assignment and Assumption Agreement.

DATED, as of the date first above written.


**ASSIGNOR**:                                                    **ASSIGNEE**:

**Taco Del Mar Franchising Corp.,**                **Franchise Brands LLC**
a Delaware corporation                                    a Delaware Limited Liability Company



_____          _____
By:                                                                  By:
Its: President                                                 Its: Lisa M. Oak its Manager

Exhibit C
Form of Assignment of Taco Del Mar Intellectual Property

**ASSIGNMENT OF INTELLECTUAL PROPERTY RIGHTS**

THIS **ASSIGNMENT AGREEMENT** (the "Assignment Agreement") is made and entered into as of _____, 2010, by and among **Taco Del Mar Franchising Corp., a Delaware Corporation** ("Assignor"), and **Franchise Brands LLC, a Delaware** limited liability company("Assignee").

A.      Assignor and Assignee are parties to that certain Asset Purchase Agreement dated as of _____, 2010 (the "Purchase Agreement"), pursuant to which Assignee has purchased, on the Closing Date, substantially all of the assets of Assignor; and

B.      Pursuant to the Purchase Agreement, Assignor has agreed to assign its intellectual property rights to Assignee as expressly set forth in this Assignment Agreement, and Section 2.1(c) of the Purchase Agreement.

THEREFORE, the parties agree as follows:

1.      Capitalized Terms.  Capitalized terms used but not defined in this Assignment Agreement shall have the meanings for such terms that are set forth in the Purchase Agreement.

2.      Assignment.  Effective as of 12:01 a.m. (Pacific time) on the Closing Date (the "Effective Time"), Assignor hereby assigns, sells, transfers and sets over (collectively, the "Assignment") to Assignee all of Assignor's right, title, benefit, privileges and interest in and to, and all of Assignor's burdens, obligations and liabilities in connection with, each of the Taco Del Mar Intellectual Property which consists of any and all U.S. and foreign: (i) inventions (whether patentable or unpatentable and whether or not reduced to practice, all improvements thereto, and patents, patent applications, patent disclosures together with all renewals, reissuances, divisions, continuations, continuation-in-part, substitutes, extensions, and reexaminations of the foregoing, (ii) trademarks, service marks, trade dress, trade names, logos and corporate names and registrations, renewals, and applications for registration thereof together with all of the goodwill associated therewith, (iii) copyrights (registered or unregistered) and copyrightable works and registrations and applications for registration thereof, (iv) mask works and registrations and applications for registration thereof, (v) design rights (registered or unregistered) and applications for registration thereof, (vi) computer software (in both source code and object code form and all commented versions thereof), whether purchased, licensed or internally developed, data, data bases and documentation thereof, (vii) all mask works and all applications, registrations and renewals in connection therewith, (viii) trade secrets, proprietary formulations and other confidential information (including, without limitation, ideas, formulas, compositions, know-how, show-how, manufacturing and production processes and techniques, research and development information and results, engineering, quality control, testing, operations, logistical, maintenance and other technical information, drawings, diagrams, catalogs, specifications, designs, plans, proposals, technical data, copyrightable works, pricing and cost information, financial and marketing plans, business plans and proposals, customer and supplier lists and

information), (ix) internet domain names and web sites, (x) registrations and applications for any of the foregoing, and (xi) copies and tangible embodiments thereof (in whatever form or medium) relating to the Taco Del Mar brand.

       3.       <u>Terms of the Purchase Agreement</u>. The terms of the Purchase Agreement, including but not limited to Assignor's representations, warranties, covenants, agreements and indemnities relating to the Taco Del Mar Intellectual Property, if any, are incorporated in this Assignment Agreement by this reference. Assignor and Assignee acknowledge and agree that the representations, warranties, covenants, agreements and indemnities contained in the Purchase Agreement shall not be superseded by this Assignment Agreement but shall remain in full force and effect to the full extent provided in the Purchase Agreement. In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms of this Assignment Agreement, the terms of the Purchase Agreement shall govern.

       4.       <u>Further Actions</u>. Each of the parties to this Assignment Agreement covenants and agrees, to execute and deliver, at its own expense, at the request of the other party to this Assignment Agreement, such further instruments of transfer and assignment and to take such other action as such other party may reasonably request to more effectively consummate the assignments contemplated by this Assignment Agreement.

       5.       <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which will be considered an original instrument and all of which together will be considered one and the same agreement, and will become effective when counterparts, that together contain the signatures of each party to this Assignment Agreement, will have been delivered to Assignee and Assignor. Delivery of executed signature pages by facsimile transmission and electronic mail will constitute effective and binding execution and delivery of this Assignment Agreement.

       DATED, effective as of the Closing Date.

**Taco Del Mar Franchising Corp.**


By:_____
Name:_____
Title:_____

Exhibit D
Form of Confidentiality and Non-disclosure Agreement

## CONFIDENTIALITY and NONDISCLOSURE AGREEMENT

This Agreement is effective as of the date it is executed by both of the undersigned parties to the Agreement.

## RECITALS

A.      Taco Del Mar Franchising Corp., a Delaware corporation ("Company"), is a franchisor of quick service Mexican restaurant food service concept.

B.      The undersigned has expressed interest in purchasing the Company or the Company's business ("Recipient"), and as part of Recipient's due diligence may desire to evaluate the Company's business records.

C.      Company is similarly interested in entering into discussions with the Recipient about an acquisition of the Company or its assets and is willing to provide the Recipient access to its business records upon certain terms and conditions.

D.      Company and Recipient agree this Confidentiality Agreement is necessary to protect Company's business and that Company has been induced to disclose any and all business records to Recipient in reliance upon the mutual covenants and agreements set forth below.

NOW, THEREFORE, based upon the above recitals, the parties covenant and agree as follows:

## AGREEMENT

1.      **Disclosure.**  Company shall provide Recipient with provisional possession of and review of copies of business records for the sole purpose of assessing its interest in acquiring the Company's business assets[1].  Recipient acknowledges and agrees that Company would not have disclosed any business records to the Recipient without the Recipient's covenants set forth herein, that all business records previously provided (if any) were intended to be subject to the terms of this Agreement; and agree that all such covenants and agreements are reasonable and necessary for the protection of the Company's business and operations.

---

[1] Recipient is defined to include shareholders, officers, directors, employees, advisors and agents and affiliated entities of the party referred to in the Recital B above, and each such additional Recipient may receive business records derivatively, but sign this Agreement to indicate acceptance of the confidentiality and other restrictive terms of this Agreement.

**2.** **Nonuse and Nondisclosure.** Recipient shall at no time disclose, use, or derive benefit from (other than in its assessment of business records for purposes stated above), or permit any other person to examine, disclose, use, or derive benefit from, the business records without the prior written consent of Company which consent may be given or denied in its sole discretion. Recipient shall maintain all parts of the business records and all information (including but not limited to Company's identity) and data contained therein in the strictest confidence, and shall take all necessary precautions needed to preserve such confidentiality. Recipient shall protect the business records and such information and data contained therein by using the highest degree of care and shall be liable for any unauthorized use or disclosure by Recipient's officers, employees, representatives or agents. The business records delivered to Recipient shall at all times remain the proprietary property of Company. Upon written demand by Company, Recipient shall forthwith deliver, and as necessary, cause any others under its control to deliver, all copies in whatever form of the business records to Company.

**3.** **Confidentiality of Agreement.** Recipient shall not at any time disclose, or permit any other person to disclose, the existence of this Agreement without the prior written consent of Company which consent may be given or denied in Company's sole discretion. Recipient shall be liable for any unauthorized disclosure of the existence of this Confidentiality Agreement by its respective officers, employees, representatives or agents.

**4.** **Unauthorized Contact with Agents or Employees.** During the course of preparation of their assessment, the Recipient, including its shareholders, officers, directors, employees, advisors and agents and any of its affiliated entities, shall not engage in any contact or have any discussion of any nature whatsoever with employees, advisors or agents of Company, with the exception of those individuals specifically designated, in writing, as the authorized spokesperson(s) for Company, and with the exception of those contacts and discussions carried on in the ordinary course of business. Larry Destro and Rick Braa are the authorized spokespersons for the Company.

**5.** **Unauthorized Contact with Customers or Vendors.** During the course of preparation of their assessment, the shareholders, officers, directors, employees, advisors and agents of Recipient, and any affiliated entities, shall be entitled to receive and review the business records, but shall not engage in any contact or have any discussion of any nature whatsoever with customers, service providers or vendors of Company, without the prior consent of Company which consent may be given or denied in Company's sole discretion.

**6.** **Breach.** If any of the terms and conditions of this Confidentiality Agreement are breached or otherwise violated, the nonviolator shall have the right to:

      a.    Recover from the violator its actual damages incurred by reason of such breach, including its costs and reasonable attorneys' fees whether or not a lawsuit or other action or proceeding is commenced; and

      b.    Obtain injunctive relief to prevent the unauthorized disclosure or use of the Confidential Material or to otherwise enforce the terms of this Confidentiality Agreement; and

c.      Pursue any other remedy available at law or in equity.

**7.     General.**

a.      <u>Survival</u>.  This Confidentiality Agreement shall remain in full force unless specifically terminated or modified by a writing signed by all parties.

b.      <u>Applicable Law and Venue</u>.  This Confidentiality Agreement shall be interpreted in accordance with the laws of the State of Washington.  Any legal action or proceeding to enforce or interpret the terms of this Confidentiality Agreement shall be brought in the United States Bankruptcy Court for the Western District of Washington.

c.      <u>Authority</u>.  Persons executing this Agreement on behalf of a partnership, limited liability company, corporation or other form of company affirms that he or she has the authority to enter into this Agreement on behalf of his or her respective companies.

d.      <u>Binding on Employees, Agents and Representatives</u>.  This Confidentiality Agreement is entered into by the Recipient on its own behalf and on behalf of all of its employees, agents and representatives, and shall be binding on all such employees, agents and representatives to the same extent it binds the Recipient.  Recipient shall be liable for any breach of this Agreement by its respective employees, agents or representatives. Notwithstanding the forgoing, the Recipient shall obtain signatures from its employees, agents and representatives, who are presented with any of the business records or other proprietary or confidential documents of the Company as allowed under this Agreement.

e.      <u>Counterparts, Facsimile/Email</u>.  This Agreement may be executed in two or more counterparts.  Executed copies of this Agreement transmitted by facsimile and electronic mail shall be deemed to be originals.

**Taco Del Mar Franchising Corp.**                **Recipient: _____**

_____        _____
**By: Larry Destro, its President**               **Printed Name:**

Date_____           Date_____

# Schedule 4.5 -Exception to Asset Warranty

| | Mark | Filing/ Reg. Date | Serial/ Reg. No. | Class | Use/Renewal Dates | Sample Mark Use |
|---|---|---|---|---|---|---|
| **Taco Del Mar Franchising Corp.** | | | | | | |
| | MONDITO BURRITO (Standard Characters) | 10/21/2009 *Pending* | 77/597,032 | 30 | Response to Non-final OA due: 02/18/2010 | Non-final OA issued 08/18/09. Need to file a correct specimen. |
| **Previously Owned by Conrad & Barry Investments, Inc (sole shareholder of Taco Del Mar Franchising Corp.)** | | | | | | |
| |  (Stylized Words) | 9/3/1997 6/29/1999 Canceled on 4/1/06. | 75/351,070 2,256,509 | 42 | Affidavit of Use Due 6/29/2005 Renewal Due 6/29/2009 |  |
| | | | | | | |
| **LICENSE AGREEMENTS:** | | | | | | |
| | Mondo's (standard characters) | Mondo's L.C. issued a Consent (License) Agreement for TDMFC's use of its marks under Registrations #1,129,407, 2,311,276 and 2,527,961 (which were primarily for use in their pizza operations in Iowa). The Agreement was executed as of May 9, 2008 for 2 years, in the geographic territories of San Diego, CA and Albuquerque, New Mexico. **Expired: 5/8/2010** | | | | |
| | | | | | | |

| Category | Vendor | Expiration Date |
|---|---|---|
| **PURCHASING AGREEMENTS** | | |
| Distribution Agreement | MDA Sysco US | 12/31/2011 |
| Distribution Agreement | MDA Sysco CAN | 3/31/2011 |
| Distribution Agreement | MDA HFM Honolulu | 12/31/2011 |
| Distribution Agreement | MDA Quality Distribution Guam | open ended |
| Distribution Agreement | Coke Fountain Agreement | |
| Distribution Agreement | Coke CCE | 12/31/2010 |
| Distribution Agreement | Caburry Swchweppes/ Dr Pepper | 12/31/2010 |
| Distribution Agreement | Coca Cola Enterprises Inc. and The CocaCola Company P.O. Box 1734 Atlanta, GA  30313 | |
| Distribution Agreement | Dr. Pepper/7 Up, Inc. 5301 Legacy Drive Plano, TX  75024 | |
| Pricing Agreement | Allen | 12/31/2010 |
| Pricing Agreement | Mission | 7/31/2010 |
| Pricing Agreement | Prairie | 9/30/2010 |
| Pricing Agreement | Pactiv | 9/30/2010 |
| Pricing Agreement | SCA | 8/31/2010 |
| Pricing Agreement | Puentes | open ended |

| | | |
|---|---|---|
| Pricing Agreement | Trellis | 9/30/2010 |
| Pricing Agreement | Solo | 12/31/2010 |
| Pricing Agreement | Basic American | 12/31/2010 |
| Pricing Agreement | Azteca Foods | open ended |
| Pricing Agreement | Bruce Pac | 12/31/2010 |
| Pricing Agreement | American Pride | 5/31/2010 |
| Pricing Agreement | Border Foods | 8/31/2010 |
| Pricing Agreement | Conagra | 12/31/2010 |
| Pricing Agreement | Fresherized | 12/31/2010 |
| Pricing Agreement | Handgards | 7/31/2010 |
| Pricing Agreement | Heritage Bag | 9/30/2010 |
| Pricing Agreement | Pacific Coast | 12/31/2010 |
| Pricing Agreement | Pacific Cheese | open ended |
| Pricing Agreement | Producer Rice | 10/31/2010 |
| Pricing Agreement | Riceland | 10/31/2010 |
| Pricing Agreement | Tampa Maid | 9/15/2010 |
| Pricing Agreement | Anchor Packaging | 12/31/2010 |
| Pricing Agreement | Kerry Foods | open ended |
| Pricing Agreement | Simplot | 12/31/2010 |
| R&D vendor-no contract, use on "as needed" basis--Vendor used for nutritional breakdown to have for legal menu requirements | Micro-Chem Labs, Inc. 3927 Aurora Ave N #201 Seattle, WA 98103 | |
| **MARKETING AGREEMENTS** | | |
| Photographer | Angie Norwood Browne Photography | Can be terminated at any time |
| Uniforms & Marketing Giveaways for franchsiees | Promoz Direct | Unknown |
| PR firm | Revolution Public Relations Seattle | auto continue until 30 day notice of termination sent |
| Printing, Copying, Binding, Shipping Promo materials | PhotoCraft | Unknown |
| Maintain telltacodelmar.com website | Customerville | 31-Oct-10 |

| | | |
|---|---|---|
| reward cards, Carlos Kids kits, misc. marketing materials | Henry Wurst Inc. P.O. Box 790379 St. Louis, MO 63179 (invoice payment address)<br><br>The Western Division that works with us directly is at a different address:<br><br>Henry Wurst Inc. 5000 Osage Street, Ste 100 Denver, CO 80221 | unknown |
| Marketing creative agency | Williams-Helde Marketing Communications | 12/31/2010;auto continue until 30 day notice of termination sent |
| **I.T. AGREEMENTS** | | |
| Web hosting | Speakeasy Seattle (National HQ) 1201 Western Ave. Seattle, WA 98101<br><br>Possible alternate address—not sure which is most current:<br><br>Speakeasy | |
| Website Developer | Thorloki/Steerboard | |
| POS system maintenance for several franchisees restaurants under the Aloha brand | Radiant Systems, Inc. P.O. Box 198755 Atlanta, GA 30384 (invoice address) and Radiant Systems, Inc. 3925 Brookside Parkway Alpharetta, GA 30022 (contract address) | |
| Domain Hosting | GoDaddy | Varies depending on domain. |

| | | |
|---|---|---|
| Server Hosting | Halfrack.com<br>1425 Broadway #55<br>Seattle, WA 98122-3813 | |
| FishNet Developer | Buddy Phillips | |
| Corp phone/fax | Qwest | |

| | | |
|---|---|---|
| POS | WAND | |
| Network Admin/hosting | The O'Brien Business Group | |
| POS system maintenance for several franchisees restaurants | Subtotal POS System Ltd<br>1867 Highway 359, RR2<br>Centerville, NS B0P 1J0<br>Canada | |
| **DEVELOPMENT DEPARTMENT AGREEMENTS** | | |
| Equipment Fulfillment Company | Hockenbergs Food Service Equipment and Supplies Company14603 W. 112th<br>Lenexa, KS 66215<br><br>866-445-4999 | |
| Décor Fulfillment Company | General Theming Contractor (GTC)<br>3750 Courtright Court<br>Columbus, Ohio 43227 | |
| Millwork & Furniture | J.H. Carr & Sons<br>8311 S. 200th<br>Kent, WA 98032 | |
| Equipment Fulfillment Company | Smith & Greene Company 19015 66th Avenue South<br>Kent WA 98032 | |

| | | |
|---|---|---|
| Canada's Equipment Fulfillment Company | Hendrix Condon Barr<br>457 42nd Avenue SE<br>Calgary, AB T2G1Y3 | |
| **ADMINISTRATION AGREEMENTS** | | |
| Cell Phone Provider | AT&T Mobile<br>P.O. Box 6463<br>Carol Stream, IL 60197 | |
| Corp phone/fax service | Grasshopper | |
| Human Resource management assistance | Personnel Management Systems, Inc.<br>8259 - 122nd Ave NE Ste 300<br>Kirkland, WA 98033 | August 15, 2010 (then goes month-to-month. 10day notice of termination sent directly to Jack via email & cert mail required.) |
| Registered agent in Delaware for TDMFC | Corporation Service Company<br>33 N. LaSalle St. Suite 2320<br>Chicago IL 60602 | 12/31/2010 |
| | | |

MASTER DEVELOPER LIST
(good standing)

| MD Territory | Entity Name | Contact First Name | Contact Last Name | Contact Phone Number | Date MDA Signed |
|---|---|---|---|---|---|
| State of Alaska | ~~TDM - Alaska~~ NTF, LLC | Jim | Chevigny | (206)729-1184 | 7/13/2005 |
| Islands of Guam and Saipan | TDM Guam, Inc. | Chris & Rosario | Felix | (671)647-5003 | 3/22/2006 |
| Idaho, Montana, Wyonming | TDM Mountain States Developments Co. | Todd | Hicks | (208)841-8583 | 9/15/2003 |
| Wausau-Rhinelander, La Crosse-Eau Claire, Cedar Rapids, Madison, Wabasha County in Minneapolis-St. Paul; the county of Goodhue in Minnesota; | Midwest Fresh Mex, LLC | Dan | Jankowski | (651)345-4126 | 4/27/2006 |

| MD Territory | Entity Name | Contact First Name | Contact Last Name | Contact Phone Number | Date MDA Signed |
|---|---|---|---|---|---|
| Contract #1: Syracuse, Utica, Rochester in New York; | ~~TDM Development, LLC~~ Larry Jasenski Jr. | Larry | Jasenski | (518)858-3508 | 9/20/2007 |
| Minnesota (Minot, Bismark, Dickinson expect counties in state of MT), Fargo-Valley City, Mineapolis, St. Paul, Duluth-Superior and Mankato) | Northland Restaurant Group, Inc. | Barry | Maring | (701)232-4020 | 1/18/2006 |
| OR: Bend, Eugene, Medford/Klamath Falls, expept Wallowa, Malheur, Umatilla and Morrow counties; CA:  Siskiyou County WA: Wahkakum, Cowlitz, Clark, Skamania, Klickitat counties | NW Mexi Development, LLC | Jeff | Masterjohn | (425)822-5494 | 8/8/2006 |

| MD Territory | Entity Name | Contact First Name | Contact Last Name | Contact Phone Number | Date MDA Signed |
|---|---|---|---|---|---|
| District of Columbia; State of North Carolina excluding the countries in the Greenville-Spartanburg DMA (i.e. Macon, Graham, Swain, Jackson, Haywood, Madison, Yancey, Mitchell, Buncombe, McDowell, Rutherford, Henderson, Polk and Transylvania); and the Charlotte DMA (including Ashe, Watauga, Avery, Alexander, Caldwell, Burke, Catawba, Cleveland, LIncoln, Gaston, Mecklenburg, Iredell, Union, Anson, Richmond, Stanly, Rowan and Cabbarrus counties) | Mountain Top Development, LLC | Tom | Murphy | (301)359-9181 | 9/30/2006 |
| Hawaii State | TDM Hawaii, LLC | Ken | Nascimento | (808)478-4130 | 3/23/2006 |
| WA (Asotin, Columbia, Garfield, Pend Oreille, Spokane, and Whitman); Idaho (Benewah, Bonner, Boundary, Clearwater, Idaho, Kootenai, Latah, Lewis, Nez Perce, Shoshone) | TDM Central and Southeast WA, LLC (Spokane) | Darwin | Parker | (509)308-2790 | 9/15/2003 |

MASTER DEVELOPER LIST
(good standing)

| MD Territory | Entity Name | Contact First Name | Contact Last Name | Contact Phone Number | Date MDA Signed |
|---|---|---|---|---|---|
| Metro Chicago & Southeastern Chicago DMA (including Metro Chicago, Counties of LaSalle, Grundy, Will, Kankakee, and Kendall in Illinois and Lake, Newton, Japser, Porter and LaPort in Indiana) | Vijay Patel | Vijay | Patel | (248)761-5139 | 4/4/2008 |
| Ohio (Columbus, Zanesville, Parkersburg, Wheeling, Steubenville) | Burrito Brothers Corp. | Greg Tarak | Walker Manowar | | 1/23/2007 |

| Store No. | Location | Franchisee | Franchisee Agreement Effective Date | FA Expiration Date |
|---|---|---|---|---|
| **02-308** | **Fashion Square Mall, Scottsdale AZ** | | | |
| 02-515 | Southern & Higley - Mesa, AZ | TDM Grand Taco, LLC | 02/04/05 | 2/3/2015 |
| 02-754 | 40th St & Camelback-Phoenix AZ | Keffer, Mike & Gail | 07/28/2004 | 7/27/2014 |
| 02-776 | Anthem & Venture, Anthem, AZ | AS, LLC | 04/12/06 | 4/11/2016 |
| 02-1249 | Sedona, AZ | Parks, Rebecca and John | 04/21/2006 | 4/20/2016 |
| 04-916 | 2nd Street- San Francisco CA | Bay Area TacoDelMar, LLC | 09/07/04 | 9/6/2014 |
| 04-1000 | Lake Elsinore Marketplace- San Diego CA | ABC Ventures LLC | 10/05/05 | 10/4/2015 |
| 04-1006 | Expo & 160-Sacramento CA | Sukhjit Kaur & Bagh Singh | 01/27/06 | 1/26/2016 |
| 04-1105 | Lake Isabella, CA | SRS Combine, Inc. | 10/31/05 | 10/30/2015 |
| 04-1310 | Shops at Fairview-Brentwood, CA | Shahmardan Goshtasbi | 03/15/07 | 3/14/2017 |
| 04-1339 | Coffee & Riverlakes - Bakersfield, CA | Biever, Susan | 09/22/2005 | 9/21/2015 |
| 04-1413 | Sunrise Way-Palm Springs, CA | Ruiz, Dan | 09/21/2006 | 9/20/2016 |
| 04-1554 reject in BK | Heritage Village, Fontana CA | Santacruz | | |
| 09-1495 | Taco Del Mar:  Port Charlotte, FL | PATEL, DILIP | 12/4/2007? | ? |
| 11-305 | State Street, ID | Lisa Piva | 12/22/03 | 12/21/2013 |
| 11-306 | McMillan, ID | McMillan TDM | 12/26/03 | 12/25/2013 |
| 11-1258 | Columbia Village-Boise ID | Mucho Gusto, LLC | 07/07/06 | 7/6/2016 |
| 14-1098 | Lakeport- Sioux City IA | Siouxland TDM, Inc. | 08/11/05 | 8/10/2015 |
| 21-1457 | Northbrook Plaza, Livonia-MI | Daher, Mike | 07/25/07 | 7/24/2017 |
| 25-301 | Bozeman, MT | TDM Montana, LLC | 07/17/01 | 7/16/2011 |
| 25-302 | Great Falls, MT | Yurek, Dale and Tracy | 10/22/02 | 10/21/2012 |
| 25-304 | Missoula, MT | Mucho Gusto, LLC | 12/12/03 | 12/11/2013 |

Active Franchise Agreements In Good Standing

| Store No. | Location | Franchisee | Franchisee Agreement Effective Date | FA Expiration Date |
|---|---|---|---|---|
| 25-918 | Montana Avenue-Helena, MT | BRMK, INC. | 05/10/05 | 5/9/2015 |
| 26-1482 | Mission Pines Shops II, Omaha-NE | JJK Enterprises, Inc. | 03/14/07 | 3/13/2017 |
| 27-697 | Rivers Edge- Reno NV | Raj Mehta | 11/03/04 | 11/2/2014 |
| 33-1274 | Dairy Queen Mall - Bismarck ND | Engelhardt Enterprises, LLC | 09/21/06 | 9/20/2016 |
| 34-1559 | Waterloo Crossings, Canal Winchester-OH | Burritoville, LLC | 02/29/08 | 2/28/2018 |
| 34-1623 | Del Mar's Baja Grill - Pickerington, OH | Florida Enterprise, Inc. | 06/09/09 | 6/8/2019 |
| 34-1644 | Frontier Shopping Plaza-OH | JALD Enterprises, Inc. | 07/07/08 | 07/06/2018 |
| 36-183 | Sherwood, OR | V & P Enterprises, LLC | 08/06/04 | 8/5/2014 |
| 36-192 | 82nd & Otty-Clackamas, OR | CDT Investments Corp | 11/02/2004 | 11/1/2014 |
| 36-202 | Hawthorne, Portland, OR | Big Fish LLC | 11/30/2009 (this is the Successor FA | 11/29/2019 |
| 36-204 | Martin Luther King, Portland, OR | Big Fish LLC | 11/30/2009 (this is the Successor FA | 11/29/2019 |
| 36-205 | Park & Taylor, Portland OR | | | |
| 36-206 | Gresham, OR | Big Fish LLC | 10/05/01 | 10/4/2011 |
| 36-207 | Hood River, OR | Full Circle, LLC | 12/20/01 | 12/19/2011 |
| 36-211 | Tanasborne West, Hillsboro, OR | Mexican Belly Busters, Inc. | 02/14/04 | 2/13/2014 |
| 36-212 | Allen Blvd -Beaverton, OR | Phamrest, LLC | 03/02/04 | 3/1/2014 |
| 36-213 | Barbur Plaza - Portland, OR | Patricia Tellez | 03/23/04 | 3/22/2014 |
| 36-216 | Winchester - Roseburg, OR | Stout, William & Brenda | 05/20/04 | 5/19/2014 |
| 36-217 | Tualatin, OR | C & E's Inner Baja, Inc. | 05/29/04 | 5/28/2014 |
| 36-654 | Wood Village - Troutdale, OR | Dang Hai Pham & Phuong Pham | 08/31/04 | 8/30/2014 |
| 36-745 | Portland State Univ.- Portland OR | Phamrest, LLC | 11/28/05 | 11/27/2015 |
| 36-788 | Lake Oswego, OR | C & E's Inner Baja, Inc. | 03/02/05 | 3/1/2015 |
| 36-805 | Hillsboro Civic Center-Hillsboro OR | Phamrest, LLC | 01/12/05 | 1/11/2015 |

Active Franchise Agreements In Good Standing

| Store No. | Location | Franchisee | Franchisee Agreement Effective Date | FA Expiration Date |
|---|---|---|---|---|
| 36-1022 | Cascade Village- Bend OR | La Tortuga, LLC | 12/08/04 | 12/7/2014 |
| 36-1090 | Keizer Station - Keizer OR | N2 TDM, LLC | 10/24/05 | 10/23/2015 |
| 36-1272 | Central Village- West Linn OR | Dan and Kelli Wedin | 09/04/06 | 9/3/2016 |
| 36-1300 | Ontario Marketplace- Ontario OR | Mucho Gusto, LLC | 09/09/06 | 9/8/2016 |
| 36-1329 | Cornell Town Center - Hillsboro, OR | Mexican Belly Busters, Inc. | 02/12/07 | 2/11/2017 |
| 36-1348 | Mission Lakes - Salem, OR | Mission Lakes TDM, LLC | 05/29/07 | 5/28/2017 |
| 36-1351 | Village at Main Street, Wilsonville, OR | NW Mexi Development, | 10/09/06 | 10/8/2016 |
| 36-1393 | Cascade Station- Portland, OR | CDT Investments Corp | 07/16/07 | 7/15/2017 |
| 36-1408 | Happy Valley Town Center-Oregon | Surf 'N Salsa, LLC | 07/30/07 | 7/29/2017 |
| 36-1450 | Oregon City Point- Oregon | SALL Enterprises, LLC | 04/17/07 | 4/16/2017 |
| 36-1454 | Century Park, Bend- OR | La Tortuga, LLC | 08/21/07 | 8/20/2017 |
| 36-1527 | Farmington Center- Oregon | Mark Miller | 07/20/07 | 7/19/2017 |
| 36-1594 | The Dalles-OR | Full Circle, LLC | 06/09/08 | 6/7/2018 |
| 45-1583 | Bradlick Shopping Center, Annandale-VA | Manish Arora | 08/06/07 | 8/5/2017 |
| 45-1606 | Quantico - VA | Pizza Brothers East, Inc. | 06/12/08 | 6/11/2018 |
| 46-101 | Redmond, WA | Taco West, Inc. | 7/12/2007 (this is the Successor FA) | 7/11/2017 (the 4% royalty fee goes up to current FA terms at this time) |
| 46-102 | Roosevelt, WA | Quick Mexi Foods | 7/13/2007 (this is the Successor FA) | 7/12/2017 (the 4% royalty fee goes up to current FA terms at this time) |

Active Franchise Agreements In Good Standing

| Store No. | Location | Franchisee | Franchisee Agreement Effective Date | FA Expiration Date |
|---|---|---|---|---|
| 46-103 | Everett | Kartar Enterprises, Inc. | 7/16/2007 (this is the Successor FA) | 7/15/2017 (the 4% royalty fee goes up to current FA terms at this time) |
| 46-104 | Kirkland | Busting Air, Inc. | 7/12/2007 (this is the Successor FA) | 7/11/2017 (the 4% royalty fee goes up to current FA terms at this time) |
| 46-105 | Puyallup, WA | Quick Mexi Foods | 7/13/2007 (this is the Successor FA) | 7/12/2017 (the 4% royalty fee goes up to current FA terms at this time) |
| 46-107 | Bellevue, WA | Quick Mexi Foods | 7/3/2007 (this is the Successor FA) | 7/2/2017 (the 4% royalty fee goes up to current FA terms at this time) |
| 46-108 | Mezza Café | Pioneer Human Services | 10/29/2007 (this is the Successor FA) | 10/28/2017 (the 4% royalty fee goes up to current FA terms at this time) |
| 46-109 | Totem Lake, WA | Pang Inc. | 6/10/2008 (this is the Successor FA) | 6/9/2018 (the 4% royalty fee goes up to current FA terms at this time) |

| Store No. | Location | Franchisee | Franchisee Agreement Effective Date | FA Expiration Date |
|---|---|---|---|---|
| 46-111 | Overlake, Kirkland, WA | WL Management Group I LLC | 8/25/2007 (this is the Successor FA) | 8/24/2017 (the 4% royalty fee goes up to current FA terms at this time) |
| 46-113 | Woodinville, WA | Nanak Enterprises, Inc. | 11/30/2009 (this is the Successor FA) | 11/29/2019 (the 4% royalty fee goes up to current FA terms at this time) |
| 46-115 | Westgate-Tacoma | Houser, Mark R. | 10/15/2009 (this is the Successor FA) | 10/14/2019 (the 5% royalty fee goes up to current FA terms at this time) |
| 46-118 | Bothell | Sonu Enterprises, Inc. | 10/15/2009 (this is the Successor FA) | 10/14/2019 (the 5% royalty fee goes up to current FA terms at this time) |
| 46-121 | Aurora Village, WA | Bhangu Enterprises LLC | 10/15/2009 (this is the Successor FA) | 10/14/2019 (the 5% royalty fee goes up to current FA terms at this time) |
| 46-122 | Lynnwood | Thind Northwest Inc. | 10/15/2009 (this is the Successor FA) | 10/14/2019 (the 5% royalty fee goes up to current FA terms at this time) |

| Store No. | Location | Franchisee | Franchisee Agreement Effective Date | FA Expiration Date |
|---|---|---|---|---|
| 46-123 | Southcenter | Quick Mexi Foods | 11/30/2009 (this is the Successor FA) | 11/29/2019 (the 4% royalty fee goes up to current FA terms at this time) |
| 46-124 | Bellingham, WA | Sharma, Sanjeev (Steve) | 02/09/00 | 2/8/2010 (extended to 5/8/2010-- may extend again due to bankruptcy-- following up now with Franchisee) |
| 46-125 | Burien | Neil Enterprises, Inc. | 12/22/2009 (this is the Successor FA) | 12/21/2019 (the 5% royalty fee goes up to current FA terms at this time) |
| 46-126 | Gig Harbor | R & L Enterprises Inc | 01/05/01 | 1/4/2011 |
| 46-128 | Ballard, WA | Josan Enterprises, Inc. | 03/21/01 | 3/20/2011 |
| 46-130 | Lacey | RPM Management, Inc | 07/26/01 | 7/25/2011 |
| 46-131 | Silverdale | Virk, Inc. | 07/16/01 | 7/15/2011 |
| 46-132 | UW Tacoma, Tacoma WA | Walis, Inc. | 06/16/01 | 6/15/2011 |
| 46-133 | Pioneer Square, Seattle, WA | Sheena Enterprises, Inc. | 07/06/01 | 7/5/2011 |
| 46-134 | 4th Ave. S | DJ Sales LLC | 07/25/01 | 7/24/2011 |
| 46-135 | 3rd & Marion | Trimurti Enterprises, Inc. | 09/21/01 | 9/20/2011 |
| 46-137 | Broadway, Seattle, WA | ARMANN ENTERPRISES, INC. | 09/22/01 | 9/21/2011 |
| 46-139 | Convention Center, WA | U & H, Inc. | 09/29/01 | 9/28/2011 |
| 46-140 | Greenwood, WA | Josan Enterprises, Inc. | 10/01/01 | 9/30/2011 |

Active Franchise Agreements In Good Standing

| Store No. | Location | Franchisee | Franchisee Agreement Effective Date | FA Expiration Date |
|---|---|---|---|---|
| 46-145 | Wenatchee | Cascade Chevrolet Company | 06/07/02 | 6/6/2012 |
| 46-147 | West Seattle | Rashmi Enterprise, Inc. | 07/11/02 | 7/10/2012 |
| 46-148 | Quilceda | Jaspreet Enterprises, LLC | 09/27/02 | 9/26/2012 |
| 46-149 | Tumwater | TLT Enterprises | 10/01/02 | 9/30/2012 |
| 46-151 | University Place | Urban Burrito Corp. | 09/05/02 | 9/4/2012 |
| 46-152 | E Bremerton | Prabh, Inc. | 03/27/03 | 3/26/2013 |
| 46-153 | Mill Creek, WA | Tala Inc. | 12/27/02 | 12/26/2012 |
| 46-154 | Meridian Street-Bellingham | Sharma, Sanjeev (Steve) | 05/19/04 | 5/18/2014 |
| 46-155 | Poulsbo | Virk, Inc. | 01/24/06 | 1/23/2016 |
| 46-156 | Renton Highlands | Rolling Burritos Inc. | 07/14/03 | 7/13/2013 |
| 46-157 | Kent Valley | Big Brys Burritos, Inc. | 02/23/03 | 2/22/2013 |
| 46-158 | Canyon Rd., Puyallup-WA | UDEE, LLC | 02/27/03 | 2/26/2013 |
| 46-159 | 1st & Blanchard | C & Y Investments, LLC | 05/07/03 | 5/6/2013 |
| 46-163 | Auburn SM, WA | HARSHU ENTERPRISES, INC. | 05/30/03 | 5/29/2013 |
| 46-164 | Burlington | 4Lewis Company, Inc. | 11/19/03 | 11/18/2013 |
| 46-165 | Sumner | Manjit Singh Bhangu & Kuldip Singh | 07/14/03 | 7/13/2013 |
| 46-166 | Ellensburg | Monson & Sons, LLC | 09/16/03 | 9/15/2013 |
| 46-169 | Westlake | Thind Northwest Inc. | 09/22/01 | 9/21/2011 |
| 46-170 | Pullman | Syzygy Enterprises, LLC | 12/29/03 | 12/28/2013 |
| 46-172 | Harrison | Quick Mexi Foods | 11/26/03 | 11/25/2013 |
| 46-173 | Chehalis | Folie A Deux Ventures, Inc. | 11/28/03 | ? |
| 46-174 | Dexter | A-One Enterprises, Inc. | 12/29/03 | ? |
| 46-175 | 23rd & Jackson, Seattle WA | Dhillon Enterprises, Inc. | 12/29/03 | 12/28/2013 |
| 46-176 | University Way - Seattle, WA | Tala Inc. | 08/10/04 | 8/9/2014 |

| Store No. | Location | Franchisee | Franchisee Agreement Effective Date | FA Expiration Date |
|---|---|---|---|---|
| 46-177 | Northgate Village - Seattle, WA | Quick Mexi Foods | 08/19/04 | 8/18/2014 |
| 46-178 | Harbour Point Center - Mukilteo - WA | MSD Corporation | 02/18/05 | 2/17/2015 |
| 46-179 | Parkland | Rahul Corp. | 10/15/04 | 10/14/2014 |
| 46-188 | Bremerton Conference - WA | Virk, Inc. | 01/14/04 | 1/13/2014 |
| 46-191 | 9th & Stewart - Seattle, WA | Meehan, Inc. | 06/10/04 | 6/9/2014 |
| 46-193 | Bellevue Square Mall | Tala Inc. | 11/22/05 | 11/21/2015 |
| 46-215 | Hazel Dell - Vancouver, WA | Big Fish LLC | 06/01/04 | 5/31/2014 |
| 46-303 | N Division | Appledog, LLC | 11/21/03 | 11/20/2013 |
| 46-647 | Sundance Plaza- Spokane WA | Appledog, LLC | 03/30/06 | 3/29/2016 |
| 46-658 | Wenatchee Valley Mall - E Wenatchee, WA | Cascade Chevrolet Company | 11/09/04 | 11/8/2014 |
| 46-664 | Lakewood Town Center - Lakewood, WA | McVicker, Jeffrey and Ellen | 11/04/04 | 11/3/2014 |
| 46-751 | Westwood Village- West Seattle WA | Vivak Enterprises, Inc. | 10/27/05 | 10/26/2015 |
| 46-887 | Lacey Marketplace- Lacey WA | Aujla Inc. | 11/17/05 | 11/16/2015 |
| 46-888 | Bonney Lake Plaza- WA | Kulman Inc. | 02/12/07 | 2/11/2017 |
| 46-919 | Plaza on 57th- Spokane WA | Appledog, LLC | 03/29/05 | 3/28/2015 |
| 46-1023 | Auburn Way North- Auburn WA | BHULLAR INVESTMENTS, | 12/19/05 | 12/18/2015 |
| 46-1024 | 4th & Cedar- Seattle WA | Kailey Enterprises, Inc. | 12/20/05 | 12/19/2015 |
| 46-1027 | Village at Snoqualmie Ridge- WA | GD & GB Enterprises, Inc. | 01/06/06 | 1/5/2016 |
| 46-1091 | Federal Way Crossings - WA | Quick Mexi Foods | 10/24/05 | 10/23/2015 |
| 46-1248 | Smokey Point Town Center- Arlington WA | Dhillon Enterprises, Inc. | 09/20/06 | 9/19/2016 |
| 46-1284 | Cle Elum - WA | Tacos USA, LLC | 12/16/05 | 12/15/2015 |
| 46-1328 | Hiddenbrook, Vancouver, WA | | | |
| 46-1330 | Harbor Station - Oak Harbor, WA | TDM 46-1330, LLC | 05/31/07 | 5/30/2017 |

| Store No. | Location | Franchisee | Franchisee Agreement Effective Date | FA Expiration Date |
|---|---|---|---|---|
| 46-1342 | River Park Square - Spokane, WA | Rai, Manjinder | 11/07/06 | 11/6/2016 |
| 46-1531 | Lake Pointe Plaza, Moses Lake-WA | Scott, Brian | 09/10/07 | 9/9/2017 |
| 46-1625 | 12 Mercer- Seattle, WA | A-2 Enterprises, Inc. | 11/20/06 | 11/19/2016 |
| 46-1670 | Ritzville, WA | Naomi Jenny Harris and Melinda Ferderer | 03/27/09 | 3/26/2019 |
| 50-1057 | Fred Meyer - East | NTF, LLC | 09/09/06 | 9/8/2016 |
| 50-1080 | Holiday Center - Spenard | NTF, LLC | 09/07/06 | 9/6/2016 |
| 50-1087 | Palmer | Palmer, LLC | 02/07/07 | 2/6/2017 |
| 50-1096 | Tudor | Tudor, LLC | 02/07/07 | 2/6/2017 |
| 50-1185 | Abbott | Abbott, LLC | 02/07/07 | 2/6/2017 |
| 50-1369 | Wasilla | Wasilla, LLC | 02/07/07 | 2/6/2017 |
| 51-1222 | Laniakea Plaza- Oahu HI | DND Baja Hawaii, LLC. | 04/24/06 | 4/23/2016 |
| 51-1223 | Kunia Shopping Center- Waipahu HI | Del Mar Hawaii, Inc. | 06/05/06 | 6/4/2016 |
| 51-1239 | Kapolei Parkway- Kapolei HI | Lima Tacos, LLC | 04/24/06 | 4/23/2016 |
| 51-1281 | Moanalua Shopping Center- Honolulu HI | Butler, James and Angela | 09/20/06 | 9/19/2016 |
| 51-1336 | Hawaii Kai Town Center - Honolulu, HI | Hoshide, Reid | 05/30/06 | 5/29/2016 |
| 51-1499 | Matsuyama Commercial Center, Kona-HI | Big Island TDM, LLC | 09/07/07 | 9/6/2017 |
| 51-1504 | Windward Mall, Kaneohe-HI | Raja Baja Inc. | 10/08/07 | 10/7/2017 |
| 51-1610 | Kona Commons, Kailua-Kona, HI | Big Island TDM, LLC | 07/01/08 | 6/30/2018 |
| 51-1635 | Ward Centers - HI | R & W Enterprises, LLC. | 07/08/08 | 7/7/2018 |
| 51-1647 | Pearl Ridge Center- Honolulu, HI | Steve & Miok Chung | 09/18/08 | 9/17/2018 |
| 51-1665 | Ala Moana Ctr, Honolulu, HI | Steve & Miok Chung | 03/20/09 | 3/19/2019 |
| 60-402 | Vernon | Byron Skelton & Raymond Skelton | 05/01/03 | 4/30/2013 |
| 60-411 | St. Edwards Dr. | Apna Tacos Incorporated | 12/22/03 | 12/21/2013 |

Active Franchise Agreements In Good Standing

| Store No. | Location | Franchisee | Franchisee Agreement Effective Date | FA Expiration Date |
|---|---|---|---|---|
| 60-413 | Prince George, BC | K.D. Investments, Inc. | 12/30/03 | 12/29/2013 |
| 60-791 | Westminster Centre - New Westminster, BC | Jas & Jas Foods Inc. | 9/8/2004? | ? |
| 60-1071 | Clayton Crossing-Cloverdale BC | Termark Enterprise, Ltd. | 09/16/05 | 9/15/2015 |
| 60-1106 | Gladwin Crossing-Abbotsford BC | 0841655 BC Ltd. | 11/06/05 | 11/5/2015 |
| 60-1518 | The Zone Bowling Centre-Schoolhouse Road, Coquitlam-BC | L & H Stevenson Enterprises Inc. | 07/11/07 | 7/10/2017 |
| 61-1615 | 118th Ave. & 94th St. | BD Chand Management Co-operation Inc. | 05/13/08 | 5/12/2018 |

| MD Territory | Entity Name | Contact First Name | Contact Last Name | Contact Phone Number | Date MDA Signed |
|---|---|---|---|---|---|
| Hartford, New Haven, New Bedford, CT | ~~South Shore New England, Inc.~~ Tom and Brenda Bohinc | Tom | Bohinc | (860)857-6778 | 5/29/2007 |
| San Diego, Imperial Counties, CA | A Better Life Franchise Development LLC | Bertha | Edington | (619)851-8026 | 4/23/2004 |
| Greenville, Spartansburg, Asheville, Anderson in State of North and South Carolina | ~~High Society Development, LLC~~ Tammy Bryson | Tammy | Bryson | (828)421-2465 | 10/2/2007 |
| Detroit, MI | MI-Mex Development, Inc. | Mohamed (Mike) | Daher | (734)783-1229 | 1/1/2007 |
| Puerto Rico | ~~Tacos Del Caribe, Inc.~~ Jorge Garcia | Clarissa | Garcia | (787)414-3569 | 3/5/2005 |
| Northern California (Marin, Sonoma, Napa, Lake, Mendocino, Glenn, Butte, Tehama, Trinity, Humboldt, Shasta, Lassen, Modoc, Siskiyou, and Del Norte), CA | Tako, Inc. | Mitra | Garschi | (925)963-5646 | 8/13/2004 |
| Contract #2: Albany-Schenectady-Troy, Watertown, Burlington-Plattsburgh, Ulster, Dutchess, Orange and Sullivan | ~~TDM Development, LLC~~ Larry Jasenski Jr. | Larry | Jasenski | (518)858-3508 | 9/20/2007 |

| MD Territory | Entity Name | Contact First Name | Contact Last Name | Contact Phone Number | Date MDA Signed |
|---|---|---|---|---|---|
| Columbus, Macon and Albany Georgia and Montgomery, Alabama; Randolph, Heard, Troup, Coweta, Meriweather, Fayette, Clayton, Spalding, Pike, Upson and Lamar in the Atlanta; | Burritos In Paradise, LLC | Robert | Jones | (706)573-6213 | 6/22/2007 |
| Westchester, Rockland, Putnam, and Fairfield counties in New York (Southern NY) | TDM of Southern New York, LLC | Robert | Klem | (917)699-8739 | 9/30/2007 |
| **Contract #1**: San Bernardino and Riverside Countries in CA except Temecula, Lake Elsinore and Murrieta area;<br><br>**Contract #2:** Orange County, CA | TDM Developers, LLC | Constantine | Kolytiris | #1: 2/9/2007<br><br>#2: 5/15/2007 |
| Central IL (Champagne & Springfield, Decatur & Peoria, Bloomington, Hannibal, Keokuk, IL | ~~TDM Central Illinois, Inc.~~ Scott Lucas | Scott | Lucas | (309)370-7827 | 9/28/2007 |
| Arizona State | Wahoo Western Foods LLC | David | Moore | (480)585-6256 | 9/24/2003 |
| Orlando, Daytona Beach, Melbourne | TDM of Central Florida, LLC | Brian | Ohrt | (407)433-5784 | 1/23/2007 |

| MD Territory | Entity Name | Contact First Name | Contact Last Name | Contact Phone Number | Date MDA Signed |
|---|---|---|---|---|---|
| WA (Asotin, Columbia, Garfield, Pend Oreille, Spokane, and Whitman); Idaho (Benewah, Bonner, Boundary, Clearwater, Idaho, Kootenai, Latah, Lewis, Nez Perce, Shoshone) | TDM Central and Southeast WA, LLC (Spokane) | Darwin | Parker | (509)308-2790 | 9/15/2003 |
| portions of SD, portions of IA and portions of NE (i.e., Lincoln & Hastings, Kearney, Sioux City, Sioux Falls, Rapid City, North Platte) | TDM Development, Inc. | Carl | Rosberg | (402)750-6085 | 4/13/2005 |
| Bakersfield (Santa Barbara, Santa Maria, San Luiis Obispo; Ventura counties); Inyo and Tulare County lines; LA County line and the Kern County line; Ventura County line and Vincent line; Pearblossom Hwy in Vincent to Highway 18 LA County line; | Kirpal ~~Group~~ Enterprises, Inc. | Ranbir | Singh | (661)932-3418 | 6/17/2005 |
| CA (LA county west of I-605 excluding Santa Clarita and Antelope Valley Area; | Kirpal ~~Development Group~~ Enterprises, Inc. | Ranbir | Singh | (661)932-3418 | 1/24/2007 |
| Grand Rapids, Kalamazoo, Battle Creek & South Bend, Elkhart | Patti Swierbut | Patti | Swierbut | (269)208-0450 | 12/17/2007 |
| FL (The Tampa, St. Petersburg, Sarasota) | 2 Jens Group LLC | Mike | Taylor | (239)994-8808 | 3/16/2006 |

| MD Territory | Entity Name | Contact First Name | Contact Last Name | Contact Phone Number | Date MDA Signed |
|---|---|---|---|---|---|
| TX (Austin, Waco, Temple, Bryan) | ~~Centurion Enterprises~~ Jim Templin | Jim | Templin | (253)988-5262 | 11/12/2004 |
| TN (Knoxville, Tri Cities, Nashville, Chattanooga) | TTDM, LLC | Joddi | Thomley | (865)218-6565 | 8/22/2006 |
| **Tripathi Contract #1:** CA (San Francisco, Alameda, Contra Costa counties) **Tripathi Contract #2:** CA (Counties of Santa Cruz, San Mateo, Santa Clara) | Tripathi - TDM Pacific, LLC | Manoj | Tripathi | (925)284-1200 | #1: 6/6/2006 #2: 1/12/2004 |
| **Tripathi Contract #3:** Sacramento CA DMA and Reno NV DMA | Tripathi - TDM Pacific, LLC | Manoj | Tripathi | (925)284-1200 | 5/20/2004 |
| Indiana (Indianapolis, Evansville, Terre Haute, Louisville, Lafayette, Bowling Grren) | Rolling In The Midwest, LLC | Jeff | Troxel | (270)830-9019 | 6/26/2007 |
| Baton Rogue, New Orleans, Lafayette, LA; Biloxi-Gulfport, Mobile, Hattiesburg-Laurel; (Jackson, MS was added by first right of refusal and then on same date, TDMFC gave the | Beachhead Partners, LLC | Fred | Vosloh | (206)779-0216 | 5/18/2005 |
| Oklahoma (Oklahoma City, Sherman, Ada, Tulsa, Wichita Falls, Laawton) | ~~TDM Development of Oklahoma, LLC~~ Raymond Walker | Raymond | Walker | (405)769-3584 | 10/5/2005 |

## MASTER DEVELOPER LIST
### (default)

| MD Territory | Entity Name | Contact First Name | Contact Last Name | Contact Phone Number | Date MDA Signed |
|---|---|---|---|---|---|
| Cincinnati, Dayton, OH | OTDM, LLC | Anthony | Wean | (513)678-4234 | 8/23/2006 |
| TX(Amarillo, Lubbock, Sweetwater, Abilene, Odessa, Midland) | Brad Williams | Brad | Williams | (806)683-0269 | 8/20/2007 |
| Utah and Richland, Kennewick, Pasco in Washington | DEYCO Leasing | David | Young | (801)920-4405 | 4/13/2004 |
| Nevada (Las Vegas, Nye, Lincoln, Clark counties) | MB Las Vegas, LLC | Brian | Ziemba | (702)461-5829 | 11/8/2007 |

| Store No. | Location | Franchisee | Franchisee Agreement Effective Date | FA Expiration Date |
|---|---|---|---|---|
| 60-403 | Willowbrook - Langley, BC | Akali Enterprises, Ltd. | 10/18/03 | 10/17/2013 |
| 60-405 | Fraser Hwy | 0869696 B.C. Ltd. | 07/10/03 | 7/9/2013 |
| 60-409 | Granville | Gurpartap Holdings Limited | 09/25/03 | 9/24/2013 |
| 60-412 | Queensborough | Baja Restaurants Limited | 11/04/03 | 11/3/2013 |
| 60-416 | Junction - Mission, BC | Kingras Tacos, Inc. | 04/21/04 | 4/20/2014 |
| 60-418 | Discovery Harbour Center - Campbell River, BC | SNJ Mex Foods Corporation | 05/22/04 | 5/21/2014 |
| 60-627 | White Rock - Surrey, BC | Bhagwant (Bunty) Sekhon | 07/01/04 | 6/30/2014 |
| 60-630 | Delta - BC | Harjit Nandha & Manjit Nandha | 06/25/04 | 6/24/2014 |
| 60-868 | Meadowtown Centre-Pitt Meadows BC | Sanjeev (Steve) Sharma | 02/08/05 | 2/7/2015 |
| 60-911 | Fleetwood Plaza-Surrey BC | Bakhsho Mann | 12/17/04 | 12/16/2014 |
| 60-981 | Tandem Towers-Burnaby BC | Verinder Kevin More | 04/28/05 | 4/27/2015 |
| 60-1162 | Sands Plaza (Ironwood), Richmond, BC | TropMex Foods Inc. | 03/21/06 | 3/20/2016 |
| 60-1197 | Thunderbird Centre-Langley BC | Jeff Keys and Cathy Nadon | 05/11/05 | 5/10/2015 |
| 60-1229 | Wal-Mart Centre - Courtenay BC | Surfin' Tacos Inc. | 04/28/06 | 4/27/2016 |
| 60-1318 | Harbour Centre Mall-Vancouver BC | Dos Amigos Enterprises, Inc. | 10/09/06 | 10/8/2016 |
| 60-1363 | Abbotsford Village Shopping Centre | 0841334 BC Ltd. | 10/09/07 | 10/8/2017 |
| 60-1365 | Oxford Market Shopping Centre | Insulinde Taco Inc. | 08/22/06 | 8/21/2016 |
| 60-1432 | The Summit Shopping Centre-Kamloops, BC | Gainey Taco Inc. | 02/07/07 | 2/6/2017 |
| 60-1587 | Banks Rd., Kelowna-BC | Joe and Pauline Rood | 06/03/08 | 6/2/2018 |
| 61-1063 | Shepard Regional Centre- AB | TDM Food Investments Inc. | 11/17/06 | 11/16/2016 |
| 61-1067 | Leduc Common-Leduc AB | Leduc Taco Inc. | 05/09/06 | 5/8/2016 |
| 61-1208 | Sierra Springs Centre-Airdrie AB | Gelani Holdings Inc. | 07/27/07 | 7/26/2017 |
| 61-1244 | Chestermere Station-Chestermere AB | Misha Taco Food Inc. | 06/20/07 | 6/19/2017 |
| 61-1245 | Lloydminster, AB | | | |
| 61-1246 | RioCan Meadows-Edmonton AB | Taco Whitemud Inc | 07/13/06 | 7/12/2016 |

| Store No. | Location | Franchisee | Franchisee Agreement Effective Date | FA Expiration Date |
|---|---|---|---|---|
| 61-1282 | Terwillegar Heights Towne Square-Edmonton AB | Equinox Invest, Inc. | 07/24/06 | 7/23/2016 |
| 61-1298 | Sunridge Center-Calgary, AB | Asmara Holding Inc. | 05/06/06 | 5/5/2016 |
| 61-1366 | Pinnacle Business Park | Gracie Enterprises, Ltd. | 12/28/06 | 12/27/2016 |
| 61-1374 | First Westmonton Centre (Stony Plain & 184th St.) | Taco Paradise Inc. | 12/20/06 | 12/19/2016 |
| 61-1463 | Fifth Ave. Place, Calgary AB | WSM Foods Inc. | 07/03/07 | 7/2/2017 |
| 61-1490 | Westmount Village Shopping Centre-Okotoks, AB | Shakeel Meer & Komal Ilyas | 07/12/08 | 7/11/2018 |
| 61-1491 | Hampton Market, Edmonton-AB | Saraswat Investment Inc. | 08/16/07 | 8/15/2017 |
| 61-1492 | Grand Prairie, AB | | | |
| 61-1536 | Oxford Park, Edmonton-AB | Taco Bro's 2, Inc. | 09/10/07 | 9/9/2017 |
| 61-1598 | Mount Royal College, Calgary-AB | SSG Investments Inc. | 11/28/07 | 11/27/2017 |
| 61-1621 | Icon Towers-AB | Dhaneshwar Inc. | 09/28/07 | 9/27/2017 |
| 61-1660 | Gateway Crossing, Rocky Mountain House - AB | Kalpana and Lagan Mital | 02/24/09 | 2/23/2019 |
| 62-1174 | Riverbend Plaza-Regina SK | Larock Tacos Inc. | 03/29/06 | 3/28/2016 |
| 62-1193 | Kramer & Wascana-Regina SK | Rock Steady Tacos, Inc. | 04/27/06 | 4/26/2016 |
| 62-1326 | The Mall at Lawson Heights- Saskatoon SK | Ashirwadh Foods Inc. | 04/05/07 | 4/4/2017 |
| 62-1602 | Regina North-SK | Phat Burritos Inc. | 11/30/07 | 11/29/2017 |
| 70-1322 | Chatham, Ontario, Canada | | | |
| 70-1367 | First Vaughan | Sandhys TDM Training Centre Inc. | 12/01/06 | 11/30/2016 |
| 70-1419 | Mississauga Westgate (401 & Winston Churchill)-Mississauga-ON | RAG Taco's Inc. | 03/22/07 | 3/21/2017 |

Schedule 4.8 – Litigation

| DATE | PARTIES | COURT/AGENCY/ CASE # |
|------|---------|----------------------|
| 2/12/2010 | TDM Federal Holdings; TDM Western Holdings; TDM Saskatchewan Holdings; TDM Pacific Holdings; and TDM Ontario Holdings  v.  TDMFC and TDMCFC, ULC | Alberta Queens Bench, District Court, in Calgary  Case #02393  PROCEEDING STAYED AGAINST TDM |
| 5/28/2010 | Taco Bro's Inc. v.  TDFMC and  TDMCFC, ULC | Alberta Provincial Court (Small Claims)  Case #P109030  PROCEEDING STAYED AGAINST TDM |
| 1-8-2010, date of service of Demand Letter | Suzanne Todd  v.  TDMFC and Tom Murphy | Motion for Relief from Stay to proceed with AAA Arbitration - DENIED |
| 2009 | A CLASS ELECTRIC LTD., Claimant  v.  TACO DEL MAR FRANCHISING CORP., Respondent | No. 2009-22174  PROVINCIAL COURT OF BRITISH COLUMBIA (SMALL CLAIMS) RICHMOND, B.C.  PROCEEDING STAYED AGAINST TDM |

# Exhibit B  -  Assumed/Assigned Contracts

| Store No. | Location | Franchisee | Franchisee Agreement Effective Date | FA Expiration Date |
|---|---|---|---|---|
| 60-1363 | Abbotsford Village Shopping Centre | 0841334 BC Ltd. | 10/09/07 | 10/8/2017 |
| 60-1106 | Gladwin Crossing- Abbotsford BC | 0841655 BC Ltd. | 11/06/05 | 11/5/2015 |
| 60-405 | Fraser Hwy | 0869696 B.C. Ltd. | 07/10/03 | 7/9/2013 |
| 46-164 | Burlington | 4Lewis Company, Inc. | 11/19/03 | 11/18/2013 |
| 60-___ | Surrey, BC | 699747 B.C. Ltd. Bhagwant (Bunty) Sekhon | 8/30/2004 | 8/29/2014 **No Site** |
| 46-1625 | 12 Mercer, Seattle, WA | A-2 Enterprises, Inc. | 11/20/06 | 11/19/2016 |
| 50-1185 | Abbott | Abbott, LLC | 02/07/07 | 2/6/2017 |
| 04-1000 | Lake Elsinore Marketplace- San Diego CA | ABC Ventures LLC | 10/05/05 | 10/4/2015 |
| 60-403 | Willowbrook - Langley, BC | Akali Enterprises, Ltd. | 10/18/03 | 10/17/2013 |
| 46-174 | Dexter | A-One Enterprises, Inc. | 12/29/03 | 12/28/2013 |
| 60-411 | St. Edwards Dr. | Apna Tacos Incorporated | 12/22/03 | 12/21/2013 |
| 46-303 | N Division | Appledog, LLC | 11/21/03 | 11/20/2013 |
| 46-647 | Sundance Plaza- Spokane WA | Appledog, LLC | 03/30/06 | 3/29/2016 |
| 46-919 | Plaza on 57th- Spokane WA | Appledog, LLC | 03/29/05 | 3/28/2015 |
| 60-1599 | BC | APR Food Services, Inc. Joe and Pauline Rood | 12/14/07 | 12/13/2017 **No Site** |
| 46-137 | Broadway, Seattle, WA | Armann Enterprises, Inc. | 09/22/01 | 9/21/2011 |
| 02-776 | Anthem & Venture, Anthem, AZ | AS, LLC | 04/12/06 | 4/11/2016 |
| 62-1326 | The Mall at Lawson Heights- Saskatoon SK | Ashirwadh Foods Inc. | 04/05/07 | 4/4/2017 |
| 61-1298 | Sunridge Center- Calgary, AB | Asmara Holding Inc. | 05/06/06 | 5/5/2016 |
| 46-887 | Lacey Marketplace- Lacey WA | Aujla Inc. | 11/17/05 | 11/16/2015 |
| 60-412 | Queensborough | Baja Restaurants Limited | 11/04/03 | 11/3/2013 |
| 60-911 | Fleetwood Plaza- Surrey BC | Bakhsho Mann | 12/17/04 | 12/16/2014 |
| 04-916 | 2nd Street- San Francisco CA | Bay Area TacoDelMar, LLC | 09/07/04 | 9/6/2014 |
| 61-1615 | 118th Ave. & 94th St. | BD Chand Management Co-operation Inc. | 05/13/08 | 5/12/2018 |
| 60-627 | White Rock - Surrey, BC | Bhagwant (Bunty) Sekhon | 07/01/04 | 6/30/2014 |

# Exhibit B  -  Assumed/Assigned Contracts

| 46-121 | Aurora Village, WA | Bhangu Enterprises LLC | 10/15/2009 (Successor FA) | 10/14/2019 |
|---|---|---|---|---|
| 46-1023 | Auburn Way North- Auburn WA | BHULLAR INVESTMENTS, L.L.C. | 12/19/05 | 12/18/2015 |
| 04-1339 | Coffee & Riverlakes - Bakersfield, CA | Biever, Susan | 09/22/2005 | 9/21/2015 |
| 46-157 | Kent Valley | Big Brys Burritos, Inc. | 02/23/03 | 2/22/2013 |
| 36-202 | Hawthorne, Portland, OR | Big Fish LLC | 11/30/2009 (Successor FA) | 11/29/2019 |
| 36-204 | Martin Luther King, Portland, OR | Big Fish LLC | 11/30/2009 (Successor FA) | 11/29/2019 |
| 36-206 | Gresham, OR | Big Fish LLC | 10/05/01 | 10/4/2011 |
| 46-215 | Hazel Dell - Vancouver, WA | Big Fish LLC | 06/01/04 | 5/31/2014 |
| 51-1499 | Matsuyama Commercial Center, Kona-HI | Big Island TDM, LLC | 09/07/07 | 9/6/2017 |
| 51-1610 | Kona Commons, Kailua-Kona, HI | Big Island TDM, LLC | 07/01/08 | 6/30/2018 |
| 25-918 | Montana Avenue- Helena, MT | BRMK, INC. | 05/10/05 | 5/9/2015 |
| 34-1559 | Waterloo Crossings, Canal Winchester-OH | Burritoville, LLC | 02/29/08 | 2/28/2018 |
| 46-104 | Kirkland | Busting Air, Inc. | 7/12/2007 (Successor FA) | 7/11/2017 |
| 51-1281 | Moanalua Shopping Center-Honolulu HI | Butler, James and Angela | 09/20/06 | 9/19/2016 |
| 60-402 | Vernon | Byron Skelton & Raymond Skelton | 05/01/03 | 4/30/2013 |
| 36-217 | Tualatin, OR | C & E's Inner Baja, Inc. | 05/29/04 | 5/28/2014 |
| 36-788 | Lake Oswego, OR | C & E's Inner Baja, Inc. | 03/02/05 | 3/1/2015 |
| 46-159 | 1st & Blanchard | C & Y Investments, LLC | 05/07/03 | 5/6/2013 |
| 46-145 | Wenatchee | Cascade Chevrolet Co. | 06/07/02 | 6/6/2012 |
| 46-658 | Wenatchee Valley Mall - E Wenatchee, WA | Cascade Chevrolet Company | 11/09/04 | 11/8/2014 |
| 36-192 | 82nd & Otty- Clackamas, OR | CDT Investments Corp | 11/02/2004 | 11/1/2014 |
| 36-1393 | Cascade Station-Portland, OR | CDT Investments Corp | 07/16/07 | 7/15/2017 |
| 21-1457 | Northbrook Plaza, Livonia-MI | Daher, Mike | 07/25/07 | 7/24/2017 |
| 36-1272 | Central Village- West Linn OR | Dan and Kelli Wedin | 09/04/06 | 9/3/2016 |

# Exhibit B  -  Assumed/Assigned Contracts

| | | | | |
|---|---|---|---|---|
| 36-654 | Wood Village - Troutdale, OR | Dang Hai Pham & Phuong Pham | 08/31/04 | 8/30/2014 |
| 36-1677 | McMinnville, OR | Dave Cantwell, LLC | 12/16/09 | 12/15/2019 |
| 51-1223 | Kunia Shopping Center-Waipahu HI | Del Mar Hawaii, Inc. | 06/05/06 | 6/4/2016 |
| 61-1621 | Icon Towers-AB | Dhaneshwar Inc. | 09/28/07 | 9/27/2017 |
| 46-175 | 23rd & Jackson, Seattle WA | Dhillon Enterprises, Inc. | 12/29/03 | 12/28/2013 |
| 46-1248 | Smokey Point Town Center-Arlington WA | Dhillon Enterprises, Inc. | 09/20/06 | 9/19/2016 |
| 46-134 | 4th Ave. S | DJ Sales LLC | 07/25/01 | 7/24/2011 |
| 51-1222 | Laniakea Plaza- Oahu HI | DND Baja Hawaii, LLC. | 04/24/06 | 4/23/2016 |
| 60-1318 | Harbour Centre Mall-Vancouver BC | Dos Amigos Enterprises, Inc. | 10/09/06 | 10/8/2016 |
| 33-1274 | Dairy Queen Mall - Bismarck ND | Engelhardt Enterprises, LLC | 09/21/06 | 9/20/2016 |
| 61-1282 | Terwillegar Heights Towne Square- Edmonton AB | Equinox Invest, Inc. | 07/24/06 | 7/23/2016 |
| 34-1623 | Del Mar's Baja Grill - Pickerington, OH | Florida Enterprise, Inc. | 06/09/09 | 6/8/2019 |
| 46-173 | Chehalis | Folie A Deux Ventures, Inc. | 11/28/03 | 11/27/2013 |
| 36-207 | Hood River, OR | Full Circle, LLC | 12/20/01 | 12/19/2011 |
| 36-1594 | The Dalles-OR | Full Circle, LLC | 06/09/08 | 6/7/2018 |
| 60-1432 | The Summit Shopping Centre-Kamloops, BC | Gainey Taco Inc. | 02/07/07 | 2/6/2017 |
| 46-1027 | Village at Snoqualmie Ridge-WA | GD & GB Enterprises, Inc. | 01/06/06 | 1/5/2016 |
| 61-1208 | Sierra Springs Centre-Airdrie AB | Gelani Holdings Inc. | 07/27/07 | 7/26/2017 |
| 61-1366 | Pinnacle Business Park | Gracie Enterprises, Ltd. | 12/28/06 | 12/27/2016 |
| 60-409 | Granville | Gurpartap Holdings Limited | 09/25/03 | 9/24/2013 |
| 61-1066 | Lethbridge AB | Gusto El Gusto Foods Inc. | 6/5/2007 | 6/4/2017 **No Site** |
| 46-163 | Auburn SM, WA | Harshu Enterprises, Inc. | 05/30/03 | 5/29/2013 |
| 70-1541 | Place D Orleans, Ottawa-ON | Hawatech Enterprises Inc. | 10/02/07 | 10/1/2017 |
| 51-1336 | Hawaii Kai Town Center - Honolulu, HI | Hoshide, Reid | 05/30/06 | 5/29/2016 |
| 46-115 | Westgate-Tacoma | Houser, Mark R. | 10/15/2009 (Successor FA) | 10/14/2019 |
| 46-664 | Lakewood Town Center - Lakewood, WA | I R Redi Incorporated | 11/04/04 | 11/3/2014 |

# Exhibit B - Assumed/Assigned Contracts

| | | | | |
|---|---|---|---|---|
| 60-1365 | Oxford Market Shopping Centre | Insulinde Taco Inc. | 08/22/06 | 8/21/2016 |
| 34-1644 | Frontier Shopping Plaza-OH | JALD Enterprises, Inc. | 07/07/08 | 07/06/2018 |
| 60-791 | Westminster Centre - New Westminster, BC | Jas & Jas Foods Inc. | 09/08/04 | 9/7/2014 |
| 46-148 | Quilceda | Jaspreet Enterprises, LLC | 09/27/02 | 9/26/2012 |
| 60-1197 | Thunderbird Centre- Langley BC | Jeff Keys and Cathy Nadon | 05/11/05 | 5/10/2015 |
| 26-1482 | Mission Pines Shops II, Omaha-NE | JJK Enterprises, Inc. | 03/14/07 | 3/13/2017 |
| 60-1587 | Banks Rd., Kelowna-BC | Joe and Pauline Rood | 06/03/08 | 6/2/2018 |
| 46-128 | Ballard, WA | Josan Enterprises, Inc. | 03/21/01 | 3/20/2011 |
| 46-140 | Greenwood, WA | Josan Enterprises, Inc. | 10/01/01 | 9/30/2011 |
| 60-413 | Prince George, BC | K.D. Investments, Inc. | 12/30/03 | 12/29/2013 |
| 46-1024 | 4th & Cedar- Seattle WA | Kailey Enterprises, Inc. | 12/20/05 | 12/19/2015 |
| 61-1660 | Gateway Crossing, Rocky Mountain House - AB | Kalpana and Lagan Mital | 02/24/09 | 2/23/2019 |
| 46-103 | Everett | Kartar Enterprises, Inc. | 7/16/2007 (Successor FA) | 7/15/2017 |
| 02-754 | 40th St & Camelback- Phoenix AZ | Keffer, Mike & Gail | 07/28/2004 | 7/27/2014 |
| 60-416 | Junction - Mission, BC | Kingras Tacos, Inc. | 04/21/04 | 4/20/2014 |
| 46-888 | Bonney Lake Plaza- WA | Kulman Inc. | 02/12/07 | 2/11/2017 |
| 60-1518 | The Zone Bowling Centre-Schoolhouse Road, Coquitlam-BC | L & H Stevenson Enterprises Inc. | 07/11/07 | 7/10/2017 |
| 36-1022 | Cascade Village- Bend OR | La Tortuga, LLC | 12/08/04 | 12/7/2014 |
| 36-1454 | Century Park, Bend-OR | La Tortuga, LLC | 08/21/07 | 8/20/2017 |
| 62-1174 | Riverbend Plaza- Regina SK | Larock Tacos Inc. | 03/29/06 | 3/28/2016 |
| 61-1067 | Leduc Common- Leduc AB | Leduc Taco Inc. | 05/09/06 | 5/8/2016 |
| 51-1239 | Kapolei Parkway- Kapolei HI | Lima Tacos, LLC | 04/24/06 | 4/23/2016 |
| 11-305 | State Street, ID | Lisa Piva | 12/22/03 | 12/21/2013 |
| 45-1583 | Bradlick Shopping Center, Annandale-VA | Manish Arora | 08/06/07 | 8/5/2017 |
| 46-165 | Sumner | Manjit Singh Bhangu & Kuldip Singh | 07/14/03 | 7/13/2013 |
| 36-1527 | Farmington Center-Oregon | Mark Miller | 07/20/07 | 7/19/2017 |
| 51-1629 | Maui Mall-HI | Markan Industries, Inc. | 05/23/08 | 5/22/2018 |
| 11-306 | McMillan, ID | McMillan TDM | 12/26/03 | 12/25/2013 |
| 46-191 | 9th & Stewart - Seattle, WA | Meehan, Inc. | 06/10/04 | 6/9/2014 |

# Exhibit B  -  Assumed/Assigned Contracts

| | | | | |
|---|---|---|---|---|
| 36-211 | Tanasborne West, Hillsboro, OR | Mexican Belly Busters, Inc. | 02/14/04 | 2/13/2014 |
| 36-1329 | Cornell Town Center - Hillsboro, OR | Mexican Belly Busters, Inc. | 02/12/07 | 2/11/2017 |
| 61-1244 | Chestermere Station- Chestermere AB | Misha Taco Food Inc. | 06/20/07 | 6/19/2017 |
| 36-1348 | Mission Lakes - Salem, OR | Mission Lakes TDM, LLC | 05/29/07 | 5/28/2017 |
| 46-166 | Ellensburg | Monson & Sons, LLC | 09/16/03 | 9/15/2013 |
| 46-178 | Harbour Point Center - Mukilteo - WA | MSD Corporation | 02/18/05 | 2/17/2015 |
| 46-111 | Overlake, Kirkland, WA | MSD Overlake, Inc. | 8/25/2007 (Successor FA) | 8/24/2017 |
| 11-1258 | Columbia Village- Boise ID | Mucho Gusto, LLC | 07/07/06 | 7/6/2016 |
| 25-304 | Missoula, MT | Mucho Gusto, LLC | 12/12/03 | 12/11/2013 |
| 36-1300 | Ontario Marketplace- Ontario OR | Mucho Gusto, LLC | 09/09/06 | 9/8/2016 |
| 36-1090 | Keizer Station - Keizer OR | N2 TDM, LLC | 10/24/05 | 10/23/2015 |
| 46-113 | Woodinville, WA | Nanak Enterprises, Inc. | 11/30/2009 (Successor FA) | 11/29/2019 |
| 46-1663 | Kennewick Center - WA | Naomi Jenny Harris | 01/10/09 | 1/9/2019 |
| 46-1670 | Ritzville, WA | Naomi Jenny Harris and Melinda Ferderer | 03/27/09 | 3/26/2019 |
| 46-125 | Burien | Neil Enterprises, Inc. | 12/22/2009 (Successor FA) | 12/21/2019 |
| 50-1057 | Fred Meyer - East | NTF, LLC | 09/09/06 | 9/8/2016 |
| 50-1080 | Holiday Center - Spenard | NTF, LLC | 09/07/06 | 9/6/2016 |
| 36-1351 | Village at Main Street, Wilsonville, OR | NW Mexi Development, LLC | 10/09/06 | 10/8/2016 |
| 46-109 | Totem Lake, WA | Pang Inc. | 6/10/2008 (Successor FA) | 6/9/2018 |
| 02-1249 | Sedona, AZ | Parks, Rebecca and John | 04/21/2006 | 4/20/2016 |
| 09-1495 | Taco Del Mar:  Port Charlotte, FL | PATEL, DILIP | 12/03/07 | 12/2/2017 |
| 36-213 | Barbur Plaza - Portland, OR | Patricia Tellez | 03/23/04 | 3/22/2014 |
| 34-1601 | Columbus, Ohio area | Paul Heine | 12/7/2007 | 12/6/2017 |
| 36-212 | Allen Blvd -Beaverton, OR | Phamrest, LLC | 03/02/04 | 3/1/2014 |
| 36-745 | Portland State Univ.- Portland OR | Phamrest, LLC | 11/28/05 | 11/27/2015 |
| 36-805 | Hillsboro Civic Center- Hillsboro OR | Phamrest, LLC | 01/12/05 | 1/11/2015 |
| 62-1602 | Regina North-SK | Phat Burritos Inc. | 11/30/07 | 11/29/2017 |
| 46-108 | Mezza Café | Pioneer Human Services | 10/29/2007 (Successor FA) | 10/28/2017 |
| 45-1606 | Quantico - VA | Pizza Brothers East, Inc. | 06/12/08 | 6/11/2018 |

# Exhibit B  -  Assumed/Assigned Contracts

| 46-152 | E Bremerton | Prabh, Inc. | 03/27/03 | 3/26/2013 |
|---|---|---|---|---|
| 46-102 | Roosevelt, WA | Quick Mexi Foods | 7/13/2007 (Successor FA) | 7/12/2017 |
| 46-105 | Puyallup, WA | Quick Mexi Foods | 7/13/2007 (Successor FA) | 7/12/2017 |
| 46-107 | Bellevue, WA | Quick Mexi Foods | 7/3/2007 (Successor FA) | 7/2/2017 |
| 46-123 | Southcenter | Quick Mexi Foods | 11/30/2009 (Successor FA) | 11/29/2019 |
| 46-172 | Harrison | Quick Mexi Foods | 11/26/03 | 11/25/2013 |
| 46-177 | Northgate Village - Seattle, WA | Quick Mexi Foods | 08/19/04 | 8/18/2014 |
| 46-1091 | Federal Way Crossings - WA | Quick Mexi Foods | 10/24/05 | 10/23/2015 |
| 46-126 | Gig Harbor | R & L Enterprises Inc | 01/05/01 | 1/4/2011 |
| 51-1635 | Ward Centers - HI | R & W Enterprises, LLC. | 07/08/08 | 7/7/2018 |
| 70-1419 | Mississauga Westgate (401 & Winston Churchill) - Mississauga-ON | RAG Taco's Inc. | 03/22/07 | 3/21/2017 |
| 46-179 | Parkland | Rahul Corp. | 10/15/04 | 10/14/2014 |
| 46-1342 | River Park Square - Spokane, WA | Rai, Manjinder | 11/07/06 | 11/6/2016 |
| 27-697 | Rivers Edge- Reno NV | Raj Mehta | 11/03/04 | 11/2/2014 |
| 27-1021 | Sparks, NV | Raj Mehta | 12/20/2004 | 12/19/2014 |
| 51-1504 | Windward Mall, Kaneohe-HI | Raja Baja Inc. | 10/08/07 | 10/7/2017 |
| 46-147 | West Seattle | Rashmi Enterprise, Inc. | 07/11/02 | 7/10/2012 |
| 62-1193 | Kramer & Wascana- Regina SK | Rock Steady Tacos, Inc. | 04/27/06 | 4/26/2016 |
| 46-156 | Renton Highlands | Rolling Burritos Inc. | 07/14/03 | 7/13/2013 |
| 04-1413 | Sunrise Way-Palm Springs, CA | Ruiz, Dan | 09/21/2006 | 9/20/2016 |
| 70-1367 | First Vaughan | Sandhys TDM Training Centre Inc. | 12/01/06 | 11/30/2016 |
| 60-868 | Meadowtown Centre- Pitt Meadows BC | Sanjeev (Steve) Sharma | 02/08/05 | 2/7/2015 |
| 61-1491 | Hampton Market, Edmonton-AB | Saraswat Investment Inc. | 08/16/07 | 8/15/2017 |
| 46-1531 | Lake Pointe Plaza, Moses Lake-WA | Scott, Brian | 09/10/07 | 9/9/2017 |
| 04-1310 | Shops at Fairview-Brentwood, CA | Shahmardan Goshtasbi | 03/15/07 | 3/14/2017 |
| 61-1490 | Westmount Village Shopping Centre-Okotoks, AB | Shakeel Meer & Komal Ilyas | 07/12/08 | 7/11/2018 |
| 46-124 | Bellingham, WA | Sharma, Sanjeev (Steve) | 02/09/00 | 2/8/2010 |
| 46-154 | Meridian Street-Bellingham | Sharma, Sanjeev (Steve) | 05/19/04 | 5/18/2014 |

# Exhibit B  -  Assumed/Assigned Contracts

| | | | | |
|---|---|---|---|---|
| 46-133 | Pioneer Square, Seattle, WA | Sheena Enterprises, Inc. | 07/06/01 | 7/5/2011 |
| 14-1098 | Lakeport- Sioux City IA | Siouxland TDM, Inc. | 08/11/05 | 8/10/2015 |
| 60-418 | Discovery Harbour Center - Campbell River, BC | SNJ Mex Foods Corporation | 05/22/04 | 5/21/2014 |
| 46-118 | Bothell | Sonu Enterprises, Inc. | 10/15/2009 (Successor FA) | 10/14/2019 |
| 04-1105 | Lake Isabella, CA | SRS Combine, Inc. | 10/31/05 | 10/30/2015 |
| 61-1598 | Mount Royal College, Calgary-AB | SSG Investments Inc. | 11/28/07 | 11/27/2017 |
| 51-1647 | Pearl Ridge Center-Honolulu, HI | Steve & Miok Chung | 09/18/08 | 9/17/2018 |
| 51-1665 | Ala Moana Ctr, Honolulu, HI | Steve & Miok Chung | 03/20/09 | 3/19/2019 |
| 36-216 | Winchester - Roseburg, OR | Stout, William & Brenda | 05/20/04 | 5/19/2014 |
| 04-1006 | Expo & 160- Sacramento CA | Sukhjit Kaur & Bagh Singh | 01/27/06 | 1/26/2016 |
| 36-1408 | Happy Valley Town Center- Oregon | Surf 'N Salsa, LLC | 07/30/07 | 7/29/2017 |
| 60-1229 | Wal-Mart Centre - Courtenay BC | Surfin' Tacos Inc. | 04/28/06 | 4/27/2016 |
| 46-170 | Pullman | Syzygy Enterprises, LLC | 12/29/03 | 12/28/2013 |
| 61-1536 | Oxford Park, Edmonton-AB | Taco Bro's 2, Inc. | 09/10/07 | 9/9/2017 |
| 61-1374 | First Westmonton Centre (Stony Plain & 184th St.) | Taco Paradise Inc. | 12/20/06 | 12/19/2016 |
| 70-1617 | Galleria Mall-ON | Taco Two London Inc. | 07/18/08 | 7/17/2018 |
| 46-101 | Redmond, WA | Taco West, Inc. | 7/12/2007 (Successor FA) | 7/11/2017 |
| 61-1246 | RioCan Meadows- Edmonton AB | Taco Whitemud Inc | 07/13/06 | 7/12/2016 |
| 46-1284 | Cle Elum - WA | Tacos USA, LLC | 12/16/05 | 12/15/2015 |
| 46-153 | Mill Creek, WA | Tala Inc. | 12/27/02 | 12/26/2012 |
| 46-176 | University Way - Seattle, WA | Tala Inc. | 08/10/04 | 8/9/2014 |
| 46-193 | Bellevue Square Mall | Tala Inc. | 11/22/05 | 11/21/2015 |
| 46-1330 | Harbor Station - Oak Harbor, WA | TDM 46-1330, LLC | 05/31/07 | 5/30/2017 |
| 61-1063 | Shepard Regional Centre- AB | TDM Food Investments Inc. | 11/17/06 | 11/16/2016 |
| 02-515 | Southern & Higley - Mesa, AZ | TDM Grand Taco, LLC | 02/04/05 | 2/3/2015 |
| 51-1678 | Navy Fleet Center, Pear Harbor, HI | TDM HAWAII, LLC | 12/08/09 | 12/7/2019 |
| 25-301 | Bozeman, MT | TDM Montana, LLC | 07/17/01 | 7/16/2011 |
| 60-1071 | Clayton Crossing- Cloverdale BC | Termark Enterprise, Ltd. | 09/16/05 | 9/15/2015 |

# Exhibit B  -  Assumed/Assigned Contracts

| | | | | |
|---|---|---|---|---|
| 46-122 | Lynnwood | Thind Northwest Inc. | 10/15/2009<br>(Successor FA) | 10/14/2019 |
| 46-169 | Westlake | Thind Northwest Inc. | 09/22/01 | 9/21/2011 |
| 46-138 | Seattle, WA | Thind Northwest Inc. | 09/22/01 | 9/21/2011<br>**No site** |
| 46-149 | Tumwater | TLT Enterprises | 10/01/02 | 9/30/2012 |
| 46-135 | 3rd & Marion | Trimurti Enterprises, Inc. | 09/21/01 | 9/20/2011 |
| 60-1162 | Sands Plaza (Ironwood), Richmond, BC | TropMex Foods Inc. | 03/21/06 | 3/20/2016 |
| 50-1096 | Tudor | Tudor, LLC | 02/07/07 | 2/6/2017 |
| 46-139 | Convention Center, WA | U & H, Inc. | 09/29/01 | 9/28/2011 |
| 46-158 | Canyon Rd., Puyallup-WA | UDEE, LLC | 02/27/03 | 2/26/2013 |
| 50-1232 | University & Airport-Fairbanks AK | University & Airport, LLC | 02/07/07 | **No Site**<br>02/06/2017 |
| 46-151 | University Place | Urban Burrito Corp. | 09/05/02 | 9/4/2012 |
| 36-183 | Sherwood, OR | V & P Enterprises, LLC | 08/06/04 | 8/5/2014 |
| 60-981 | Tandem Towers- Burnaby BC | Verinder Kevin More | 04/28/05 | 4/27/2015 |
| 12-1664 | N. Broadway - Chicago ILL | Vijay Patel | 08/28/09 | 8/27/2019 |
| 46-131 | Silverdale | Virk, Inc. | 07/16/01 | 7/15/2011 |
| 46-155 | Poulsbo | Virk, Inc. | 01/24/06 | 1/23/2016 |
| 46-188 | Bremerton Conference - WA | Virk, Inc. | 01/14/04 | 1/13/2014 |
| 46-751 | Westwood Village- West Seattle WA | Vivak Enterprises, Inc. | 10/27/05 | 10/26/2015 |
| 46-132 | UW Tacoma, Tacoma WA | Walis, Inc. | 06/16/01 | 6/15/2011 |
| 62-1469 | Saskatoon, SK | WalTaco Inc. | 12/1/2006 | **No Site**<br>11/30/2016 |
| 50-1369 | Wasilla | Wasilla, LLC | 02/07/07 | 2/6/2017 |
| 74-1591 | Micronesia Mall, Dededo-Guam | Watanabe LLC (waiting for paperwork to transfer this to TDM Guam, Inc.) | 02/11/08 | 2/10/2018 |
| 61-1463 | Fifth Ave. Place, Calgary AB | WSM Foods Inc. | 07/03/07 | 7/2/2017 |
| 25-302 | Great Falls, MT | Yurek, Dale and Tracy | 10/22/02 | 10/21/2012 |